1
SHANNON TAITANO, ESQ.
**OFFICE OF THE GOVERNOR OF GUAM**
2
Ricardo J. Bordallo Governor's Complex
3
Adelup, Guam 96910
Telephone:      (671) 472-8931
4
Facsimile:      (671) 477-4826

5
**ARTHUR B. CLARK, ESQ.**
**JANALYNN C. DAMIAN, ESQ.**
6
**DANIEL M. BENJAMIN, ESQ.**
7
**CALVO & CLARK, LLP**
Attorneys at Law
8
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
9
Telephone:      (671) 646-9355
Facsimile:      (671) 646-9403
10

11
Attorneys for *Felix P. Camacho, Governor of Guam*

12

13
IN THE UNITED STATES DISTRICT COURT
14
DISTRICT OF GUAM

15
GOVERNMENT OF GUAM

16
                            Plaintiff,

17
            -v-

18
FELIX P. CAMACHO, as the Governor of Guam,
19
et. al.

20
                            Defendants.

21

CIVIL CASE NO. 05-00038

**THE GOVERNOR OF GUAM'S**
**MEMORANDUM OF POINTS AND**
**AUTHORITIES IN SUPPORT OF HIS**
**MOTION (1) TO DISMISS**
**PLAINTIFF'S COMPLAINT; OR (2)**
**IN THE ALTERNATIVE, TO STAY**

22

23

24

25

26

27

28

ORIGINAL

FILED
DISTRICT COURT OF GUAM
MAR - 2 2006
MARY L.M. MORAN
CLERK OF COURT

Table of Authorities

**Cases**

*Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982)...................................... 5

*Atchinson, Topeka, & Santa Fe Railway Co. v. O'Connor*, 223 U.S. 280 (1912)........................ 20

*Charleston Federal Sav. & Loan Ass'n v. Alderson*, 324 U.S. 182 (1945) .................................. 17

*Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447 (1923) ............................................ 5

*Commonwealth of Puerto Rico v. Walters*, 660 F. Supp. 1230 (D.P.R. 1987) .............................. 5

*Dane v. Jackson*, 256 U.S. 589 (1921)................................................................................ 17

*Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293 (1943) ........................................ 7, 8

*Guam v. Guerrero*, 290 F.3d 1210 (9th Cir. 2002) .............................................................. 6

*In Re Camacho*, 2003 Guam 16, 2003 .................................................................... passim

*In re Request of Gutierrez Relative to the Organicity and Constitutionality of Public Law 26-35*, 2002 Guam 1 ............................................................................................... 13

*Kourtis v. Cameron*, 419 F.3d 989 (9th Cir. 2005) ........................................................... 2, 9

*Landis v. N. Am. Co.*, 299 U.S. 248 (1936)...................................................................... 23

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005)...................................................... 24

*Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307 (1976) ................................................... 21

*Mathews v. Eldridge*, 424 U.S. 319 (1976)...................................................................... 20

*Matthews v. Rodgers*, 284 U.S. 521 (1932) ................................................................... 7, 8

*McKesson Corp. v. Division of Alcoholic Beverages and Tobacco*, 496 U.S. 18 (1990).............. 18

*O'Donoghue v. United States*, 289 U.S. 516 (U.S. 1933)...................................................... 6

*Olagues v. Russoniello*, 770 F.2d 791 (9th Cir. 1985)........................................................ 21

*Pennsylvania v. New Jersey*, 426 U.S. 660 (1976) .......................................................... 3, 4

*Resolution Trust Corp. v. Keating*, 186 F.3d 1110 (9th Cir. 1999) .......................................... 14

*Robi v. Five Platters, Inc.*, 838 F.2d 318 (9th Cir. 1988) ............................................................ 13, 23

*San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972) ........................................... 21, 22, 23

*Santos v. Guam*, 436 F.3d 1051 (9th Cir. Jan. 3, 2006) ................................................................ 13

*See People v. San Nicolas*, 1999 Guam 19 ................................................................................. 13

*Shaw v. Hahn*, 56 F.3d 1128 (9th Cir. 1995) ................................................................................. 2

*Simpao v. Govt. of Guam*, District Court of Guam Case No. CV04-00049 (Order Mar. 17,

    2005) ............................................................................................................................................ 9

*State of Florida v. Mellon*, 273 U.S. 12 (1927) ............................................................................ 5

*State of Georgia v. Penn. Ry. Co.*, 324 U.S. 439 (1945) ............................................................... 5

*State of Nev. v. Burford*, 918 F.2d 854 (9th Cir. 1990) ................................................................. 5

*Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064 (9th

    Cir. 2003) ................................................................................................................................... 14

*Uniroyal, Inc. v. Board of Tax Review*, 438 A.2d 782 (Conn. 1981) ........................................... 20

*Walters v. City of St. Louis*, 347 U.S. 231 (1954) ....................................................................... 16

**Statutes**

5 G.C.A. § 30103 ............................................................................................................................. 4

11 G.C.A. § 24101 ......................................................................................................................... 17

11 G.C.A. § 24307 ......................................................................................................................... 20

11 G.C.A. § 24320 ......................................................................................................................... 18

11 G.C.A. § 24322 ......................................................................................................................... 18

11 G.C.A. § 24507 ......................................................................................................................... 18

11 G.C.A. § 24509 .............................................................................................................. 16, 18, 22

11 G.C.A. § 24510 ......................................................................................................................... 18

11 G.C.A. § 24511 ......................................................................................................................... 18

11 G.C.A. § 24513 ................................................................................................ 18

11 G.C.A. § 24812 ................................................................................................ 19

11 G.C.A. § 24816 ................................................................................................ 19

11 G.C.A. § 24906 ............................................................................................. 8, 19

11 G.C.A. § 24907 ............................................................................................. 8, 19

11 G.C.A. § 24907.1 .......................................................................................... 8, 19

11 G.C.A. § 24909 ............................................................................................. 8, 19

11 G.C.A. § 24910 ............................................................................................. 8, 19

48 U.S.C. § 1422 ................................................................................................... 6

48 U.S.C. § 1422(c) ............................................................................................... 6

48 U.S.C. § 1423a ................................................................................................ 15

1   Defendant Governor of Guam Felix P. Camacho (the "Governor") submits this

2   memorandum of point and authorities in support of his motion to dismiss the Complaint

3   ("Cmpl.") of the Attorney General of Guam (the "AG") brought in the name of the government of

4   Guam, or in the alternative to stay this action.

5                                      **INTRODUCTION**

6          The Attorney General has brought suit to enjoin all property tax collection in Guam. His

7   suit alleges exclusively federal law causes of action, all of which are based upon the failure of the

8   government of Guam to conduct a recent island-wide triennial appraisal of property.

9          The AG does not have standing to bring this action. He brought this action in the name of

10  the government under the doctrine of *parens patriae*. Binding Supreme Court authority holds that

11  such standing requires a "quasi-sovereign interest" and that there is <u>no</u> quasi-sovereign interest in

12  a case challenging the constitutionality of a tax system. The Complaint also is defective on its

13  face because it seeks to assert *parens patriae* against officers of the Territory of Guam, which is

14  an unincorporated territory and therefore a political subdivision of the United States. Only the

15  United States may sue *parens patriae* in regard to claims against federal entities.

16         The Supreme Court also has established that declaratory and injunctive relief are

17  unavailable in tax cases if there is a remedy at law that is plain, adequate and complete. As will

18  be shown, Guam taxpayers have such adequate remedies at law.

19         Indeed, the AG already litigated the same issues in the Guam Supreme Court. That Court

20  held that the existing system of assessment complied with federal law. It found that the system

21  was uniform, protected due process, and was not discriminatory or unreasonable. Accordingly,

22  that decision gives rise to collateral estoppel (a.k.a. issue preclusion) and bars this suit.

23         A central defect pervades all of the AG's claims. The AG's hypothesis is that because

24  Guam has not conducted a recent island-wide appraisal, this means that the current property tax

25  system is not "uniform" under 48 U.S.C. § 1423a, violates island taxpayers' due process rights,

26  and subjects them to violations of equal protection. But on a motion to dismiss, this Court may

27  consider the local real property tax assessment laws and need not accept the truth of the AG's

28  allegations where contrary to the actually existent laws. Here, local law provides that if a

1  triennial evaluation has not taken place, the Department of Revenue & Taxation ("DRT") shall

2  rely upon the most recent island-wide appraisal conducted. The law also permits taxpayers on an

3  individual basis to have their property valuations reduced pursuant to an appeals process, and pay

4  absolutely no taxes until their case is heard by the Board of Equalization. This system provides a

5  mechanism for any property owner to obtain a new, accurate valuation for any tax year.

6        Thus, the AG cannot prevail on his claims as a matter of law. There is a uniform right to

7  update any valuation a landowner believes inaccurate. There is a system that protects due process

8  by guaranteeing land owners a right to have their assessment evaluated *before* paying any taxes.

9  There is no discrimination because all property owners, whether they bought their property

10 twenty years ago or twenty days ago, have the right to challenge each year's assessment as it

11 comes due and obtain a new appraisal. And, the AG cannot prevail on his claim for injunctive

12 relief because it relies on his underlying claims, and, as stated, those claims cannot succeed.

13        Finally, in the alternative, if the Court should deny this motion to dismiss, the Governor

14 asks that the Court exercise its discretion to stay this case in the interests of judicial economy

15 pending the completion of the appeal of the Guam Supreme Court's prior decision.

16                                    **ARGUMENT**

17        On a motion to dismiss, all well-pleaded allegations in the AG's complaint are taken as

18 true and construed in the light most favorable to him. *Shwarz v. United States*, 234 F.3d 428, 435

19 (9th Cir. 2000). But the courts "do not accept any unreasonable inferences or assume the truth of

20 legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.*, 349 F.3d 1191, 1200

21 (9th Cir. 2003). And a court may consider facts of which it can take judicial notice. *Shaw v.*

22 *Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir. 1995) ("a court may look beyond the plaintiff's complaint

23 to matters of public record."). "[C]ourt records from related proceedings can be taken into

24 account without converting a motion to dismiss into a summary judgment motion." *Kourtis v.*

25 *Cameron*, 419 F.3d 989, 994 n.2 (9th Cir. 2005) ("district court's consideration of an unpublished

26 court order from [other] litigation was appropriate"). "The court need not accept as true . . .

27 allegations that contradict facts that may be judicially noticed...." *Shwarz*, 234 F.3d at 435.

28

## I.   THE AG LACKS *PARENS PATRIAE* STANDING

In his Complaint, the AG alleges that he has standing to bring this action on behalf of the government under the doctrine of *parens patriae*. (Cmpl. ¶ 5 ("Plaintiff has *parens patriae* standing to bring this action on behalf of the Territory of Guam representing the citizens as whole....").) He is incorrect as a matter of law for two independent reasons.

### A.   A Suit Challenging Taxes, Even on Constitutional Grounds, Cannot Be Brought *Parens Patriae* Under Controlling Supreme Court Precedent

In the controlling case of *Pennsylvania v. New Jersey*, 426 U.S. 660 (1976), the United States Supreme Court held that a suit over taxes paid by individual taxpayers did not qualify as a proper subject for *parens patriae* standing. *Id*. at 666. In that case, Pennsylvania sought to sue New Jersey over certain taxes that their residents were required to pay as non-resident workers in New Jersey. *Id*. at 662-63. It specifically alleged violations of the Privileges and Immunities Clause and the Equal Protection Clause of the Fourteenth Amendment. *Id*.

In rejecting standing, the Supreme Court explained the basic doctrine of *parens patriae*:

> The Court has recognized the legitimacy of Parens patriae suits. *See Hawaii v. Standard Oil Co.*, 405 U.S. 251, 257-260, 92 S.Ct. 885, 888-890, 31 L.Ed.2d 184 (1972); *Louisiana v. Texas*, 176 U.S. 1, 19, 20 S.Ct. 251, 257, 44 L.Ed. 347 (1900). **It has, however, become settled doctrine that <u>a State has standing to sue only when its sovereign or quasi-sovereign interests are implicated and it is not merely litigating as a volunteer the personal claims of its citizens</u>**.

*Id*. at 665 (emphasis added and numerous citations omitted).

Based on this rule, the Court held that the mere fact that residents of a State had to pay taxes that were alleged to violate the Constitution did not create *parens patriae* standing: "<u>**Pennsylvania's Parens patriae suit against New Jersey represents nothing more than a collectivity of private suits against New Jersey for taxes withheld from private parties. No sovereign or quasi-sovereign interests of Pennsylvania are implicated.**</u>" Accordingly, Pennsylvania's motion for leave to file suit as Parens patriae on behalf of its citizens is also denied." *Id*. at 666 (emphasis added).

*Pennsylvania v. New Jersey* controls the outcome of this case. The AG is alleging nothing more than a collectivity of private suits by parties allegedly harmed by the failure to conduct an island-wide appraisal. (*E.g.* Cmpl. ¶ 18 (alleging "multiple cases exist wherein property owner's

lands are not being uniformly taxed"); ¶¶ 20-21 (alleging individual violations of due process and equal protection rights of individual taxpayers)).

Indeed, the AG makes that the *only* reason he "brings this action *parens patriae*" is because of "the scope and magnitude of the Island-wide violation . . . affects every property owner who has not had a proper valuation of his or her property since 1996." (Cmpl. ¶ 24). That is not enough to show a quasi-sovereign or sovereign interest. *Pennsylvania* makes it clear that a State (or here, Territory) has no quasi-sovereign interest in individual taxpayer's claims simply because they are collected together, and even if those claims are asserted to be Constitutional. The AG needs to show a specific sovereign or quasi-sovereign interest and has not. Accordingly, the AG has failed to allege grounds demonstrating *parens patriae* standing.

**B. Because Guam Is a Federal Entity, It or Its Officers May Only Be Sued *Parens Patriae* by the Federal Government, not the AG**

In bringing suit *parens patriae*, the AG relies upon local Guam law. (Cmpl. ¶ 4). Specifically, he cites 5 G.C.A. § 30103, which states the "AG shall have, in addition to the powers expressly conferred upon him by this Chapter, those common law powers which include, but are not limited to, the right to bring . . . bring action on behalf of the Territory representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve." This law is inadequate in this case to support *parens patriae* standing, where the defendants are officers of the Government of Guam and, as will be discussed, therefore officers of a political subdivision of the United States.

The governing rule in *parens patriae* cases is that a State cannot bring suit against the United States *parens patriae*. "[T]he United States not the State represents the citizens as parens patriae in their relations to the federal government." *State of Georgia v. Penn. Ry. Co.*, 324 U.S. 439, 446 (1945); *Commonwealth of Massachusetts v. Mellon*, 262 U.S. 447, 485-86 (1923) ("While the state, under some circumstances, may sue . . . for the protection of its citizens [citation omitted], it is no part of its duty or power to enforce their rights in respect of their relations with the federal government. In that field it is the United States, and not the state, which represents them as parens patriae . . . ."); *State of Florida v. Mellon*, 273 U.S. 12, 18 (1927)

1  (holding State could not sue federal government *parens patriae* to challenge federal tax); *Alfred*
2  *L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592, 601, n.16 (1982) (stating that with respect to
3  the citizens' rights in relation to the federal government, "it is the United States, and not the State,
4  which represents them as *parens patriae* "); *Commonwealth of Puerto Rico v. Walters*, 660 F.
5  Supp. 1230, 1233 (D.P.R. 1987) (barring suit by Puerto Rico against federal government because
6  "[t]he norm is now settled that a state lacks *parens patriae* standing to file a judicial action
7  against the Federal Government"); *State of Nev. v. Burford*, 918 F.2d 854, 858 (9th Cir. 1990)
8  (reaffirming this rule and holding that a prior Ninth Circuit case that had sought to carve an
9  exception was overruled by *Alfred L. Snapp & Son*).

10     This rule has application to this suit. As the Ninth Circuit recently reaffirmed: "Guam
11  remains an unincorporated territory of the United States, 48 U.S.C. § 1421a, subject to the
12  plenary power of Congress. . . . Congress has the power to legislate directly for Guam or to
13  establish a government for Guam subject to congressional control, and except as Congress may
14  determine, Guam has no inherent right to govern itself." *Guam v. Guerrero*, 290 F.3d 1210, 1214
15  (9th Cir. 2002) (citing *Guam v. Okada*, 694 F.2d 565, 568 (9th Cir. 1982)). The government of
16  the Territory of Guam is thus simply an extension of the federal government—it enjoys no
17  separate sovereign identity, but rather exists as a creature of federal law and as subdivision of the
18  federal government's dominion. *O'Donoghue v. United States*, 289 U.S. 516, 537-38 (U.S. 1933)
19  ("'The Territories', . . . 'are but political subdivisions of the outlying dominion of the United
20  States.' . . . '[T]hey are mere dependencies of the United States.'") (citations omitted).

21     As a result, the defendants in this action (the Governor and Director of DRT) are simply
22  officers of this political subdivision of the United States. The Governor's position is created in
23  federal law in 48 U.S.C. § 1422. The Director of DRT's position is permitted to exist based upon
24  the provision of federal law contained at 48 U.S.C. § 1422(c).

25     This leads to the question of what entity can sue *parens patriae* against such officers. The
26  issue appears novel. But combining (1) the rule against *parens patriae* lawsuits against the
27  United States (including its officers) by anyone but the federal government, (2) with the nature of
28  Guam's officers as part of a political subdivision of the United States, (3) it appears a suit against

1  them *parens patriae* can only be brought by the federal government. In other words, unless

2  Congress expressly waived the sovereign rights of the United States and authorized the AG to

3  engage in *parens patriae* suits against the Territory's officers, he lacks such a sovereign power.

4  Here, as stated above, the AG is relying on 5 G.C.A. § 30103 to grant him *parens patriae*

5  standing, which is a local law and therefore inadequate. The AG thus lacks *parens patriae*

6  standing and his claims should be dismissed.[1]

7  **II.    EQUITY AND COMITY MANDATE DECLINING JURISDICTION**

8       In this suit, the AG seeks declaratory and injunctive relief with respect to the assessment

9  and collection of Guam real property taxes. The Supreme Court has held, however, that federal

10  courts should refrain from accepting jurisdiction and granting equitable or declaratory relief

11  relating to the validity or constitutionality of state taxes where the state affords the taxpayer

12  adequate remedies. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943)

13  ("For we are of the opinion that those considerations which have led federal courts of equity to

14  refuse to enjoin the collection of state taxes, save in exceptional cases, require a like restraint in

15  the use of the declaratory judgment procedure."). It has held that the public interest of avoiding

16  needless obstruction of the domestic policies of the state when private interests will not suffer

17  weighs heavily on the court when exercising its discretion to grant or deny equitable relief. *Great*

18  *Lakes*, 319 U.S. at 297-98. Thus,

19       The scrupulous regard for the rightful independence of state governments which
        should at all times actuate the federal courts, and a proper reluctance to interfere
20       by injunction with their fiscal operations, require that such relief should be denied
        in every case where the asserted federal right may be preserved without it.
21       **Whenever the question has been presented, this Court has uniformly held**
        **that the mere illegality or unconstitutionality of a state or municipal tax is not**
22       **in itself a ground for equitable relief in the courts of the United States. If the**
        **remedy at law is plain, adequate, and complete, the aggrieved party is left to**
23       **that remedy in the state courts, from which the cause may be brought to this**
        **Court for review if any federal question be involved.**

24  *Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932) (emphasis added). *See Great Lakes*, 319 U.S.

25  at 298 (1943) (quoting same and extending application to declaratory relief). This judicial

26

27  ───────────────

28  [1] Of course, this would not prevent the AG from bringing suit *parens patriae* against non-federal
    entities, and no such ruling is sought here.

1    pronouncement was later sanctioned by Congress in 28 U.S.C. § 1341.

2         To be sure, dismissal of a federal proceeding seeking injunction or declaratory relief with

3    respect to a state tax is only appropriate if a plain, adequate and complete remedy is available to

4    the taxpayer. *Matthews*, 284 U.S. at 525-26. However, Guam real property taxpayers have such

5    relief available to them, thus, this action must be dismissed. As is set forth throughout this

6    motion, Guam law affords taxpayers the opportunity to challenge an unlawful or invalid

7    assessment or levy. 11 G.C.A. §§ 24909, 24910. Within three years after a payment has been

8    made, taxpayers can file an application for a refund with the Director of DRT for taxes illegally

9    collected. 11 G.C.A. §§ 24906 and 24907. If a refund is denied by the Director of DRT, the

10   taxpayer then has the opportunity to appeal the denial to the Superior Court of Guam and

11   challenge before the court the validity of the tax. 11 G.C.A. § 24907.1.

12        Similarly, when taxes are paid under protest a taxpayer can seek a refund by filing suit in

13   Superior Court within six months to recover the tax paid under protest. 11 G.C.A. §§ 24909,

14   24910. Again, the taxpayer can present his or her challenges to the validity of the tax before the

15   court. Thus, the remedies available to taxpayers are plain, adequate and complete. *In re*

16   *Camacho* 2003 Guam 16, ¶ 41 (Guam's real property tax law "provides mechanisms to protect

17   taxpayers from being taxed on an inaccurate assessment"); *Great Lakes*, 319 U.S. at 301 (federal

18   jurisdiction was improper when "it appears that the state legislature has provided that on payment

19   of any challenged tax to the appropriate state officer, the taxpayer may maintain a suit to recover

20   it back. In such a suit he may assert his federal rights and secure a review of them by this Court.

21   This affords an adequate remedy to the taxpayer...."). Accordingly, in the appropriate exercise of

22   this court's discretion this action should be dismissed.[2]

23

24   [2] The Governor acknowledges that this Court recently rejected arguments that the express
     statutory prohibitions on declaratory and injunctive relief in federal courts barred a suit to recover
25   refunds of the earned income tax credit under Guam's Territorial Income Tax (which mirrors the
     Internal Revenue Code). *Simpao v. Govt. of Guam*, District Court of Guam Case No. CV04-
26   00049 (Order Mar. 17, 2005). That case, however, is not on point as it addressed the enforcement
     of the earned income credit under the Territorial Income Tax and Internal Revenue Code, not the
27   assessment or collection of any income tax. *See Simpao* Order p. 15. In contrast, this suit
     directly challenges the assessment and collection of real property taxes.
28

## III. ALL CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Examining the substance of his claims, the AG's complaint should be dismissed with prejudice because his three claims on the merits (that the property tax valuation system is not uniform, violates due process, and violates equal protection) are all barred by the doctrine of collateral estoppel.[3] Under governing Ninth Circuit law, "[t]he doctrine of collateral estoppel (or issue preclusion) 'prevents relitigation of issues actually litigated and necessarily decided, after a full and fair opportunity for litigation, in a prior proceeding.'" *Kourtis*, 419 F.3d at 994 (quoting *Shaw*, 56 F.3d at 1131)). A decision has preclusive effect where "(1) the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated; (2) the first proceeding ended with a final judgment on the merits; and (3) the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding." *Id.* (quoting *Hydranautics v. FilmTec Corp.*, 204 F.3d 880, 885 (9th Cir. 2000)).

In the present case, issue preclusion bars the AG's claims because of the final decision and judgment of the Guam Supreme Court in the case of *In Re Camacho*, 2003 Guam 16. *See Kourtis*, 419 F.3d at 994 n.2 (court can take judicial notice of opinion in other proceeding on motion to dismiss for collateral estoppel); *Shaw*, 56 F.3d at 1129 n. 1 (same). As will be shown, that decision is preclusive here.

### A. The Validity of the Property Tax Appraisal System Was Necessarily Decided

*In Re Camacho* involved the propriety of a government of Guam bond measure, which the Governor contended was lawful and the AG contended was unlawful. *See In Re Camacho*, 2003 Guam 16, ¶¶ 1, 3. The question was whether the bond violated Section 11 of Guam's Organic Act, its so-called "debt ceiling" on the amount of borrowing it could engage in based the value of the real property on Guam. *Id.* ¶ 9. The court first determined that this debt ceiling was "based on the appraised value of all taxed property on Guam" and that therefore "the next logical question is where or how to ascertain the appraised value of property." *Id.* ¶ 29. Having reached this issue, the Supreme Court held that the value of the real property would have to be based upon "the tax roll in effect at the time the debt is incurred." *Id.* ¶¶ 30, 31. The Court then held that this

---

[3] As stated *infra*, the fourth claim for injunctive relief depends on the merits of the other claims.

required determining whether the present property tax assessment system was valid:

> Therefore, in determining the government's current debt limit, we use the appraised valuations of property as certified in the 2002 tax roll. In doing so, we reject the AG's contention that the 2002 tax list cannot be relied upon because it was computed in violation of 11 G.C.A. § 24306, which provides that property on Guam be revalued every three years. As emphasized by the AG, the last triennial valuation required under 11 G.C.A. § 24306 was conducted in 1993, and became effective in 1995. The AG argues that because a valuation has not been conducted since then, and because there is evidence that the property values on Guam have severely depreciated since that time, the 2002 tax list cannot be relied upon in determining the government's current debt limit. We disagree.

*Id.* at ¶ 32.

### B.   The Issues Were Identical to the Issues Here

In holding the real property tax assessment system valid, the Guam Supreme Court addressed issues identical to the issues raised here in regard to the AG's three substantive claims:

- *The Court Held the System Was "Uniform."* In Count I of his Complaint, the AG alleges that the present tax appraisal system is not "uniform," in alleged violation of 48 U.S.C. §1423a. (Cmpl. ¶ 30). The Guam Supreme Court specifically looked at section 1423a. *In Re Camacho*, 2003 Guam 16, ¶ 40 ("The only limit to the legislature's taxing power in the Organic Act is the requirement in Section 11 that taxes be *uniform.* 48 U.S.C.A. § 1423a."). It then specifically held that there was no violation of this section. *Id.* ("The fact that the 2002 tax roll was based on a 1993 appraisal <u>does not appear to violate the requirement of uniformity in the Organic Act</u>....") (emphasis added). In support, it demonstrated that "there are mechanisms which exist in the statutory scheme to ensure the fairness of the valuations in the 2002 list." *Id.* ¶ 41 (citing 11 G.C.A. § 24307 (assessor is required to update the tax roll annually with information regarding new properties and the destruction of old properties); 11 G.C.A. § 24307 (requiring the tax assessor, during the years between the triennial assessment, to "ascertain the value of all property . . . which shall have become taxable since the last valuation, including new improvements or additions to old improvements . . . and in the case of destruction or injury . . . the value of which shall have been included in the former valuation of the property, the assessor shall determine the value of such loss and reduce the valuation accordingly."); 11 G.C.A. § 24310 (property owners who claim a reduction in valuation based on the change in use of their property,

or because of destruction or injury to the property, are required to file a report with assessor by March 1st of year in which the reduction is sought); 11 G.C.A. § 24509 ("[A]ny person assessed, or his agent, may file with the Board on or before September 15, a written application for equalization of his assessment or correction of the roll."), 11 G.C.A. § 24511 ("The Board, *upon a showing of unreasonableness*, may increase or reduce any assessment . . . throughout Guam.")).

•  ***The Court Held that the System Protected Due Process.***  In Count II, the AG alleges that the present tax appraisal system violates due process because tax payers could be taxed on inaccurate assessments. (Cmpl. ¶ 36). Relying upon both the Guam statutes cited above and the declaration of the Director of DRT[4], the Guam Supreme Court held that "the law provides mechanisms to protect taxpayers from being taxed on an inaccurate assessment." *In Re Camacho*, 2003 Guam 16, ¶ 41 (emphasis added); *see also* ¶ 42 ("Furthermore, property owners have not been unduly deprived of their statutory rights to challenge assessments."). Indeed, the AG's present due process claim is particularly based upon an allegation that economic changes have decreased the value of Guam properties since the last appraisal. (Cmpl. ¶ 10). But the Guam Supreme Court already held that "with regard to reduction in appraisal values due to market forces, the law provides a mechanism to challenge an annual assessment." *In Re Camacho*, 2003 Guam 16, ¶ 41 (citing 11 G.C.A. §§ 24509, 24511) (emphasis added).

•  ***The Court Held that the System Did Not Subject Property Owners to Unreasonable or Discriminatory Treatment.***  In Count III, the AG alleges that the present tax system violates equal protection because property owners are subject to discriminatory treatment based on whether they acquired their property before or after 1996. (Cmpl. ¶ 40). To show that the government engaged in a violation of equal protection, the government only needs to show

---

[4] The Governor requests that the Court take judicial notice of the Declaration of the Director of DRT, Artemio Ilagan, filed in *In re Camacho*. *Kourtis v. Cameron*, 419 F.3d 989, 994 n.2 (9th Cir. 2005) ("court records from related proceedings can be taken into account *without* converting a motion to dismiss into a summary judgment motion."); *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.1994) (the court may take judicial notice of administrative records and reports). The Director of DRT's declaration was relied upon by the court in *In re Camacho*. *See* 2003 Guam 16, ¶¶ 31, 44, 58, fn. 11. The Delcaration of the Director of DRT is attached as Exh. A to the Declaration of Janalynn C. Damian, filed herewith (Damian Decl.)

that it had a rational basis, *i.e.* that it behaved reasonably. *See infra.* Here, again relying on Guam law, the Guam Supreme Court rejected the "discriminatory treatment" argument in the bond litigation and held that the present system was reasonable: "The fact that the 2002 tax roll was based on a 1993 appraisal does not . . . render the valuations in the 2002 list unacceptably discriminatory or unreasonable." *In Re Request of Camacho*, 2003 Guam 16, ¶ 40.

## C. There Was a Final Judgment on the Merits

The next requirements for collateral estoppel to apply also is met. The Guam Supreme Court's decision was issued under 7 G.C.A. § 4104. Such decisions are final and binding determinations under Guam law. *See In re Request of Gutierrez Relative to the Organicity and Constitutionality of Public Law 26-35*, 2002 Guam 1 ¶ 6 ("Declaratory judgments issued by this court pursuant to section 4104 are binding."). Indeed, the AG sought to appeal the Guam Supreme Court's judgment to the Ninth Circuit as addressed *infra*, implicitly recognizing its final and binding nature in the federal system in his statement of jurisdiction in his petition for writ of certiorari. (Damian Decl. Exh. B) The Ninth Circuit also recognized the finality of the opinion when it accepted writ review as requested by the AG. (Damian Decl. Exh. C).

The AG could attempt to argue that preclusion is premature because the bond litigation decision is on appeal to the Ninth Circuit. However, that argument would not be valid. The Guam Supreme Court has adopted the Ninth Circuit's test for collateral estoppel. *See People v. San Nicolas*, 1999 Guam 19, ¶ 13. Accordingly, the collateral estoppel affect of the Guam Supreme Court's decision is the same as for a federal judgment, and the rule as to federal judgments is that the existence of an appeal does not diminish the preclusive affect of a judgment. *See Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988).[5]

---

[5] The AG can no longer hope to prevail in that appeal. The Ninth Circuit took the bond litigation appeal under its then-existent certiorari jurisdictions over the Guam Supreme Court under 48 U.S.C. § 1424-2 (2002). Effective October 30, 2004, section 1424-2 was amended to eliminate such jurisdiction. See P.L. 108-378, 2004 HR 2400. In *Santos v. Guam*, 436 F.3d 1051 (9th Cir. Jan. 3, 2006), the Ninth Circuit held that it lost certiorari jurisdiction over cases it was reviewing once the statute was amended. Earlier, the Ninth Circuit had withdrawn submission of the bond litigation appeal pending *Santos*. (Damian Decl. Exh. D). Now, after that decision, the Ninth Circuit has resubmitted the bond litigation case (Damian Decl. Exh. E), and an order dismissing the appeal appears inevitable.

### D. The Parties Are Identical

Finally, the parties to this action and the bond litigation are identical (or at least in privity). *Resolution Trust Corp. v. Keating*, 186 F.3d 1110, 115 (9th Cir. 1999) (issue preclusion can apply to parties to a prior action and parties in privity with parties to a prior action) (citation omitted). In the bond litigation, the parties were the Governor and the AG. The AG's appearance in the bond litigation was on behalf of the Government of Guam. (Damian Decl. Exh. F). Here, the parties also are the Governor and the AG again appearing on "behalf" of the Government of Guam. Thus, the parties are identical.

Privity also is apparent. It is the AG who directed and controlled the bond litigation and who directs and controls this suit. *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1081 (9th Cir. 2003) ("a non-party who controlled the original suit will be bound by the resulting judgment"). And the fact that in both cases he sought to assert the rights of the "government" also establishes a commonality of identity and interest. *Id.* at 1081 ("privity may exist if there is substantial identity between parties, that is, when there is sufficient commonality of interest.) (quotation omitted). In sum, all facts necessary for collateral estoppel to apply are present and this action should be dismissed with prejudice.

## IV. COUNT I FAILS TO STATE A CLAIM ON WHICH RELIEF CAN BE GRANTED

In Count I, the AG asserts that he requires declaratory relief under 48 U.S.C. § 1423a because "Congress intended under 48 U.S.C. § 1423a that real property be 'uniformly' assessed." (Cmpl. ¶ 27). According to the AG, the current system is not 'uniform' because "property owners who have had their lands assessed post-1996 *and* had [DRT] agree with their assessment . . . have been able to accurately have their lands appraised" whereas "[a]ll other persons remain subject to an arbitrary and discriminatory tax assessment scheme." (Cmpl. ¶ 28). Thus, he asserts that tax payers must be "as a matter of law entitled to a proper valuation of their property *before* they are assessed taxes" (Cmpl. ¶ 29) and he asserts that the defendants have failed to conduct "timely, *uniform*, and comprehensive appraisals" and that this has "violated Congress' requirement under 48 U.S.C. § 1423a that taxes be assessed uniformly." (Cmpl. ¶ 30).

1    In relevant part, 48 U.S.C. § 1423a states that "taxes and assessments on property" are

2    authorized as "uniformly provided by the Legislature of Guam...." (emphasis added). The AG

3    alleges there is not a "uniform" system because recent purchasers of property are able to use the

4    appraisal from their purchase to change the value of their property. (Cmpl. ¶ 28 ("Those property

5    owners who have had their lands assessed post-1996 *and* had [DRT] agree with their assessment,

6    such as new property purchases when values are assigned by Defendant DRT, have been able to

7    accurately have their lands appraised and taxed than others [sic].") He claims this is not uniform

8    because "[a]ll other persons remain subject" to the prior island-wide appraisal that is "arbitrary

9    and discriminatory." (*Id.*). And he asserts that conducting appraisals every three years (as

10   referenced in local law *but not the Organic Act*) would create a "uniform" system. (*E.g.* Cmpl. ¶

11   23 (alleging harm is caused "[a]s a consequence of Defendants' failure to conduct the

12   comprehensive, Island-wide appraisal of real property every 3 years...").

13        The AG's proposed meaning of the word "uniformly" in 48 U.S.C. § 1423a does not

14   survive scrutiny. Following AG's logic, the only way to have a "uniform" system would be if an

15   appraisal was conducted on every property every year. Specifically, under existing laws,

16   whatever the most recent island-wide appraisal, taxpayers can always use their own, most recent

17   appraisals to challenge it. If an island-wide appraisal was conducted in 2006, under the AG's

18   logic, a taxpayer who pays the 2006 appraisal amount in 2007 would not be being treated

19   "uniformly" as compared to a taxpayer who obtained a new, lower appraisal in 2007 and paid that

20   amount in 2007. Indeed, an island-wide appraisal could never generate "uniformity" within a

21   given year, as one taxpayer might obtain a more favorable, individually procured appraisal for

22   2006, while another relies on a less favorable island-wide appraisal for 2006.

23        For there to be a functional system, the word "uniformly" cannot be assigned the meaning

24   the AG gives to it. Guam's present system satisfies the Organic Act's uniformity requirement

25   because it gives every taxpayer the same opportunities. *See In re Camacho*, 2003 Guam 16, ¶¶

26   40-41. Every tax payer has a uniform right to either (1) rely on the most recent island-wide

27   appraisal under 11 G.C.A. § 24306; or (2) to challenge that appraisal before the Board of

28   Equalization under 11 G.C.A. § 24509. The AG appears to be suggesting that this is not uniform

1  because new purchasers already have new appraisals (Cmpl. ¶ 28), while old landowners
2  "normally must pay" for a new appraisal. (Cmpl. ¶ 16). This defies common sense. New
3  purchasers have new appraisals because someone (usually the purchaser) *purchased the new*
4  *appraisal.* The system is therefore "uniformly" permitting anyone who obtains a new appraisal
5  to apply for an adjustment (as well as anyone who can show other grounds for adjusting an
6  appraisal, such destruction of a building, etc.). 11 G.C.A. § 24509.

7       This system thus is "uniform." Indeed, the concept that persons who invest money in
8  reducing their taxes may succeed in their efforts is hardly novel. Any person who hires an
9  accountant is likely to realize a lower tax bill. In a condemnation proceeding, where the
10  government insists on a valuation of the condemned land, an owner who invests the money to
11  obtain a competing expert appraisal is by simple logic likely to obtain a better result than one who
12  does not. These are simple if imperfect truths about any interaction between the government and
13  taxpayers or property owners. They do not give rise to federal claims. *See also infra* Part VI.

14  **V.    COUNT II DOES NOT STATE A VALID DUE PROCESS CLAIM**

15       The due process clause of the Fourteenth Amendment does not require precise equality or
16  uniformity in taxation, and does not prohibit inequality in taxation which results from mere
17  mistake or error in the judgment of tax officials. *See Walters v. City of St. Louis*, 347 U.S. 231,
18  237 (1954); *Charleston Federal Sav. & Loan Ass'n v. Alderson*, 324 U.S. 182, 190 (1945).
19  Instead, its protection extends only to taxation that is <u>manifestly arbitrary</u> or <u>grossly unequal</u> in its
20  application to the persons concerned. *Dane v. Jackson*, 256 U.S. 589 (1921). Thus, states have
21  wide discretion in the laying and collecting or their taxes, and the Fourteenth Amendment only
22  requires that such discretion not be exercised so as to arbitrarily deprive persons of their
23  constitutional rights.

24       The AG's due process claim centers on his allegation that the Governor is depriving the
25  people of Guam of property without due process of law by assessing real property taxes and
26  foreclosing upon property for failure to pay the tax without first ascertaining the actual value of
27  the property being taxed. (Complaint ¶¶ 1, 33) More specifically, the AG alleges that taxpayers'
28  due process rights are violated because the value upon which the Director assesses real property

1  taxes is not the actual value of the property, but, rather, is an out-dated value based upon an

2  island-wide appraisal conducted in 1993. (Complaint ¶ 20)

3      Notwithstanding such allegations, the laws of Guam provide adequate due process. *See*

4  11 G.C.A. § 24101 et seq. *See In re Camacho*, 2003 Guam 16, ¶ 41 (Guam's real property tax

5  law "provides mechanisms to protect taxpayers from being taxed on an inaccurate assessment.").

6  Specifically, as discussed below, all taxpayers are afforded the opportunity to challenge an

7  assessment prior to paying the tax levied by filing a petition before the Board of Equalization and,

8  if a taxpayer chooses to pay the tax (either voluntarily or under protest), procedures are in place

9  that provide a taxpayer with the opportunity to obtain a refund in the event the taxpayer's

10  challenge of the accuracy and legal validity of his or her tax obligations is found to be valid.

11      The Real Property Tax Division of DRT is responsible for compiling on or before

12  September 1 each year, a Tax Roll, identifying all taxable properties by legal lot description,

13  owners of record, appraised and assessed values and corresponding tax assessments. *See* 11

14  G.C.A. §§ 24320 and 24322. Each September 1, the Director transmits the Tax Roll to the Board

15  of Equalization. *See* 11 G.C.A. § 24507. If a taxpayer wishes to challenge an assessment by the

16  Director, prior to paying the tax due the taxpayer can file an application for adjustment before the

17  Board of Equalization between September 15 and October 15 each year. *See* 11 G.C.A. §§ 24509

18  and 24510. Once an application is filed, the taxpayer is given notice of a hearing, during which

19  the taxpayer can present evidence. *See* 11 G.C.A. § 24513. Upon a showing of

20  unreasonableness, the Board may increase or decrease an assessment. *See* 11 G.C.A. § 24511.

21      This process is available to every taxpayer prior to the payment of any tax. "The

22  availability of a predeprivation hearing constitutes a procedural safeguard against unlawful

23  deprivations sufficient by itself to satisfy the Due Process Clause, and taxpayers cannot complain

24  if they fail to avail themselves of this procedure." *McKesson Corp. v. Division of Alcoholic*

25  *Beverages and Tobacco*, 496 U.S. 18, 38 n. 21 (1990). Thus, because taxpayers are able to

26  challenge the assessments made by the Director of DRT prior to paying their taxes, taxpayers are

27  not denied due process of law. *See* 2003 Guam 16, ¶ 42 ("property owners have not been unduly

28  deprived of their statutory rights to challenge the assessments.").

1   Even if taxpayers do not avail themselves of the opportunity to contest their real property

2   tax assessments before the Board of Equalization, and instead pay the tax, such payment does not

3   constitute deprivation of property without due process because taxpayers still have the

4   opportunity to seek a refund of taxes paid voluntarily or under protest. In other words, taxpayers

5   have post-deprivation relief available as well. *See McKesson Corp.*, 496 U.S. at 2250 ("it is well

6   established that a State need not provide predeprivation process for the exaction of taxes.").

7   Further due process protections are available if a taxpayer already voluntarily paid his or

8   her taxes. Within three years after a payment has been made, taxpayers can file an application for

9   a refund with the Director of DRT. *See* 11 G.C.A. § 24907. The Director of DRT, with the

10  approval of the AG, can refund any taxes, penalties or costs if, *inter alia*, they were erroneously

11  or illegally collected. *See* 11 G.C.A. § 24906. If a refund is denied by the Director, the taxpayer

12  then has the opportunity to appeal the denial to the Superior Court of Guam. *See* 11 G.C.A. §

13  24907.1. If successful, the taxpayer's remedy is clear – a refund is given.

14  Similarly, as for taxes paid under protest, a taxpayer can seek a return of such payment by

15  submitting the payment with a written protest stating the grounds on which the tax or assessment

16  is claimed to be illegal and then filing suit in the Superior Court within six months of such

17  payment to recover the tax paid under protest. *See* 11 G.C.A. §§ 24909, 24910. Again, if

18  successful, the taxpayer is given a refund of the taxes unlawfully collected. Even if property is

19  foreclosed upon for the nonpayment of taxes, the taxpayer is given notice prior to the foreclosure

20  and has a one year right of redemption, during which period the taxpayer can seek to set aside the

21  foreclosure. *See* 11 G.C.A. § 24812. Further, after the tax sold property is deeded to the

22  government, the taxpayer has another six months to challenge the validity of the foreclosure, and

23  again seek the return of the property sold for nonpayment of taxes. *See* 11 G.C.A. § 24816.

24  With respect to the due process claim, the specific provision of Guam's real property tax

25  law alleged not to be complied with by DRT is 11 G.C.A. § 24306. That section generally

26  provides that the Director shall conduct an island-wide valuation of all property on Guam every

27  three years. However, it also expressly states that if such a triennial valuation is not performed

28  every three years, then the Director is permitted to base his assessment upon the last valuation

1  completed as supplemented by the adjustments made by the Director because of a change in use,

2  destruction, improvement, or addition to a specific property. *See* 11 G.C.A. § 24307.

3  The last triennial valuation was completed in 1993. *See In re Camacho*, 2003 Guam 16, ¶

4  32. The real property values generated as result of the 1993 valuation were applied against all

5  properties beginning in tax year 1995. *See id*. In compliance with sections 24306 and 24307,

6  DRT has been determining the value of property on Guam for the purposes of assessing real

7  property taxes based on annual adjustments to the 1993 values for property that has been

8  improved or suffered loss. *See* 2003 Guam 16, ¶ 41. Additionally, since 1995 adjustments have

9  been made by the Board of Equalization upon application of a taxpayer. *See id.*

10  The use of the older valuation cannot *per se* violate due process. *E.g. Uniroyal, Inc. v.*

11  *Board of Tax Review*, 438 A.2d 782, 787 (Conn. 1981) (confirming the legislature's authority to

12  determine that tax assessment valuations be conducted every ten years). As summarized above,

13  at all stages and in all cases, taxpayers are afforded full due process under the law. Because all

14  taxpayers are provided with a fair opportunity to challenge the accuracy and legal validity of their

15  property tax obligations and with clear and certain remedies (*i.e.*, refunds of tax unlawfully

16  collected or the redemption or property unlawfully sold), there is no deprivation of property

17  without due process. *See Mathews v. Eldridge*, 424 U.S. 319 at 333 (1976) ("The fundamental

18  requirement of due process is the opportunity to be heard 'at a meaningful time and in a

19  meaningful manner'"); *Atchinson, Topeka, & Santa Fe Railway Co. v. O'Connor*, 223 U.S. 280 at

20  285 (1912) (due process requires a "clear and certain remedy"). For these reasons, the AG has

21  failed to state a valid due process claim as a matter of law.

22  **VI.   COUNT III DOES NOT STATE A VALID EQUAL PROTECTION CLAIM**

23  Count III of the AG's Complaint seeks to state a claim for violation of equal protection.

24  The asserted ground is that land owners are being treated differently depending on whether their

25  property was assessed before or after 1996. (Cmpl. ¶¶ 21, 40). Where, as here, "no 'suspect

26  class' is involved and no fundamental right is burdened, a rational basis test is used to determine

27  the legitimacy of the classification" under the Equal Protection Clause. *Olagues v. Russoniello*,

28  770 F.2d 791, 802 (9th Cir. 1985) (citing *Mass. Bd. of Retirement v. Murgia*, 427 U.S. 307, 311-

1    12 (1976) (per curiam). The rational-basis test "employs a relatively relaxed standard reflecting

2    the Court's awareness that the drawing of lines that create distinctions is peculiarly a legislative

3    task and an unavoidable one. *Perfection in making the necessary classifications is neither*

4    *possible nor necessary.*" *Murgia*, 427 U.S. at 314 (citation omitted and emphasis added). To the

5    contrary, "*[s]uch action by a legislature is presumed to be valid.*" *Id.*

6         And, this case involves taxation. In *San Antonio School District v. Rodriguez*, 411 U.S. 1

7    (1972), the Court was "asked to condemn the State's judgment in conferring on political

8    subdivisions the power to tax local property to supply revenues for local interests. In so doing,

9    appellees would have the Court intrude in an area in which it has traditionally deferred to state

10   legislatures. [Footnote omitted]. This Court has often admonished against such interferences

11   with the State's fiscal policies under the Equal Protection Clause." *Id.* at 40. It explained:

12        (T)he passage of time has only served to underscore the wisdom of that
          recognition of the large area of discretion which is needed by a legislature in
13        formulating sound tax policies. . . . It has . . . been pointed out that **in taxation,**
          **even more than in other fields, legislatures possess the greatest freedom in**
14        **classification.** Since the members of a legislature necessarily enjoy a familiarity
          with local conditions which this Court cannot have, **the presumption of**
15        **constitutionality can be overcome only by the most explicit demonstration**
          **that a classification is a hostile and oppressive discrimination against**
16        **particular persons and classes.** . . .'
                              *      *      *
17        **No scheme of taxation, whether the tax is imposed on property, income, or**
          **purchases of goods and services, has yet been devised which is free of all**
18        **discriminatory impact. In such a complex arena in which no perfect**
          **alternatives exist, the Court does well not to impose too rigorous a standard of**
19        **scrutiny lest all local fiscal schemes become subjects of criticism under the**
          **Equal Protection Clause.**
20
     *Id.* at 40-41 (quoting *Madden v. Kentucky*, 309 U.S. 83, 87-88 (1940)) (emphasis added).
21
          Applying these standards, the AG alleges that the failure to conduct the triennial valuation
22
     creates an unlawful classification of taxpayers–those who acquired their land pre-1996 who are
23
     allegedly assessed at inflated values and those taxpayers who acquired their land post-1996 who
24
     are allegedly assessed at actual values. (Complaint ¶ 21). The AG then alleges that
25
     discrimination occurs because pre-1996 taxpayers are unable to have the actual values of their
26
     real properties determined because of the failure to conduct the triennial valuation. (*Id.* ¶ 21).
27

28

The AG's allegations of discriminatory treatment are once again rebutted by local law. Again, every tax payer has an equal right to either (1) rely on the most recent island-wide appraisal under 11 G.C.A. § 24306; or (2) to challenge that appraisal before the Board of Equalization under 11 G.C.A. § 24509 (possibly by obtaining a new appraisal). Further, an appeals process is available to all taxpayers affording them the opportunity to challenge an unreasonable assessment. *See* 11 G.C.A. § 24509.

"Post-1996" land owners receive no discriminatory "benefit." If they rely on a new appraisal to supersede the 1993 island-wide appraisal, they do so because they obtained a new appraisal as part of their purchase. "Pre-1996" landowners can have the same right if they obtain a seek an adjustment to the assessment by the Director of DRT. No discrimination is occurring, and certainly not the "hostile and oppressive discrimination against particular persons and classes" required as a matter of law to state an Equal Protection claim regarding taxes. *San Antonio School District*, 411 U.S. at 40-41.

## VII. COUNT IV DOES NOT STATE A VALID CLAIM FOR INJUNCTIVE RELIEF

In Count IV, the AG asserts only that the alleged failure to conduct "timely, comprehensive and *uniform*" appraisal will cause irreparable harm and that this violates the Organic Act and Constitution. (Cmpl. ¶¶ 45-46). Thus, this claim is entirely dependent on the allegations of Counts I-III. Because Counts I-III must be dismissed, so must this claim.

## VIII. IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS PROCEEDING

For the multiple reasons given, this action should be dismissed. However, the Governor recognizes that some (but not all) of these reasons require the Court to determine the affect of *In re Camacho*, 2003 Guam 16, on this proceeding. And he recognizes that the AG may argue that this is premature because that case currently is on appeal to the Ninth Circuit. As stated earlier, that argument would not be not valid because the fact that a judgment is on appeal in the federal system does not diminish its preclusive affect. *See Robi*, 838 F.2d at 327.

But if this case is not dismissed, it should be stayed pending the final disposition of *In re Camacho*. A federal court has the inherent power to stay proceedings "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for

litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). In *Landis*, the Court recognized that a stay of one action pending another action can be proper where the issues overlap. *Id.* at 254. In determining the factors to be examined in granting a *Landis* stay, the Ninth Circuit has held:

> Where it is proposed that a pending proceeding be stayed, the competing interests . . . must be weighed. Among those competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quotation omitted).

Here, granting a stay for the short time necessary for final resolution of the bond litigation will cause no discernible harm, as the present property tax valuation system has existed for twelve years under the AG's own allegations (Cmpl. ¶ 13), and so an additional extension of a few months will have little affect. In comparison, in being required to re-litigate issues on which he already prevailed, there is prejudice to the Governor. There also would be harm to the orderly course of justice, which is best served by avoiding re-litigation of issues already determined assuming (as appears almost inevitable given the lack of Ninth Circuit jurisdiction and the dim possibility of the Supreme Court granting certiorari) that the bond litigation decision prevails on appeal. For these reasons, while this action should be dismissed outright, if it is not, then it should instead be stayed pending the final determination of the appeal of *In re Camacho*.

## CONCLUSION

For the forgoing reasons, the Governor respectfully requests that the AG's complaint be dismissed with prejudice, or in the alternative that this case be stayed.

DATED this 2nd day of March, 2006.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Defendant
*Felix P. Camacho, Governor of Guam*

By: _____
DANIEL M. BENJAMIN