# EXHIBIT "B"

C.A. CASE NO. _____

# UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

|  |  |
|---|---|
| IN RE: )<br>REQUEST OF GOVERNOR FELIX )<br>P. CAMACHO RELATIVE TO THE )<br>INTERPRETATION AND )<br>APPLICATION OF SECTION 11 )<br>OF THE ORGANIC ACT OF )<br>GUAM )<br>)<br>_____ ) | Supreme Court of Guam<br>Case Number CRQ03-001 |

**Governor Felix P. Camacho,**
Respondent-Petitioner

**Douglas B. Moylan, Office of the Attorney General**
Petitioner-Party in Interest

## PETITION FOR WRIT OF CERTIORARI

From the Supreme Court of Guam

Douglas B. Moylan
Attorney General of Guam
Office of the Attorney General
Civil Division
Guam Judicial Center, Suite 2-200E
120 West O'Brien Drive
Hagåtña, Guam 96910
(671) 475-3324

# TABLE OF CONTENTS.

PAGE

TABLE OF CONTENTS ................................................….. i

TABLE OF AUTHORITIES ...........................................…..... iii-iv

STATEMENT OF THE BASIS OF JURISDICTION ............................... 1

QUESTIONS PRESENTED FOR REVIEW ........................................ 2

STATEMENT OF THE CASE ........................................…....…..... 3

**ARGUMENT**

    **A.**   **THE NINTH CIRCUIT HAS JURISDICTION TO GRANT A WRIT OF CERTIORARI TO REVIEW DECISIONS RENDERED BY THE SUPREME COURT OF GUAM UNDER ITS *ORIGINAL* JURISDICTION** ......... 9

    **B.**   **THE SUPREME COURT OF GUAM HAS DECIDED AN IMPORTANT QUESTION OF FEDERAL LAW WHICH HAS *NOT*, BUT SHOULD BE SETTLED BY THIS COURT** ........................................... 11

        **1.**   **It is important for this Court to determine the meaning of 48 U.S.C. § 1423a, which establishes a debt ceiling limitation for the Government of Guam** .... 11

        **2.**   **The Supreme Court of Guam has misinterpreted the debt limitation provision of 48 U.S.C. § 1423a** .......... 14

    **C.**   **BECAUSE OF PECUNIARY INTERESTS IN THE OUTCOME OF THIS CASE, TWO OF THE JUSTICES ON THE PANEL SHOULD HAVE RECUSED THEMSELVES** ...................................... 23

i

    **D.**    **THE ATTORNEY GENERAL'S DUE**
           **PROCESS RIGHTS WERE VIOLATED**
           **BECAUSE HE WAS NOT ALLOWED**
           **TO DEVELOP AN ADEQUATE**
           **FACTUAL RECORD** ....................................................... **25**

CONCLUSION ................................................................. 26

CERTIFICATION OF COMPLIANCE ...................................................... 28

CERTIFICATE OF COMPLIANCE PURSUANT TO CIRCUIT
        RULE 32-1 ................................................................... 29

DECLARATION OF SERVICE ............................................................. 31

Case 1:05-cv-00038    Document 15-7    Filed 03/02/2006    Page 4 of 23

# TABLE OF AUTHORITIES.

PAGE

**NINTH CIRCUIT RULES:**

Circuit Rule 6-2(a)(1) ............................................................... 10, 27

Circuit Rule 6-2 .............................................................. 1


**SUPREME COURT OF GUAM CASES:**

In Re Request of Carl T.C. Gutierrez, Relative to the
     Organicity and Constitutionality of Public Law 26-35,
     2002 Guam 1 ................................................... 4, 7, 9, 10

In Re:  Request of Governor Carl T.C. Gutierrez for a
     Declaratory Judgment as to the Organicity of Guam
     Public Law Number 22-42, CRQ96-001 ......................... 9

In Re:  Request of Governor Felix P. Camcho Relative to
     the Interpretation and Application of Section 11
     of the Organic Act of Guam, 2003 Guam 16 ................... 14, 16, 19, 20, 21,
                                                                        23, 24


**DISTRICT COURT OF GUAM CASES:**

GTA v. Rivera, 416 F. Supp. 283 (D. Gu. 1976) ......................... 11


**STATE COURT & TERRITORIAL CASES:**

Berne Corp. v. Gov't of Virgin Islands, 2003 WL 21078073
     (D. Virgin Islands, May 12, 2003) ................................ 19, 20, 21

iii

Reimer v. Holyoke, 93 Colo. 571, 27 P.2d 1032 (Colo. 1933) ......... 22

State ex rel. Village of Oak Hill v. Brown, 180 N.E.
      707 (Ohio 1932) ...................................................... 16


**FEDERAL CONSTITUTION & STATUTES:**

48 U.S.C. § 1423a (§ 11 Organic Act of Guam) ....................... 2, 4, 7, 11, 12,
                                                                     13, 14, 20, 22

48 U.S.C. § 1424-2 ................................................. 1, 9, 10


**GUAM STATUTES:**

5 G.C.A. § 22601 .................................................. 3

7 G.C.A. § 4104 ................................................... 3, 4, 7, 9

7 G.C.A. § 6105 .................................................. 6

7 G.C.A. § 6105(a) .............................................. 24

7 G.C.A. § 6105(b)(4) ........................................... 24

11 G.C.A. § 24102(f) ........................................... 14, 16

11 G.C.A. § 24306 .............................................. 3, 20

Guam P.L. No. 27-19 ........................................... 3, 5, 6, 10, 11, 13,
                                                               14, 15, 16, 17,
                                                               23

Guam P.L. No. 27-21 ........................................... 4, 12, 17, 18, 19

iv

**STATE CONSTITUTIONS:**

MASS. CONST. PT. 2, C. III, ART. II (2001) ……………………….. 9

**LEGAL DIGESTS:**

McQuillin on Municipal Corporations, (3rd ed.) § 41.17 at 404 ……… 22

McQuillin on Municipal Corporations, (3rd ed.) § 41.18 at 404 ……… 23

v

## STATEMENT OF THE BASIS OF JURISDICTION.

This petition for a writ of certiorari is filed pursuant to 48 U.S.C. § 1424-2 and Circuit Rule 6-2 of the Federal Rules of Appellate Procedure for the United States Court of Appeals for the Ninth Circuit. Petitioner seeks review of the July 23, 2003 declaratory judgment issued by the Supreme Court of Guam in its Case Number CRQ03-001. **Appendix 1.** This opinion was entered on the Supreme Court's docket on July 23, 2003. **Appendix 2.**

1

## QUESTIONS PRESENTED FOR REVIEW.

**Question 1:**   Whether the Supreme Court of Guam erred in finding that § 11 of the 1950 Organic Act of Guam (48 U.S.C. § 1423a), which imposes a debt ceiling upon the maximum borrowing authority of the Government of Guam, has *not* been exceeded?

**Question 2:**   Whether the Supreme Court of Guam erred in finding that two (2) members of the Supreme Court panel that heard the case could remain on its panel notwithstanding their financial interest in the outcome of the decision?

**Question 3:**   Whether the Supreme Court of Guam erred in making factual findings without adequately permitting the creation of a factual record?

2

# STATEMENT OF THE CASE.

### 1.    Summary of the proceedings.

On April 28, 2003 the Legislature of Guam passed Guam Public Law Number 27-19, which authorized the Government of Guam to borrow about $418 Million.  **Appendix 3.**  The Governor must sign any bond agreement that the Government of Guam enters into.  Guam law also requires the Attorney General of Guam (elected) to review and approve all contracts which the Governor of Guam signs.  5 G.C.A. § 22601.  **Appendix 4.**

On May 14, 2003 the Attorney General of Guam advised the Governor of Guam that because the value of property on Guam had *not* been re-appraised for over ten (10) years, an actual appraisal, as required by Guam law, should be performed in order to accurately determine the debt ceiling.  **Appendix 1, ¶ 3.**  Guam law, 11 G.C.A. § 24306, provides that actual land appraisals be performed every three (3) years.  **Appendix 5.**  The last appraisal was performed during the tail end of Guam's economic boom cycle in 1993.  **Appendix 1, ¶ 32.**  The local Board of Equalization has nonetheless made adjustments since that time without any further actual appraisals of property as required by Guam law.  **Appendix 1, ¶ 32.**  Alternatively, the Attorney General suggested that the question be resolved in the Supreme Court of Guam under a local law, 7 G.C.A. § 4104, which permits the Governor of Guam or the Legislature of Guam to seek a declaratory ruling directly

3

from the Supreme Court of Guam to interpret any law lying within the jurisdiction of Guam courts, or to decide any question affecting the powers and duties of the Governor or the operation of the executive or legislative branches. **Appendix 6.**

On June 25, 2003 the Legislature of Guam passed Guam Public Law Number 27-21, which maintained the requirement for an actual triennial property appraisal, but permitted Guam's Board of Equalization's certified figures of land value to be used until the Government of Guam performed the required triennial assessment. **Appendix 7.** Guam Public Law Number 27-21 also created a definition for "*aggregate tax valuation,*" which is the phrase used by the Federal statute imposing a debt borrowing ceiling upon the Government of Guam. 48 U.S.C. § 1423a.

On July 1, 2003 the Governor of Guam filed a Petition in the Supreme Court of Guam seeking a declaratory judgment. Also, on July 1, 2003 the Supreme Court of Guam found that it had jurisdiction to hear the request for declaratory judgment under 4 G.C.A. § 4104 (**Appendix 8**), and pursuant to its decision in In Re Request of Carl T.C. Gutierrez, Relative to the Organicity and Constitutionality of Public Law 26-35, 2002 Guam 1, which had challenged the Supreme Court of Guam's jurisdiction to hear these types of applications. **Appendix 9.**

4

The Supreme Court of Guam also by separate order invited the Attorney General of Guam and the Legislature of Guam to move to intervene; identified the Supreme Court of Guam panel that would hear the Governor of Guam's Petition for Declaratory Judgment; and established a cutoff date of July 3, 2003 for any requests for disqualification of the panel members. **Appendix 10.**

At the July 2, 2003 status hearing only the Attorney General of Guam requested to intervene on behalf of the Government of Guam. The request was granted. At the hearing the Attorney General cited outstanding factual issues requiring determination. The Supreme Court of Guam did *not* provide for how it would dispose of factual issues, and set an expedited briefing schedule for the parties. The Chief Justice also disclosed on the record that his wife was retired from the Department of Education and had *not* yet begun receiving her pension checks. Part of the money authorized to be borrowed under Guam Public Law Number 27-19 will pay for amounts which the Department of Education owes to the Retirement Fund. Under a local court decision, no one is permitted to retire from departments which have *not* paid all of their outstanding employer contributions due to the Retirement Fund. (See Exhibits G and H of **Appendix 12**).

5

The expedited briefing schedule provided for opening briefs to be filed by both parties by July 7, 2003 at 3:00 p.m.; opposition briefs were due by July 8, 2003 at 5:00 p.m.; and replies were due by July 9, 2003 by 10:00 a.m. The oral argument was set for July 9, 2003 at 10:00 a.m. The Supreme Court of Guam stated the legal issues which it expected the parties to address in their briefs. **Appendix 11.**

On July 3, 2003 the Attorney General moved to disqualify two (2) members of the panel: the Chief Justice and a Justice *Pro Tempore*. **Appendix 12.** The two (2) justices opposed the request, **Appendices 12 and 13**, and the matter was decided by the third Justice *Pro Tempore*, who agreed with the other two (2) justices that they need *not* disqualify themselves. **Appendix 15.** Guam law, 7 G.C.A. § 6105, provides for such a procedure. **Appendix 16.**

On July 9, 2003 the parties met in chambers with the justices, then held oral argument. On July 23, 2003 the Supreme Court of Guam issued its decision affirming that the Government of Guam's debt ceiling was at about $1.1 Billion and that it was authorized by Guam Public Law Number 27-19 to borrow the $418M. **Appendix 1.**

The petition for writ of certiorari seeks this Court's review of the declaratory judgment issued by the Supreme Court of Guam on July 23, 2003. **Appendix 1.**

6

2. **Facts material to the consideration of the questions presented.**

Several undisputed facts warrant the Ninth Circuit's exercising certiorari review. One of the several grounds for requesting this writ of certiorari is the lack of due process protection to develop a factual record, despite its having been requested. This case was filed under an exception to the original jurisdiction procedure for declaratory judgments, established by the Legislature of Guam under 7 G.C.A. § 4104. **Appendix 6.** Local law grants the Supreme Court of Guam original, as opposed to appellate jurisdiction, to hear the Governor of Guam's or the Legislature of Guam's petitions. Further, in a 2002 decision, the Supreme Court of Guam held that it has the power to enforce its declaratory judgment decisions. Carl T.C. Gutierrez, 2002 Guam 1 at ¶ 6. **Appendix 9.** *However*, despite the Attorney General's oral motion to develop a factual record, which he made at the July 2, 2003 status hearing, the decision made factual determinations. **Appendix 1.**

3. **Summary of the decision issued by the Supreme Court of Guam.**

In his July 8, 2003 decision, Justice *Pro* Tempore Benson ruled that the other two (2) justices did not need to disqualify themselves. **Appendix 15.**

In its decision of July 23, 2003, the Supreme Court of Guam made the following rulings which are relevant to this writ of certiorari: (1) as used in 48 U.S.C. § 1423a, the phrase "aggregate tax valuation of the property in Guam"

7

means the appraised value, not the assessed value; (2) Guam's 2002 tax roll is based upon a reasonable valuation system for purposes of establishing Guam's debt limitation as mandated by the Organic Act; (3) the Government need not perform an actual appraisal of property to adequately determine the Federal borrowing limit, despite the local law requiring an appraisal; and (4) certain specified monetary obligations of the Government of Guam are not "debts" for purposes of the debt-limitation provision in the Organic Act. **Appendix 1.**

8

# ARGUMENT.

**A. THE NINTH CIRCUIT HAS JURISDICTION TO GRANT A WRIT OF CERTIORARI TO REVIEW DECISIONS RENDERED BY THE SUPREME COURT OF GUAM UNDER ITS *ORIGINAL* JURISDICTION.**

Although it is clear that the Ninth Circuit can exercise appellate jurisdiction over decisions of the Supreme Court of Guam pursuant to 48 U.S.C. § 1424-2, the Ninth Circuit should address this question of *first impression* of the issue of whether the Ninth Circuit can exercise jurisdiction to grant certiorari when the Supreme Court of Guam issues a declaratory judgment under its original jurisdiction, conferred by the Legislature of Guam under 7 G.C.A. § 4104. The declaratory judgment is enforceable under the Supreme Court of Guam's own prior decisions, and does *not* function as merely an advisory opinion as in other jurisdictions, such as Massachusetts, wherein their Constitution expressly permits their Supreme Judicial Court to render advisory opinions. MASS. CONST. PT. 2, C. III, ART. II (2001). Carl T.C. Gutierrez, CRQ96-001 (finding Massachusetts Constitutional provision for advisory opinions similar to Guam's 7 G.C.A. § 4104) **Appendix 17;** Carl T.C. Gutierrez, 2002 Guam 1, ¶ 6. **Appendix 9.** The Governor of Guam has warned the Attorney General that he will seek enforcement with the Supreme Court of Guam by writ of mandamus if the People's elected Attorney General refuses to sign off on a bond, which the Governor of Guam intends to

9

secure under Guam Public Law Number 27-19. The Governor of Guam seeks enforcement of the Supreme Court of Guam's July 23, 2003 decision by the Supreme Court of Guam itself. **Appendix 1.**

Guam laws do *not* provide for an appeal of such a decision rendered by the Supreme Court of Guam. If no such appeal is possible, there will exist a body of decisions which enjoys non-reviewability, evading any review by the Ninth Circuit Court of Appeals.

Under 48 U.S.C. § 1424-2 of the Organic Act of Guam, the Ninth Circuit has jurisdiction to review, by writ of certiorari, <u>all final decisions</u> of Guam's highest court. Circuit Rule 6-2(a)(1) provides for Ninth Circuit review of "final decisions of the Supreme Court of Guam." No distinction is made between decisions rendered by the Supreme Court of Guam in its capacity as an appellate court, and decisions rendered by the Supreme Court under its original jurisdiction. Therefore, this Court should rule that it has jurisdiction to review decisions of the Supreme Court of Guam rendered under its original jurisdiction.

The Supreme Court's jurisdiction to hear declaratory judgments was challenged in the past before the Supreme Court. <u>Carl T.C. Gutierrez</u>, 2002 Guam 1, ¶¶ 4-5.

10

**B. THE SUPREME COURT OF GUAM HAS DECIDED AN IMPORTANT QUESTION OF FEDERAL LAW WHICH HAS *NOT*, BUT SHOULD BE SETTLED BY THIS COURT.**

    1. **It is important for this Court to determine the meaning of 48 U.S.C. § 1423a, which establishes a debt ceiling limitation for the Government of Guam.**

The foremost question answered by the Supreme Court of Guam is how 48 U.S.C. § 1423a, the Congressionally imposed Government of Guam debt limitation ceiling, should be interpreted. This is an important Federal question which has *not* been addressed by the Ninth Circuit. *If* the Government of Guam is authorized to borrow over $418M, it will severely oppress the taxpayers for the next thirty (30) years. Guam P.L. No. 27-19. **Appendix 3.**

A prior U.S. District Court opinion determined that the reason Congress imposed a debt limitation ceiling upon the Government of Guam was to prevent government officials from burying taxpayers with oppressive levels of debt. <u>GTA v. Rivera</u>, 416 F.Supp. 283 (D. Gu. 1976). District Court Judge Duenas stated,

> "However, the purpose of Section 11 is to <u>place restraints upon the Governor and Legislature</u>. Those restraints are **<u>intended to benefit the taxpayer by restraining the government's propensity to incur debts and to saddle future generations of taxpayers with those debts</u>**. Such restraints promote fiscal responsibility." (Emphasis added).

<u>Id</u>.

The Ninth Circuit has *not* decided Guam's debt limitation ceiling contained in 48 U.S.C. § 1423a. The Ninth Circuit should accept certiorari review to provide the Government of Guam judicial guidance interpreting § 11 of our Organic Act (48 U.S.C. § 1423a) because Congress intended the People of Guam and taxpayers to have a safe haven against unrestrained Government of Guam borrowing. By establishing the debt ceiling limitation in our Organic Act, Congress prevented all branches of the Government of Guam from changing the ceiling.

The reason that the Ninth Circuit Court of Appeals should grant certiorari review is accentuated by the Legislature of Guam's attempts to interfere with the power of Congress to pass laws. In passing Guam Public Law Number 27-21, the Legislature of Guam, in conjunction with the Governor of Guam, who transmitted the legislation for passage and signed it into law, improperly attempted to define language enacted by Congress in 1950 when it utilized the phrase "*aggregate tax valuation*" in setting Guam's debt ceiling. 48 U.S.C. § 1423a. Local lawmakers' attempts were improper, which was recognized by the Supreme Court of Guam in its decision. Again, such transparent efforts manifest an inherent bias in the Government of Guam's structure, which will benefit ~~from a high debt~~ ceiling to borrow more money, and thereby warrants the Ninth Circuit's exercising appellate jurisdiction to explain the true meaning of 48 U.S.C. § 1423a.

12

The fact that two (2) justices appear to have a pecuniary interest in the outcome of the decision, *infra*, accentuates the problem with having local courts interpret Congress' debt limitation law. 48 U.S.C. § 1423a. All parts of the Government of Guam have some direct or remote financial interest in finding a high debt ceiling. *However*, the economy drives the Government of Guam's ability to repay the borrowed money, *not* the desires of government officials. These factors make this case attractive for granting certiorari review by the Ninth Circuit Court of Appeals.

The consequences of *not* properly interpreting the debt ceiling limit could cause the financial collapse of the Government of Guam by its inability to repay the debt service for the $418M loan authorized by Guam Public Law Number 27-19, and imposition of additional oppressive fees and taxes upon the People of Guam due to the Government of Guam's inability to repay the debt. Further, the Supreme Court of Guam has established the Government of Guam's debt ceiling at over $1.1B, which possibly forebodes additional borrowing on top of the $418M authorized by Public Law Number 27-19, by the Government of Guam in the near future. In Re: Request of Governor Felix P. Camcho Relative to the Interpretation and Application of Section 11 of the Organic Act of Guam, 2003 Guam 16 at ¶ 44. These factors, combined with the failure of the Government of Guam to follow its own law requiring an *actual* triennial appraisal, which has *not* been performed

13

since 1993, and which land values have dropped drastically since then, warrant Federal Ninth Circuit review. **Appendix 19.**

    **2.    The Supreme Court of Guam has misinterpreted the debt limitation provision of 48 U.S.C. § 1423a.**

        **a.    The Supreme Court of Guam erroneously interpreted *"aggregate tax valuation of property on Guam."***

The Supreme Court of Guam determined that *"aggregate tax valuation"* should be interpreted not to mean *"assessed"* value. The Court analogized the Virgin Island's Organic Act, which specifically used the term "assessed," as opposed to "tax." Camacho, 2003 Guam 16 at ¶ 19. In its finding, the Supreme Court believed that the Government of Guam should be authorized to borrow based upon the maximum appraised value of taxed property on Guam, but did *not* reconcile the lack of an available revenue stream to repay the loan if the Government of Guam taxed property at a low rate, as is currently the practice on Guam. 11 G.C.A. § 24102(f). **Appendix 18.**

Guam generates revenue by taxing property at *only* thirty-five percent (35%) of the appraised value of property on Guam. Id. Under the Supreme Court's reasoning, the Government of Guam can increase the property taxes *after* it borrows up to the maximum allowable amount, which the Supreme Court found was ten percent (10%) of the appraised value of property. Camacho, 2003 Guam 16 at ¶ 22. Guam Public Law Number 27-19, though, does *not* call for an increase

14

in property taxes to generate revenue to repay the additional $418M debt. It uses Guam's gross receipts taxes as collateral and the repayment stream. Guam P.L. No. 27-19. Congress rationally would have intended the term *"tax valuation"* to correlate with the real time ability of the Government of Guam to timely repay its loan from existing revenues, whereby the Government of Guam would not have to depend upon a speculative legislative increase in property taxes, as the Supreme Court's rationale envisions, or seek repayment from the general public through non-property tax sources.

In the case of Guam Public Law Number 27-19, the legislation specifically targets gross receipts taxes for repayment, *not* property taxes. **Appendix 3.** Guam has traditionally kept its property taxes comparatively low in order to assist the predominately "cash poor and land wealthy" families on Island. *However*, in 1950 Congress simply left the scheme of taxation for the Legislature of Guam to determine, including at what level it wished to tax property and therefore be able to borrow ... the more you taxed, the higher your revenue stream, and the higher your ability to borrow should be. Unfortunately, Guam now is in dire financial straits, prompting government officials to want to borrow more; but Congress required a correlative source of current revenue, *not* a speculative tax revenue which had *not* yet been imposed to repay government borrowing. To reason otherwise places an inordinate burden upon the general population in having to repay a loan for which

property taxes are still being taxed at thirty-five percent (35%) of the property's appraised value. 11 G.C.A. § 24102(f).

The Supreme Court of Guam incorporated <u>State ex rel. Village of Oak Hill v. Brown</u>, 180 N.E. 707, 709 (Ohio 1932), stating, "[P]roperty which is not taxed does not contribute to the general revenue of the government, and thus should not be used to determine the debt limit." <u>Camacho</u>, 2003 Guam 16 at ¶ 27. By utilizing the phrase *"aggregate tax valuation,"* Congress intended to not only look to what property was actually taxed to set the debt ceiling, but to how the Legislature of Guam taxed the property to ensure sufficient revenue to pay the loan back. Contrary to the Supreme Court's reasoning, it is improper to have a maximum borrowing limit, then change the law to increase the tax revenue, such as increasing Guam's existing tax of thirty-five percent (35%) of the appraised value to a higher percentage.

The ability to borrow must be directly correlated with the revenue the Government of Guam currently receives, *not* potentially could receive. Otherwise, the non-property owning taxpayers will have to bear the burden of repayment for the debt, as is the case in Guam Public Law Number 27-19, where gross receipts taxes are being used, *not* property taxes, as security and revenue stream for the $418M loan. Congress intended to prevent the Government of Guam from overburdening the general public in debt.

16