The Congressional logic behind § 11 of the Organic Act is *if* one cannot afford the size of Government, government officials must reduce expenditures, *not* borrow away our future generation's financial security through the thirty (30) year note authorized in Guam Public Law Number 27-19 (with the possibility of additional borrowing).

      **b.    The Supreme Court of Guam erroneously determined that no appraisal is necessary to value property.**

One of the most critical questions that must be answered is how much is Guam's property worth. Both the law prior to the passage of Guam Public Law Number 27-21 on July 25, 2003, and after its passage, required that the Government of Guam perform a triennial appraisal of land on Guam. This requirement has *not* been done for about ten (10) years now. In 1993 Guam's property values were just beginning to drop. Evidence presented to the Supreme Court of Guam in the Attorney General's July 7, 2003 brief showed that values in many cases have dropped by an average of *at least* fifty percent (50%) from their 1993 levels. **Appendix 19** (Exhibit C of AG's July 7, 2003 brief). This would devalue the Supreme Court of Guam's adoption of the Board of Equalization figure of $1.1B to about a $550M debt ceiling. *However*, the Attorney General has been unable to accurately ascertain this value since the law has not been followed by the Government of Guam and an appraisal has not been performed in ten (10) years.

17

Although Guam Public Law Number 27-21 removed the requirement to perform a triennial assessment before determining Guam's debt ceiling, the certified values by the Guam Board of Equalization must have some basis in reality. A factual issue remained unresolved at the Supreme Court of Guam wherein the Attorney General presented evidence that even the Board itself was depreciating tax appeals from 21% to 33% for property appeals brought before them on October 21, 1999 due to the substantial drop in property values. **Appendix 20** (Exhibit Q of AG's July 7, 2003 brief). The figures adopted annually by the Board of Equalization failed to factor in the drop in land values brought about by the downturn in Guam's economy, and their computer model failed to factor in ordinary building depreciation. These were factual issues as to which the Supreme Court did *not* provide a reasonable method to determine, having issued its scheduling order on July 2, 2003 and requiring briefs with exhibits to be filed within five (5) calendar days, by July 7, 2003.

Factual determinations and the presentation of evidence were critical to finding that in addition to the actual appraisal requirement not being followed pursuant to Guam law, that the Board of Equalization figures were substantially flawed and constituted an arbitrary and capricious valuation. Moreover, under the scheme of Guam law, the Board of Equalization was only authorized to certify figures between triennial assessments. The Supreme Court determined that the

18

Government of Guam could ignore its own triennial assessment requirement, and still rely upon the Board of Equalization certifications. Camacho, 2003 Guam 16 at ¶ 37. In reality, the Board of Equalization certified figures based upon a 1993, ten (10) year old appraisal. This uncontested fact alone caused the Berne court to stop taxation. Berne v. Government of the Virgin Islands, 262 F.Supp.2d 540, 571 (2003).

Although the Supreme Court made a presumption of validity, it wholly ignored the requirement that the value of property have a basis in reality, which Guam law provided should be done every three (3) years by an actual appraisal. This is just one of the many reasons why the Ninth Circuit should intervene and review the highly accelerated decision which the Supreme Court of Guam issued.

Even if one considers Guam Public Law Number 27-21, which the Supreme Court discounted, it was only recently passed on June 25, 2003 in order to address concerns by the Attorney General of the debt ceiling being accurately ascertained. The end does not justify the means, and the Government of Guam cannot artificially raise either property values or its debt ceiling. An appraisal was critical to determining Congress' debt ceiling, and no borrowing should be permitted until this fundamental chore is performed. Otherwise, taxpayers may be oppressed by a burdensome debt imposed by Government officials.

A Federal court in another territorial jurisdiction took an opposite stance to the Supreme Court of Guam when the Government failed to perform an appraisal required in law. In Berne v. Government of the Virgin Islands, 262 F.Supp.2d 540 (2003) the District Court of the Virgin Islands determined that because the Government of the Virgin Island's failed to accurately determine taxable property's actual values through an appraisal, it could no longer impose real property taxes. Guam is like the Virgin Island's in political status, both being U.S. territories with Organic Acts. The Virgin Island's District Court found that Congress contemplated a hybrid scheme of real property law, wherein the general requirements are set by the Federal Government with specifics established as a matter of territorial law consistent with Federal law.

Title 48 U.S.C. § 1423a provides that the loan ceiling be ten percent (10%) of the aggregate tax valuation of property on Guam. Congress did *not* specify the manner of ascertaining the value of Guam property, and presumably, like the Virgin Island's, left that determination to Guam law. Neither did Congress identify how to "tax" Guam's property, *except* that it be "uniform." 48 U.S.C. § 1423a. Camacho, 2003 Guam 16 at ¶ 40. Guam values property according to 11 G.C.A. § 24306, which requires a triennial appraisal. The last triennial appraisal was conducted in 1993. Under the scheme of Guam law, the Board of

20

Equalization adjusts land values between the triennial appraisals, which in this case is now seven (7) years overdue.

Without identifying the value of property, one cannot ascertain the debt ceiling. As in Berne, Guam is in a deep financial crisis. Berne, 262 F.Supp.2d at 571. The danger of overvaluing the debt ceiling is oppressing taxpayers in inordinate amounts of debt which the Government of Guam is unable to pay, and for which the taxpayers will be required to repay. The Ninth Circuit should grant certiorari review in order to either make consistent two (2) territorial decisions which deal with a requirement to value property in order to satisfy a Congressional mandate, or to distinguish them.

    **c.    The Supreme Court of Guam erroneously defined "debt" and factually determined current indebtedness.**

The Supreme Court of Guam did *not* properly interpret "public indebtedness," as used in the Organic Act. Paragraphs 55 – 57 of the Supreme Court's decision explain the treatment of Government of Guam obligations, and even apply a standard used in Georgia. In doing so, *however*, the Supreme Court failed to apply Guam's deficit to the adopted standard of *"a debt is incurred when there is a sufficient sum in the treasury which can lawfully be used to pay the liability incurred ..."* Camacho, 2003 Guam 16 at ¶ 55. The Government cannot meet its current debts and the Governor identified them as a deficit. Camacho, 2003 Guam 16 at ¶¶ 55-57. The Supreme Court discounts all of the amounts owed

21

by the Government of Guam, but fails to justify that these amounts do not constitute "public indebtedness" as intended by 48 U.S.C. § 1423a. The Supreme Court also failed to justify its ruling that these debts fall within Congress' exemptions from "public indebtedness." These exemptions are limited as follows:

> " ... Bonds or other obligations of the government of Guam payable solely from revenues derived from any public improvement or undertaking shall not be considered public indebtedness of Guam within the meaning of this section ... "

48 U.S.C. § 1423a.

Debt limitation *"provisions are generally applicable to obligations which must be paid directly or indirectly by resort to taxation."* McQuillin on Municipal Corporations § 41.17 at 404. Obligations paid or to be paid out of taxes levied, are included. Reimer v. Holyoke, 93 Colo. 571, 27 P.2d 1032 (Colo. 1933). *"A debt is understood to be an unconditional promise to pay a fixed sum at some specified time, and is quite different from a contract to be performed in the future, depending upon a condition precedent, which may never be performed, and which cannot ripen into a debt until performed."* McQuillin at 407.

According to McQuillin, "*indebtedness*," in the constitutional sense, "must be restricted to mean a promise by a municipality, grounded in a valid consideration, to pay to some person a sum of money now due and payable, or to become due and payable at a future day — an obligation resting on the debtor to pay, with a correlative right in the creditor to enforce payment." Id. While the

22

variety of interpretations of the terms "*debt*" and "*indebtedness*" is great, (see, the text and cases cited in McQuillin § 41.18 *et seq.*,) the concept that ONLY bond indebtedness should be included in the calculation appears to be one embraced almost exclusively by Guam's current government administration in its quest to borrow over a third of a billion dollars.

In its opinion the Supreme Court relied solely upon the figures provided in the declaration provided by Respondent in calculating the current total public indebtedness of $378M. Camacho, 2003 Guam 16 at ¶ 58. This figure failed to incorporate other numerous debts identified by the Attorney General. Id at ¶ 56. The Ninth Circuit should grant certiorari review to clarify whether Congress intended these forms of debt to be included in their term "*public indebtedness.*"

C. **BECAUSE OF PECUNIARY INTERESTS IN THE OUTCOME OF THIS CASE, TWO OF THE JUSTICES ON THE PANEL SHOULD HAVE RECUSED THEMSELVES.**

Two (2) of the three (3) justices on the panel should have disqualified themselves because of their pecuniary interest in the outcome of the decision. The failure of these two (2) justices to disqualify themselves due to their, or their household's, pecuniary interest in the outcome of the decision, namely whether to borrow money to pay past retirement and other debts, infringed upon the Attorney

23

General's due process protection and casts serious questions upon the objectivity of the Supreme Court of Guam's July 23, 2003 decision. **Appendix 1.**

Guam Public Law Number 27-19 provides for the payment of numerous debts owed by the Government of Guam. The debts include payment of the retirement fund, which would bring revenue into the household of the Chief Justice through his spouse's retirement pension, and separately ensure that Justice *Pro Tempore* Cruz timely receives his retirement pension. **Appendices 11-14.** Under the standard imposed by Guam law, disqualification is required when either a judicial officer has a pecuniary interest in the outcome of litigation or if a judicial officer's impartiality may reasonably be questioned. 7 G.C.A. §§ 6105(a) and (b)(4). **Appendix 16.** In this case, both justices had a pecuniary interest and their impartiality could reasonably have been questioned.

The Ninth Circuit should also grant certiorari review because to one extent or another, the entire Government of Guam has an interest in this question, contrary to the interests of the taxpaying public, making suitable review by a disinterested and unaffected Ninth Circuit Court of Appeals.

24

D. **THE ATTORNEY GENERAL'S DUE PROCESS RIGHTS WERE VIOLATED BECAUSE HE WAS NOT ALLOWED TO DEVELOP AN ADEQUATE FACTUAL RECORD.**

The Supreme Court of Guam also failed to permit the Attorney General to develop a factual record. Noteworthy in ¶ 42 of the decision, the Supreme Court of Guam indicated that from their record it appeared that adequate procedures were followed by the Board of Equalization in arriving at the valuations in the 2002 tax role. Camacho, 2003 Guam 16. This violated the Attorney General's fundamental due process right, since: the Attorney General was denied an adequate opportunity to develop the factual record before the Supreme Court and the parties having only five (5) days to file their briefs. Noteworthy is Rule 26(a) of the Supreme Court of Guam Rules of Appellate Procedure, which incorporate Rules 7 through 15 of the Guam Rules of Civil Procedure for declaratory judgment petitions before the Supreme Court of Guam, which were not followed, such as submitting an answer. In this case the Attorney General was rushed to judgment without having the ability to develop a factual record.

25

## CONCLUSION.

Petitioner's petition for a writ of certiorari should be granted for the following grounds: (1) the opinion of the Supreme Court of Guam involves the interpretation of a Federal statute never before decided by the Ninth Circuit; (2) the primary issue in the case is of vital importance because it deals with ability of the Government of Guam to borrow money, and the protection of Guam's taxpayers against oppressive borrowing by the Government of Guam; (3) the case involves the ability of the Supreme Court of Guam to render declaratory judgments without creating a factual record; (4) another territorial jurisdiction held oppositely to the Supreme Court of Guam's decision, when that government failed to appraise its property as required by law; *and* (5) substantial questions of due process exist when justices with a pecuniary interest in the outcome of the decision failed to disqualify themselves.

*If* the Supreme Court of Guam's July 23, 2003 decision is allowed to stand, there is a substantial likelihood that the taxpayers will be oppressed by repaying debt exceeding Congress' imposed ceiling, when the Government of Guam is unable to meet its debt service obligations. By granting the writ of certiorari the Ninth Circuit will benefit both the Government of Guam and the taxpayers by offering Federal guidance about how to determine Congress' debt ceiling.

Respectfully submitted this 30th day of July, 2003.

OFFICE OF THE ATTORNEY GENERAL
DOUGLAS B. MOYLAN, Attorney General of Guam

_____
Douglas B. Moylan
Attorney General

## CERTIFICATION OF COMPLIANCE.

Pursuant to Rule 6-2(d)(2)(ii) of the Federal Rules of Appellate Procedures for the United States Court of Appeals for the Ninth Circuit, I certify that the petition for writ of certiorari conforms to the format noted in Rule 6-2(d)(1) and to the word count noted at Rule 6-2(d)(2)(i).

Respectfully submitted this 30th day of July, 2003.

OFFICE OF THE ATTORNEY GENERAL
DOUGLAS B. MOYLAN, Attorney General of Guam

_____
Douglas B. Moylan
Attorney General