# As Recommended by Guam Legislature Version of Bill

Resolution No. 186 (LS)

Introduced by:
E. Barrett-Anderson
A. C. Blaz
J. M.S. Brown
Felix P. Camacho       Francisco P. Camacho
E. J. Cruz             M. C. Charfauros
Mark Forbes            W. B.S.M. Flores
L. F. Kasperbauer      L. Leon Guerrero
A. C. Lamorena, V      V. C. Pangelinan
C. A. Leon Guerrero    A. L.G. Santos
J. C. Salas            F. E. Santos
T. C. Ada              A. R. Unpingco
F. B. Aguon, Jr.       J. Won Pat-Borja



Relative to requesting the 105th Congress to amend certain Sections of the Organic Act of Guam, Title 48 United States Code, to mandate the establishment and independent election of the position of Attorney General.

BE IT RESOLVED BY THE TWENTY-FOURTH GUAM LEGISLATURE:

WHEREAS, the Twenty-Third Guam Legislature previously adopted and transmitted to Congressman Robert Underwood Resolution No. 433 (LS), dated June 8, 1996, calling for certain amendments to the Organic Act of Guam to provide for an elected Attorney General of Guam, independent from the general supervision of the Governor; and

WHEREAS, Congressman Underwood has introduced a bill in the House of Representatives which, if enacted, would permit the Guam Legislature to provide by law for an elected Attorney General, but also would permit the continuance of an Attorney General appointed by the Governor of Guam; and

WHEREAS, during the past two (2) years the growing need for an independent Attorney General has become increasingly evident by the instability and lack of professional continuity in that office, particularly in the Prosecution Division, where some twenty-two (22) prosecutors have resigned in that two (2) year period, culminating on August 6, 1997, in the resignations of both the Attorney General and Chief Prosecutor; and

WHEREAS, the citizens of Guam have overwhelmingly expressed their strong desire to actively participate in the process of selecting the Attorney General, and that can be achieved only by making the office of the Attorney General an elective office whose occupant answers not to the Governor, but directly to the people; and

WHEREAS, the Guam Legislature further finds that the only sure way to achieve those vital objectives, while restoring public confidence in the competence and integrity of the office, is by an amendment to the Organic Act mandating an independently elected Attorney General of Guam; now therefore, be it

RESOLVED, by the Twenty-Fourth Guam Legislature, that the 105th Congress amend the Organic Act of Guam to provide for the creation of the position of Attorney General, and to provide that the position be selected by election by a vote of the people of Guam. To that end, the following amendments to the Organic Act of Guam are hereby requested:

Section 1. Section 6 of the Organic Act of Guam (48 U.S.C. 1422) is amended to read:

"§1422. *Governor; Lieutenant Governor; Attorney General: Powers, duties. The executive power of Guam shall be vested in a governor, lieutenant governor and an attorney general. The Governor of Guam, together with the Lieutenant Governor, shall be elected by a majority of the votes cast by the people who are qualified to vote for the members of the Legislature of Guam. The Governor and Lieutenant Governor jointly shall be chosen by the casting by each voter of a single vote applicable to both offices. If no candidate receives a majority of the votes cast in any election, on the fourteenth day thereafter a runoff election shall be held between the candidates for Governor and Lieutenant Governor shall be held on November 3, 1970. Thereafter, beginning with the year 1974, the Governor and Lieutenant Governor shall hold office for a term of four years and until their successors are elected and qualified.*

*No person who has been elected Governor for two full successive terms shall again be eligible to hold that office until one full term has intervened.*

*The term of the elected Governor and Lieutenant Governor shall commence on the first Monday in January following the date of election.*

*No person shall be eligible for election to the office of Governor, Lieutenant Governor or Attorney General unless he is an eligible voter and has been for five consecutive years immediately preceding the election a citizen of the United States and a bona fide resident of Guam and will be at the time of taking office, at least thirty years of age, has not been convicted of a felony or of a crime involving moral turpitude, and in the case of the office of the Attorney General, has been admitted to the practice of law in Guam and is an attorney in good standing at the time of his election.*

*The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam, with the exception of the office of the Attorney General which shall be independent from the general supervision of the Governor. He may grant pardons and reprieves and remit fines and forfeitures for offenses against local laws. He may veto any legislation as provided in this chapter, He shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided in this or any other Act of Congress, or under the laws of Guam, and shall commission all officers he may be authorized to appoint. He shall be responsible for the faithful execution of the laws of*

Guam and the laws of the United States applicable in Guam. Whenever it becomes necessary, in case of disaster, invasion, insurrection, or rebellion, or imminent danger thereof, or to prevent or suppress lawless violence, he may summon the posse comitatus or call out the militia or request the assistance of the senior military or naval commander of the Armed Forces of the United States in Guam, which may be given at the discretion of such commander if not disruptive of, or inconsistent with, his federal responsibilities. He may, in case of rebellion or invasion, or imminent danger thereof, when the public safety requires it, proclaim the island, insofar as it is under the jurisdiction of the government of Guam, to be under martial law. The members of the Legislature shall meet forthwith on their own initiative and may, by two-thirds vote, revoke such proclamation.

The Governor shall prepare, publish, and submit to the Congress and the Secretary of the Interior a comprehensive annual financial report in conformance with the standards of the National Council on Governmental Accounting within one hundred and twenty days after the close of the fiscal year. The comprehensive annual financial report shall include statistical data as set forth in the standards of the National Council on Governmental Accounting relating to the physical, economic, social and political characteristics of the government, and any other information required by Congress. The Governor shall transmit the comprehensive annual financial report to the Inspector General of the Department of the Interior who shall audit it and report his findings to Congress. The Governor shall also make such other reports at such other times as may be required by the Congress or under applicable Federal law. He shall also submit to the Congress, the Secretary of the Interior, and the cognizant Federal auditors a written statement of actions taken or contemplated on Federal audit recommendations within sixty days after the issuance date of the audit report. He shall have the power to issue executive orders and regulations not in conflict with any applicable law. He may recommend bills to the Legislature and give expression to his views on any matter before that body.

There is hereby established the office of Lieutenant Governor of Guam. The Lieutenant Governor shall have such executive powers and perform such duties as may be assigned to him by the Governor or prescribed by this chapter of under the laws of Guam.

There is hereby established the office of the Attorney General to be administered by the Attorney General of Guam who shall be elected in accordance with this Section. The Attorney General shall be the chief legal officer of the government of Guam, shall be vested with common law powers and such additional powers and duties as may be prescribed under the laws of Guam, not inconsistent with this chapter. The Attorney General shall prosecute all criminal violations of Guam law, provide legal advice to the government, and represent the government in all civil cases in which the government of Guam may be interested. The Attorney General may not, while in office, engage in the private practice of law or actively engage in partisan politics or, within one year of ceasing to hold office, run for other elective office. The salary of the Attorney General shall be established by the laws of Guam."

Section 2. Section 7 of the Organic Act of Guam (48 U.S.C.1422a(b)) is amended to read:

"(b) Any Governor, Lieutenant Governor, Attorney General or member of the Legislature of Guam may be removed from office by a referendum election in which at least two-thirds of the number of persons voting for such official in the last preceding general election at which such official was elected vote in favor of a recall and in which those so voting constitute a majority of all those participating in the referendum election. The referendum election shall be initiated by the Legislature of Guam following (a) a two-thirds vote of the members of the Legislature in favor of a referendum, or (b) a petition for a referendum to the Legislature by registered voters equal in number to at least 50 per centum of the whole number of votes cast at the last general election at which such official was elected preceding the filing of the petition."

Section 3. Section 8 of the Organic Act of Guam (48 U.S.C.1422b) is amended by adding at the end the following new Subsection:

"(g) Vacancy in the Office of Attorney General. In case of a permanent vacancy in the office that occurs within two (2) years after the incumbent's assumption of office, the Governor of Guam shall call a special election to fill the remainder of the term of the Attorney General. In all other cases of absence or disability of the Attorney General, the vacancy shall be filled as provided by the laws of Guam."

Section 4. Section 29 of the Organic Act of Guam (48 U.S.C. 1421g(c)) is amended to read:

"(c) Office of Public Auditor. The government of Guam may by law establish an Office of Public Auditor. The Public Auditor may be selected and removed as provided by the laws of Guam"; and be it further

RESOLVED, that the Speaker certifies to, and the Legislative Secretary attests, the adoption hereof and that copies be thereafter transmitted to Congressman Don Young, Chairman, House Committee on Resources; to Robert Underwood, Delegate to Congress; to Congressman Newt Gingrich, Speaker of the House of Representatives; to Senator Trent Lott, Senate Majority Leader; to Senator Frank Murkowski, Chairperson, Senate Energy and Natural Resources Committee; to Congressman Elton Gallegly, Chairman, House Subcommittee on Native American and Insular Affairs; and to the Honorable Carl T.C. Gutierrez, Governor of Guam.

DULY AND REGULARLY ADOPTED ON THE 8TH DAY OF OCTOBER, 1997.

_____
ANTONIO R. UNPINGCO
Speaker

_____
JOANNE M.S. BROWN
Senator and Legislative Secretary

# As Passed by Congress Version of Bill

Union Calendar No. 427

105TH CONGRESS
2D SESSION

# H. R. 2370

[Report No. 105-742]

# A BILL

To amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General.

SEPTEMBER 24, 1998

Reported with amendments, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed

Union Calendar No. 427

105TH CONGRESS
2D SESSION

# H. R. 2370

[Report No. 105-742]

To amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General.

---

## IN THE HOUSE OF REPRESENTATIVES

JULY 31, 1997

Mr. UNDERWOOD (for himself, Mr. MILLER of California, and Mr. ABERCROMBIE) introduced the following bill; which was referred to the Committee on Resources

SEPTEMBER 24, 1998

Additional sponsors: Ms. CHRISTIAN-GREEN and Mr. ROMERO-BARCELÓ

SEPTEMBER 24, 1998

Reported with amendments, committed to the Committee of the Whole House on the State of the Union, and ordered to be printed

[Strike out all after the enacting clause and insert the part printed in italic]

[For text of introduced bill, see copy of bill as introduced on July 31, 1997]

---

# A BILL

To amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General.

1   *Be it enacted by the Senate and House of Representa-*
2   *tives of the United States of America in Congress assembled,*

## SECTION 1. SHORT TITLE.

This Act may be cited as the "Guam Organic Act Amendments of 1998".

## SEC. 2. ATTORNEY GENERAL OF GUAM.

Section 29 of the Organic Act of Guam (48 U.S.C. 1421g) is amended by adding at the end the following new subsection:

"(d)(1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.

"(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 9–A of this Act or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—

1         *"(A) by appointment by the Governor of Guam*
2     *if such vacancy occurs less than 6 months before a*
3     *general election for the Office of Attorney General of*
4     *Guam; or*
5         *"(B) by a special election held no sooner than 3*
6     *months after such vacancy occurs and no later than*
7     *6 months before a general election for Attorney Gen-*
8     *eral of Guam, and by appointment by the Governor*
9     *of Guam pending a special election under this sub-*
10    *paragraph."*.
11 **SEC. 3. LEGISLATIVE QUORUM.**
12     *Section 12 of the Organic Act of Guam (48 U.S.C.*
13 *1423b) is amended by striking "eleven" and inserting "a*
14 *simple majority".*
15 **SEC. 4. CLARIFICATION OF LEGISLATIVE POWER.**
16     *The first sentence of section 11 of the Organic Act of*
17 *Guam (48 U.S.C. 1423a) is amended—*
18        *(1) by inserting "rightful" before "subjects"; and*
19        *(2) by striking "legislation of local application"*
20    *and inserting "legislation".*

    Amend the title so as to read: "A bill to amend the Organic Act of Guam to clarify local executive and legislative provisions in such Act, and for other purposes.".

# Exhibit

# G

CLERK OF COURT
BY

# IN THE SUPERIOR COURT OF GUAM

DOUGLAS B. MOYLAN, as Attorney
General of Guam,

    Petitioner,

v.

FELIX P. CAMACHO, as Governor
of Guam,

    Respondent.

SPECIAL PROCEEDING CASE
NO. SP230-03

*DISISIÓN YAN OTDEN*[1]

---

The Court heard this matter on November 4, 2003, pursuant to a briefing and hearing schedule to address the issues raised by the Supreme Court of Guam Order dated October 10, 2003 in Supreme Court Case No. WRP03-005. J. Basil O'Mallan, III, Esq., Deputy Attorney General, Civil Division, represented the Petitioner, *Douglas B. Moylan*, the Attorney General of Guam. Douglas B. Moylan, Esq., also appeared in his own behalf. Shannon Taitano, Esq., of the Office of the Governor, and Michael A. Pangelinan, Esq., and Daniel Benjamin, Esq., of Calvo and Clark, LLP, represented the Respondent, *Felix P. Camacho*, the Governor of Guam. The Court listened to the arguments and inquired into several issues raised by the parties. At the conclusion of the

---

[1] Decision and Order

hearing, the Court advised the parties that it reserved decision on the matter. After carefully considering the arguments of the parties, their legal memoranda, and after giving this matter much deliberation, the Court now issues this decision and order.

## *I MANMALLOFAN*[2]

On September 29, 2003, the Attorney General of Guam filed an ex parte petition for an alternative writ of mandate against Felix P. Camacho, the Governor (*I Maga'lahi*) of Guam to appoint members and alternate members for the purpose of empaneling a Procurement Appeals Board. An Order directing the issuance of the Alternative Writ of Mandate to empanel a Procurement Appeals Board was signed by the Honorable, Elizabeth Barrett Anderson. The Alternative Writ ordered *I Maga'lahi* to immediately appoint and transmit to the Guam Legislature members and alternates to fully comprise the Procurement Appeals Board. In the alternative, *I Maga'lahi* was ordered to answer and show cause on October 13, 2003 why he has not complied with the alternative writ.

On October 9, 2003, *I Maga'lahi* filed a Writ of Prohibition and/or Writ of Mandamus in the Supreme Court of Guam - WRP03-005. Therein, *I Maga'lahi* sought a writ "directing the Superior Court of Guam to cease and desist and refrain from presiding over and hearing any matters and taking further action" in the within case. At noon on October 10, 2003, *I Maga'lahi* filed an ex parte motion to stay this action pending resolution of the Writ of Prohibition filed in the Supreme Court. The ex parte motion was set for hearing at 4:00 p.m. Prior to the hearing, the Supreme Court issued its Order. It provided in part:

> In issuing the Alternative Writ of Mandamus, the trial court implicitly found that it

---

[2]Background
Page 2 of 45

had jurisdiction. The Governor's petition raises the argument that the trial court erred because the Attorney General had no standing to sue, therefore the trial court acted without jurisdiction. In the face of this serious question and because we find no circumstances demanding exigency, the trial court should have thoroughly considered and required briefing on standing and jurisdiction before granting the Alternative Writ of Mandamus. We hereby order as follows:

1. this court will stay ruling on the Governor's petition for Writ of Prohibition and/or Writ of Mandamus for a period of thirty days.
2. the Superior Court shall address the issue of whether the Attorney General has standing to sue the Governor and whether the action was properly within the trial court's jurisdiction; and
3. the Alternative Writ of Mandamus issued by the Superior Court on September 29, 2003 is stayed pending the resolution of the jurisdictional issues.

The order was signed by F. Philip Carbullido, Chief Justice; Frances M. Tydingco-Gatewood, Associate Justice; and John A. Manglona[3], Justice Pro Tempore.

In accordance with the Supreme Court order, the parties agreed upon a scheduling order. The parties were ordered to file opening briefs on October 24 and respective replies on October 30. The parties have filed their opening as well as reply briefs.

## *DINISKUTA*[4]

On November 5, 2002, Respondent, Felix P. Camacho, was elected by the People of Guam as the seventh[5] Governor of Guam, succeeding to an office his father, Carlos G. Camacho, [Guam's last appointed and first elected Governor] had occupied before him. At the same time that Respondent was being elected Governor of Guam, the People of Guam were electing Petitioner, Douglas B. Moylan, as Guam's first elected Attorney General. Respondent Camacho was

---

[3]Manglona is an Associate Justice of the Supreme Court of the Commonwealth of the Northern Mariana Islands.

[4]Discussion

[5]Ricardo J. Bordallo was the second and fourth Governor of Guam.

Page 3 of 45

inaugurated *I Maga'lahi* on January 6, 2003 and is and has been *I Maga'lahi* since then. Petitioner Moylan was inaugurated Attorney General likewise on January 6, 2003 and he is and has been the Attorney General since then.

Prior to the election of Petitioner, the Attorneys General before him were all appointed by *I Maga'lahi* with the advice and consent of the Guam Legislature. The Attorney General has filed this action seeking the aid of the Superior Court to order *I Maga'lahi* to appoint members and alternates to the Procurement Appeals Board. The Attorney General has chosen to proceed in this matter through a mandamus procedure and more particularly by means of an alternative writ of mandate. The alternative writ was issued by the Superior Court on September 29, 2003 and directs *I Maga'lahi* to appoint the remaining members and alternates to the Procurement Appeals Board or show cause before the Court why he has not done so. The alternative writ which has been issued has been stayed by the Supreme Court, pending compliance with its order referenced above.

## I. NATURE OF PETITION FOR ALTERNATIVE WRIT OF MANDAMUS

### A. *The Mandamus Process.*

Petitions for mandamus are provided for under 7 GCA §31201 et. seq. The relevant statutes provide:

> **§ 31202. When and by What Court Issued.**
> It may be issued by any court, [except a commissioner's court or police court,] to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.
>
> **§ 31303. Writ: Either Alternative or Peremptory.**
> The writ must be either alternative or peremptory. The alternative writ must command the party to whom it is directed to desist or refrain from further proceedings in the action or matter specified therein, until the further order of the

court from which it is issued, and to show cause before such court, at a specified time and place, why such party should not be absolutely restrained from further proceedings in such action or matter. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he should not be absolutely restrained, etc., must be omitted, and a return day inserted.

### § 31204. Writ: Alternative or Peremptory.
The writ may be either alternative or peremptory. The alternative writ must command the party to whom it is directed, immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed or to show cause before the court at a specified time and place why he has not done so. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he has not done as commanded must be omitted and a return day inserted.

### § 31205. When Application is Made Without Notice.
When the application is made to the court without notice to the adverse party, and the writ is allowed, the alternative must be first issued; but if the application is upon due notice and the writ is allowed, the peremptory may be issued in the first instance. With the alternative writ and also with any notice of an intention to apply for the writ, there must be served on each person against whom the writ is sought a copy of the petition. The notice of the application, when given, must be at least ten (10) days. The writ cannot be granted by default. The case must be heard by the court, whether the adverse party appears or not.

### § 31206. Adverse Party may Answer Under Oath.
On the return of the alternative, or the day on which the application for the writ is noticed, the party on whom the writ or notice has been served may answer the petition under oath, in the same manner as an answer to a complaint in a civil action.

A party seeking an alternative writ of mandate relief need not provide notice to the adverse party. See 7 G.C.A. §31205, supra. Moreover, the ex parte notice requirements of Rule 9 of the Rules of the Superior Court do not apply to such an application.

The purpose of the Attorney General's petition for an alternative writ was to order *I Maga'lahi* to appoint the remaining members and alternate members of the Procurement Appeals Board.

### B. *The Procurement Appeals Board and its Appointment Process.*

The Procurement Appeals Board was created by Public Law 18-44. Its sponsors were then Senators C. T. C. Gutierrez and T. S. Nelson. It became law on November 14, 1986. The act added a new Chapter 12 to Title VII-A of the Government Code of Guam. It is now codified under 5 G.C.A. §5701, et seq. The purpose of the act was to provide a forum for procurement appeals. The relevant portions of the act are as follows:

> § 5701. Creation of the Procurement Appeals Board.
> There is established an independent entity to be known as the Procurement Appeals Board to be composed of a chairperson and at least six (6) other members. **The chair person and members of the Board shall be appointed by the Governor** and confirmed with the advice and consent of the Legislature and shall serve part-time as necessary.
>
> § 5702. Terms and Qualifications of Members of the Procurement Appeals Board.
> (a) Term. The term of office of the chairperson and each member of the Procurement Appeals Board shall be six (6) years except that in making the initial appointments, the Governor shall appoint one member for a term of four (4) years, and the chairperson for a term of six (6) years, so that a term of office shall expire every two (2) years. Thereafter, their successors shall be appointed for terms of six (6) years, or for the balance of any unexpired term, but members may continue to serve beyond their terms until their successors take office. Members may be reappointed for succeeding terms. If there is no chairperson, or if such officer is absent or unable to serve, the senior member in length of service shall be temporary chairperson.
> (b) Authority of the Chairperson. The chairperson may adopt operational procedures and issue such orders, not inconsistent with this Chapter, as may be necessary in the execution of the Board's functions. The chairperson's authority may be delegated to the Board's members and employees, but only members of the Board may issue decisions on appeals.
> ©) Support. The Civil Service Commission is authorized to provide for the Board such services as the chairperson requests, on such basis, reimbursable or otherwise, as may be agreed upon between the Civil Service Commission and the chairperson. The Board is empowered to hire legal counsel, accountants, staff and other personnel, and to provide for training of its staff and members.

(d) Qualifications for Board Membership.
(1) One (1) member shall be a member in good standing of the Guam Bar Association who has been admitted to practice before the highest court of a state, territory or the District of Columbia for at least five (5) years prior to that person's appointment, one (1) member shall be a certified public accountant, one (1) member shall have demonstrated experience of at least five (5) years in procurement, one (1) businessperson and three (3) members from the community-at-large.
(2) No member shall be an employee of the government of Guam nor a member of any board or commission of the government of Guam.
(3) The appointment of any person to the Commission shall become void if at any time during his term of office he shall become an employee of the government or accept an annuity from the government.
(4) When a vacancy occurs, the Governor shall appoint a new member within sixty (60) days of the commencement of the vacancy.
(e) Removal of Members. Notwithstanding any other provision of this Chapter, the Governor or the Procurement Appeals Board by three (3) positive votes of its members may recuse a member of the Procurement Appeals Board from participation in a matter before the board due to:
(1) disability,
(2) conflict of interest with respect to service on the Board and engagement in any private business,
(3) for other good cause.
Any removal pursuant to items (2) and (3) of this Subsection shall be effective no sooner than ten (10) calendar days subsequent to the delivery of written notice of such removal by the Governor or the Board to the Legislative Secretary of the Legislature. Removal pursuant to item (1) of this Section shall be effective pursuant to the notice of the action taken.
A member of the Procurement Appeals Board may recuse himself.
For purposes of this Section, recuse means to disqualify from hearing the matter and taking any action on it.
(f) Appointment, Qualifications and Function of Alternates. At the same time as members of the Procurement Appeals Board are appointed by the Governor, **the Governor shall appoint three (3) alternate members to the Board, all of whom shall serve for a term of six (6) years.**
(1) Each alternate shall, at the time of his appointment, be designated either First Alternate, Second Alternate or Third Alternate. For the first year of his appointment each alternate shall serve in the order designated, and each year thereafter they shall rotate the order, so that during the second year, the First Alternate shall serve second, the Second Alternate third, and the Third first, and so on for each successive year until their terms expire.
(2) Each alternate shall fulfill the same requirements for membership on the Board as any of the regular board members fulfill and shall be subject to the same removal procedures as regular board members.
(3) The alternates shall fill in on matters before the Procurement Appeals Board when

a member is absent or recused pursuant to Subsection (e) of this Section and each alternate shall fill in for an absent or recused member in the order they are designated to serve, so that the alternate serving first fills in for the first absence or recusal, the alternate serving second fills in for the second absence or recusal, and so forth.

The Procurement Appeals Board has seven members, which includes a chairperson. The chairperson as well as the six remaining members are all appointed by *I Maga'lahi* with the advice and consent of the Guam Legislature. The Act also requires *I Maga'lahi* to appoint three alternates to the Board, all three likewise requiring legislative confirmation.

The Court is unclear whether this Board has ever been implemented. The Attorney General, however, advised the Court during oral arguments that this Board has never been empanelled since its creation. Thus, seventeen (17) years has passed since this Board was created and its office has still not been implemented. In his petition, the Attorney General alleges that *I Maga'lahi* has only appointed two members to the Board. Attorney David J. Highsmith was appointed by *I Maga'lahi* on June 24, 2003 and confirmed by the Guam Legislature on September 18, 2003. *I Maga'lahi* also appointed Carmen C. De Oro to the Board and she awaits confirmation by the Legislature. In addition to Highsmith, the Board has another existing member, Richard K. Lim, who was appointed by previous Governor Gutierrez on February 5, 2002 and confirmed on May 21, 2002. The Attorney General alleges that despite being in office for approximately ten months, *I Maga'lahi* has failed to appoint seven more individuals to the Board, four (4) regular members and three (3) alternates.

In the creation of the Procurement Appeals Board, the Legislature saw fit to qualify its membership. Thereunder, one (1) member must be an attorney [a member in good standing of the Guam Bar Association... who has been admitted .... to practice for at least five (5) years prior to his appointment]; one (1) member shall be a certified public accountant; one (1) member shall have

Page 8 of 45

demonstrated experience of at least five (5) years in procurement, one (1) businessperson and three (3) members from the community-at-large. When initially passed, the Act required all its members [other than the attorney and certified public accountant members] to have demonstrated experience of at least five (5) years in procurement as a necessary qualification. In addition to the aforesaid qualifications, a member could not be a recipient of any annuity from the government of Guam nor a member of the immediate family of a government of Guam employee. It is apparent from the law as it now exists that subsequently enacted legislation has removed certain impediments in the nomination of members to the said Board.

In filing this action, the Attorney General seeks empaneling of a Procurement Appeals Board which prior hereto has never been empaneled since its creation in 1986.

## II. THE ATTORNEY GENERAL'S POSITION

In his opening brief, the Attorney General sets forth two basic arguments in support of his position. Petitioner first argues that an **elected Attorney General has standing to bring a mandamus action against *I Maga'lahi*.** In this regard, Petitioner points to the 1998 congressional amendments [48 U.S.C. §1421g(d)] made to the office of the Attorney General and the congressional testimony in support thereof from then Senators Elizabeth Barrett-Anderson and Vicente Pangelinan. The Attorney General uses that testimony as indicative of the legislative intent in the amendment with regard to the nature of the office in relation to the election of the Attorney General and his powers and authority. Letters from the Compiler of Laws, Charles Troutman[6], to Delegate Underwood was referenced to illustrate the purpose of the amendment and its interpretive effect [designation of the Attorney General as the Chief Legal Officer]. It is thus argued that being an

---

[6]Charles Troutman was a former Attorney General.

Case 1:05-cv-00038   Document 30-5   Filed 04/14/2006   Page 18 of 19

elected public official on the same executive level as the Governor [both created Organic Act positions] allows the Attorney General to bring this suit against *I Maga'lahi*. More important, the Attorney General's designation as Chief Legal Officer of the government of Guam further cements his ability and provides statutory as well as common law authorization to bring the present action.

The Attorney General argues further that, in addition to the Congressional change in the position of the Attorney General, local law also permits him to sue *I Maga'lahi* to compel him to perform a ministerial act required by law. Petitioner refers the Court to his authority under Sections 30102 and 30109 of 5 G. C. A. Section 30102 grants the Attorney General "cognizance of all legal matters...involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations, autonomous agencies and the Mayors Council". Section 30109 authorizes the Attorney General to "conduct on behalf of the government of Guam all civil actions in which the government is an interested party". Petitioner cites the Court to various cases in support of his proposition.

In an effort to bolster his standing to bring this action, the Attorney General asserts that he is not the governor's attorney. Moreover, the Attorney General asserts that there is no attorney-client relationship with *I Maga'lahi*. This, for the purpose of countering claims by Respondent that the Attorney General is suing his own client, *I Maga'lahi*. The Attorney General is insistent that the government of Guam is his client and not *I Maga'lahi*. In this regard, Petitioner cites the Court to *State ex. Rel. Condon v. Hodges*, 562 S. E. 2d 623 (S.C. 2002) for the proposition that the Attorney General can sue the Governor if there is the possibility that the Governor is acting improperly.

The Attorney General next argues that the Superior Court has jurisdiction to entertain a mandamus action as the present one because such action is within the jurisdiction of this court, it