We have previously found that an analogous situation did not create a conflict of interest. *Cf. Langford v. McLeod, supra* **629 (original proceeding brought for declaratory judgment as to status, responsibility, and duty of Attorney General in representing municipal employees in civil actions; Court held Attorney General may represent public officials in civil suits as well as criminal ones without being subject to imposition of conflicting or unethical duties); *State ex rel. McLeod v. Snipes, 266 S.C. 415, 223 S.E.2d 853 (1976)* (Attorney General sought declaratory judgment that statute requiring him to represent officers of State in criminal proceedings was in conflict with constitutional provision designating Attorney General as chief prosecutor of State; Court held no conflict of interest arose from two duties of Attorney General as he could appoint members of his staff or solicitors or assistant solicitors to participate in prosecution and defense).

**Furthermore, the Attorney General, as noted above, has a dual role of serving the sovereign of the State and the general public. Thus, the Attorney General is not violating the ethical rule against conflicts of interest by bringing an action against the Governor.**

While the Attorney General is required by the Constitution to "assist and represent" the Governor, the Attorney General also has other duties given to him by the General Assembly, and elaborated on by the Court, which indicate the Attorney General can bring an action against the Governor.

In *People ex. Rel. Deukmejian v. Brown*, 172 Cal. Rptr. 478, (1981), the Attorney General of California sought a peremptory writ of mandate to compel the Governor, the Controller, the State Personnel Board, and the Public Employment Relations Board to perform their statutory and constitutional duties with regard to the recently enacted State Employer-Employee Relations Act. The Supreme Court of California held that the Attorney General could not maintain the action where the Attorney General had represented certain state clients, given them legal advise with regard to the pending litigation, and then withdrawn and sued the same clients on the next day on the cause of action arising out of the identical controversy.

The Attorney General argued, however, that his common law powers authorized him to commence such an action. The Supreme Court responded:

2. Article V, section 1, of the California Constitution provides that "The supreme executive power of this State is vested in the Governor. The Governor shall see that

Case 1:05-cv-00038    Document 30-7    Filed 04/14/2006    Page 1 of 29

the law is faithfully executed."

Article V; section 13, defines the powers of the Attorney General inter alia in this manner: "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State." The constitutional pattern is crystal clear: if a conflict between the Governor and the Attorney General develops over the faithful execution of the laws of this state, the Governor retains the "supreme executive power" to determine the public interest; the Attorney General may act only "subject to the powers" of the Governor.

Consistent with the Constitution, Government Code section 12010 provides: "The Governor shall supervise the official conduct of all executive and ministerial officers." (Spear v. Reeves (1906) 148 Cal. 501, 504, 83 P. 432.) The Attorney General is an executive officer who "shall report to the Governor the condition of the affairs of his office" (Gov. Code, s 12522).

We recognize there are cases in other jurisdictions that permit their attorneys general to sue any state officer or agency, presumably without restriction. Such opinions arise, however, under the peculiarities of the prevailing law in those several states, and are not persuasive here. (See, e. g., Conn. Com'n. v. Conn. Freedom of Information ( 1978) 174 Conn. 308, 387 A.2d 533); Feeney v. Commonwealth (1977) 373 Mass. 359, 366 N.E.2d 1262; E.P.A. v. Pollution Control Bd. (1977) 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50; Commonwealth ex rel. Hancock v. Paxton (Ky.1974) 516 S.W.2d 865.)

On the other hand, several jurisdictions have prevented the attorney general from acting without constitutional or statutory authority. A federal court found it incongruous for an attorney general, purporting to act for the people, to mount "an attack by the State upon the validity of an enactment of its own legislature." (Baxley v. Rutland (D.Ala.1976) 409 F.Supp. 1249, 1257; see also Hill v. Texas Water Quality Bd. (Tex.Civ.App.1978) 568 S.W.2d 738; Motor Club of Iowa v. Dept. of Transp. (Iowa 1977) 251 N.W.2d 510, 515; People ex rel. Witcher v. District Court, etc. (1976) 190 Colo. 483, 549 P.2d 778; Garcia v. Laughlin (1955) 155 Tex. 261, 285 S.W.2d 191, 194; State v. Hagan (1919) 44 N.D. 306, 175 N.W. 372, 374; State v. Huston (1908) 21 Okl. 782, 97 P. 982, 989.)

Arizona, the constitution of which, like ours, declares that its governor "shall take care that the laws be faithfully executed" (*159 Ariz.Const., art. V, s 4), reached the same conclusion as we do herein. In Arizona State Land Department v. McFate (1960) 87 Ariz. 139, 348 P.2d 912, 918, the supreme court of that state declared in an unanimous opinion, "Significantly, these powers are not vested in the Attorney General. Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive department and is obligated and empowered to protect the interests of the people and the State by taking care that the laws are faithfully executed."

# VII. APPLICATION OF ORGANIC ACT AMENDMENTS, LOCAL LAWS

Page 33 of 45

## A. REQUIREMENTS OF THE PROCUREMENT APPEALS BOARD

The Attorney General has brought this action [alternative writ of mandamus] to compel *I Maga'lahi* to appoint members of the Guam Procurement Appeals Board. This Board has been created by the Legislature to provide a form for appeals from procurement practices. This is a Board that has never been empaneled since its creation in 1986. The enabling statute has gone through amendments for the most part to allow greater eligibility for membership. Prior to the amendments, a member was required to have five years of procurement experience for eligibility. To date, only two members have ever been confirmed to this Board.

The Board serves an important governmental function because this Board is the final administrative body where challenges to awards of government bids and contracts can be made. The absence of such a Board has required aggrieved parties to file court actions and seek judicial remedies even though Guam law provides an administrative appeal level where the challenges could be resolved. Instead, the courts of Guam have been substituted as the body where challenges can be brought forth. Incumbent governors have been criticized in the past for their failure to empanel such Board. Criticism in the past has come from the legislative branch. The legislature has also seen fit to amend the act to allow for flexibility in the composition of its membership.

In bringing this action, the Attorney General has alleged that while *I Maga'lahi* has been in office for approximately ten (10) months, he has yet to make the required appointments to the Procurement Appeals Board. 5 G.C.A. §5710 provides that the "members of the Board **shall be appointed by the Governor**". 5 G.C.A. §5702(f) further provides that "the Governor **shall appoint three (3) alternate members to the Board**". It is apparent that among the countless and innumerable

tasks within the Governor's responsibilities with regard to his faithful execution of the laws, he is no less required to make the said appointments to the Procurement Appeals Board. This is a responsibility provided by local law that *I Maga'lahi* must also faithfully execute.

## B. DOES THE ATTORNEY GENERAL HAVE AUTHORITY TO SUE THE GOVERNOR?

In determining whether the Attorney General has authority or the requisite standing to bring the mandamus action, the Court must extensively review the Attorney General's powers and ascertain whether such powers authorize him to bring the present action or whether he is expressly excluded by a statute from filing the present action. Thus, unless there is a specific statute that prevents the filing of this mandamus action, at a minimum, the Attorney General's common law powers authorize the filing of this action.

Generally, the powers of an Attorney General are found in the respective state constitution or in the enactments of the various state legislatures. These are the enumerated or express powers. It is also not disputed that the Attorney General has common law powers which has its roots in the English system. The extent of the Attorney General's enumerated powers as well as his common law powers have been the subject of many state court decisions. These decisions are not uniformed and are conflicting to some degree.

Petitioner, the present Attorney General, advocates his position to be a constitutional office, i.e., he exercises authority pursuant to a congressional mandate as expressed in the Organic Act of Guam. Since his position was created by Congress, he wields authority under an analagous "supremacy clause" because of his designation as the "Chief Legal Officer of the Government of Guam" in the Organic Act. The Attorney General boldly asserts that he needs no other authority other than this designation to represent the government of Guam in all matter in which it is

Case 1:05-cv-00038    Document 30-7    Filed 04/14/2006    Page 4 of 29

interested, to undertake all actions for the public benefit and to prosecute individuals for the commission of crimes. The Attorney General also asserts that the local legislature has no authority to diminish his present powers but it may augment such powers. Furthermore, the Attorney General argues that the nature of his office inherently provides him common law powers associated with every Attorney General. Thus, in addition to his designation as the Chief Legal Officer of the government of Guam, he also possesses common law powers similarly possessed by other Attorneys General. It is this designation as the Chief Legal Officer in the Organic Act of Guam, it is argued, as well as his common law powers inherent in that office that authorize him to bring this action against *I Maga'lahi.*

Respondent, *I Maga'lahi,* argues on the contrary that there is no statute which expressly authorizes the Attorney General to bring a mandamus action against him. Furthermore, since the Organic Act designates *I Maga'lahi* as the chief executive officer in the executive branch, he alone is entrusted with the faithful execution of the laws, not the Attorney General. The present action is an attempt to wrestle away from him his responsibilities in the execution of the laws. *I Maga'lahi* further argues that the Attorney General has no common laws powers under the Organic Act nor does he have such powers under local law. Furthermore, even if he had statutory common law powers, the Governor's designation as the chief executive officer under the Organic Act of Guam negates any common law authority that the Attorney General may have in bringing the present action.

Does the Organic Act's designation of the Attorney General as Chief Legal Officer supply him with inherent common law powers? Does the Attorney General possess common law powers? Even if the Court were to conclude that the Attorney General has no common law powers which emanate from his Organic Act position, a review of Guam's laws shows that the Attorney General

Case 1:05-cv-00038    Document 30-7    Filed 04/14/2006    Page 5 of 29

has been granted common law powers by the Guam Legislature. This grant of common law powers is contained in §30103 of 5 G.C.A. The Attorney General possesses common law powers which are not defined. The common law powers include those undertakings specifically mentioned in Section 30103 but are not limited to them. Thus, he has powers to bring actions which affect the public interest **unless expressly limited by any law of Guam to the contrary.**

Under his common law powers, an Attorney General has the power to maintain suits and proceedings for the enforcement of the laws of the state, the preservation of order, and the protection of public rights. It is in the furtherance of these stated purposes that he has been held to have had authority to sue state officers, departments and agencies.

In the pursuit of these stated purposes, can the Attorney General sue the Governor? It would appear that under his common law powers, the Attorney General would have authority to sue the Governor unless there is a specific statute which expressly limits this power to do so. This is so because case law has upheld the right of the Attorney General to sue state officers for enforcement of state laws. The right to sue the Governor under the Attorney General's common law power was recognized and upheld in *State ex rel. Condon v. Hodges*, supra. Since the Attorney General's authority to sue has been answered in the affirmative, the Court must proceed to ask the next question.

Does the Governor's executive powers expressly limit the Attorney General's power to bring this action. The Governor's executive powers stand on the same level as the Attorney General. The Governor also occupies a constitutional office under the creation of Congress in the Organic Act of Guam. The Governor is the executive branch's chief executive officer. The Attorney General is the head of the Department of Law and the Department of Law is within the Executive Branch. The

Governor is entrusted with the faithful performance of the laws. The Governor is entrusted with appointment powers. He and not the Attorney General appoints members of boards and commissions. It is in this context of the separation of powers [the Attorney General's office is in the executive branch and the Governor is the head of the said branch] that the Governor argues that he cannot be sued by the Attorney General. He is the head of the executive branch, charged with the faithful execution of the laws, and the sole determinant of the public interest.

The Organic Act makes the Governor the chief executive officer charged with the general supervision and control over the executive branch of the government of Guam and charged with the faithful execution of the laws. The Organic Act makes the Attorney General the Chief legal Officer of the government of Guam. The Governor is head of the executive branch but the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch but also the legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch.

With regard solely to the executive branch, does the Governor's control over the executive branch expressly include control over the Attorney General such that the present action cannot be maintained?

Assuming that there were some conflict in the roles within the executive between the Governor and the Attorney General, the statutory authority of the Attorney General should prevail because his statute was enacted subsequent in time by congress and it is specific to an office and not general as the Governor's supervisory and control power over the executive branch. The Court notes that the Attorney General no longer is subject to the removal authority of the Governor. Thus, the

Governor's appointive control over this part of the executive has been removed from his immediate control. The Attorney General is now elective and he may be removed not by the Governor but through procedures specified in Section 1422 of the Organic Act. The Attorney General may also be removed for cause in accordance with procedures established by the Legislature in law. The whole legislative intent behind the elective Attorney General was to remove the Attorney General from the control of the Governor and make the office independent. Therefore, it does not appear that the Governor's supervision and control over the executive branch renders the Attorney General hapless in bringing suits against the Governor. In similar fashion, the existence of the Department of Education within the executive branch does not render invalid the present school board merely because the Governor has general supervision over the executive branch. The placement of the education system within the control of the government of Guam has similar effect to the creation of the office of the Attorney General as the chief legal officer of the government of Guam and its resulting placement outside the reach of the executive head.

In ascertaining whether the Attorney General can file this action against the Governor, the final question the Court must ask is whether the Rules of Professional Conduct prevent the Attorney General from bringing the mandamus suit. Is the Attorney General so prevented?

*I Maga'lahi* argues that there was a violation of ethical duties when the Attorney General filed this mandamus action against him because in doing so the Attorney General brought suit against his own client. This is necessarily so because the Attorney General is the attorney for the government of Guam and has cognizance over all legal matters involving the executive branch. *I Maga'lahi* is the head of the executive branch. As head of the executive branch, *I Maga'lahi* is the client of the Attorney General.

Case 1:05-cv-00038    Document 30-7    Filed 04/14/2006    Page 8 of 29

Guam's Rule of Professional Conduct [1.7(a)] mandates that a lawyer shall not "be directly adverse to another client" absent a waiver. *I Maga'lahi* has never given the Attorney General a waiver, but the Attorney General has filed this action against *I Maga'lahi*. The Attorney General has therefore violated his ethical duties and should be enjoined from doing so.

*I Maga'lahi* argues that in *People ex. Rel. Deukmejian v. Brown*, the California Supreme Court held that it was not ethical for the Attorney general to file suit against the Governor, the very person he was supposed to represent. The *Deukmejian v. Brown* case, however, was one where the Attorney General had represented state clients, given them legal advice with regard to the pending litigation, then withdrew from their representation and sued the same clients the next day on a cause of action arising out of the identical controversy. The Court held this was improper conduct by the Attorney General and it was a violation of the rules of professional conduct. The decision in *Deukmejian v. Brown* was narrow, however. The Supreme Court, while acknowledging the dual role of the Attorney General, [as the representative of state agencies and the guardian of the public interest] determined that his common law powers did not authorize the Attorney General to sue the Governor because the California state constitution designated the Attorney General the chief legal officer **subject to the powers and duties of the Governor.** If there was a conflict between the two offices, the Governor retained the supreme power to determine the public interest because the Attorney General's common law power was subject to the express powers and duties of the Governor.

Most jurisdictions recognize a dual role with the Office of the Attorney General. Some of these jurisdictions have recognized and upheld the common law powers of an Attorney General to bring an action against state officers in the enforcement of the laws, the preservation of the public

Page 40 of 45

order and the protection of the public interest. It was the public interest in *Condon v. Hodges* that lead the South Carolina Supreme Court to conclude that the Attorney General could and should bring an action against the Governor if there is the possibility he may be acting improperly. Moreover, the Court held that any existing attorney-client relationship between the Attorney General and the Governor would not prevent the bringing of the action. Moreover, it did not represent a conflict of interest. Because of the Attorney General's dual role, he is not violating the rules of ethics against conflicts of interest by bringing an action against the Governor.

The Attorney General has also cited the court to two Superior Court decisions in which dual representation was not a disqualifying factor. In *People v. Castro*, CF 324-98, then Judge Frances Tydingco-Gatewood ruled that Guam's Rules of Professional Responsibility could not be mechanically applied to the Attorney General's office and did not disqualify the Attorney General from prosecuting the Defendant even though it was representing the Defendant in a civil matter with regards to the claim filed against the Defendant under the Government Claims Act. The Court held that the "mechanical application of the Guam Rules of Professional Conduct to the Attorney general's Office is disfavored because the Attorney General is 'the only one of its kind' and is entitled to a presumption of impartiality".

In *Attorney General of Guam v. Y'Asela Pereira*, Super. Ct. No.SP32-03, this Court recognized the special statues of the Attorney General as the chief legal officer of the government of Guam and his dual role in serving the government of Guam and the public interest.

If the Court were to agree with the Governor and disable the Attorney General from bringing suit against him which the Attorney General has filed in the name of the public interest, [enforcing the laws of Guam by requiring the Governor to perform an act required by law - the appointment

Page 41 of 45

of members to the Procurement Appeals Board], would there be any other protector or guardian of the public interest who would be able to do so? It would appear that a person aggrieved with a procurement process might forego filing a suit to require the governor to make an appointment because there might not be standing to commence such a suit. An aggrieved person may not have standing to allege injury or harm because his appeal may be brought directly to the courts. Thus, he may not be injured in that sense to have the requisite standing to sue the Governor to make appointments to the Board.

Moreover, a ruling by this Court that the Governor cannot be sued by the Attorney General because he is the Attorney General's client may very well result in a type of judicial grant of immunity from suits. Officers of the executive branch may avoid suit when they act improperly or in violation of the law because they derive legal representation from the Attorney General. This cannot be the case nor can this be sound public policy because no one is above the law. It would be unreasonable for this Court to hold that the Attorney General cannot sue the Governor because the faithful execution of the laws rests solely with the Governor. Whether the Governor may be sued to answer why he has not made appointments to the Procurement Appeals Board is the issue herein, not when he should make appointments. The Governor states that in the prioritization of his many areas of responsibility in the execution of the laws, he is in the process and is still interviewing individuals for membership in the said Board. These are issues, however, that relate to the merits of the petition. The Court, upon a return on the alternative writ may very well agree with the Governor's position - that in the execution of the laws, he may need and should be afforded additional time to make his appointments. But, as the Court *in Purdue v. Baker*, supra, acknowledged: the Governor's executive power [his faithful execution of the laws of Guam] cannot

Case 1:05-cv-00038    Document 30-7    Filed 04/14/2006    Page 11 of 29

be used to prevent the execution of another law, i.e., his duty under Guam law to make appointments to the Procurement Appeals Board.

The Court also finds that the better view regarding the Attorney General's dual role is one where the public interest supercedes any conflict in the duties of the Attorney General in favor of the public interest. The general public interest should not be subservient to the Governor's interest as it relates to the faithful execution of the laws. The Governor, like the Attorney General, represents the people, and the public's interest should or must prevail over the individual interests of the governor as well as the Attorney General. In coming to this conclusion, the Court does not intimate that the Attorney General has the final determination of what is in the public interest. The Governor may very well have a different view of what is the public interest. When their positions conflict as to the public interest, as in the controversy before the court, it is appropriate that the Courts determine what the public interest calls for.

### DITETMINASION[8]

For the reasons stated above, the Court hereby finds that in the issuance of the alternative writ of mandate herein, the Superior Court of Guam had jurisdiction to entertain the petition filed by the Attorney General against the Governor of Guam, a mandamus action seeking the Governor to empanel the Procurement Appeals Board. The Attorney General of Guam, like the Governor, is a constitutional officer, and he is designated in the Organic Act of Guam as the Chief Legal Officer of the Government of Guam. As Chief Legal Officer of the government of Guam, the Attorney General inherently possesses common law powers. The Guam Legislature has also bestowed common law powers to the Attorney General - powers which are broad but undefined, emerging and

---

[8]Conclusion

not limited to - unless expressly limited by any law of Guam to the contrary. The common law powers of an Attorney General trace its origin to the English legal system. Petitioner, as Attorney General, has the dual responsibility of (1) representing the Governor, his directors, agencies and other entities in all matters in which the said officials or the government is in anywise involved and (2) being the protector and the guardian of the public interest [a generally accorded common law power]. The public interest arises when there is a need to bring an action for the enforcement of the laws of Guam, the preservation of the order, and the protection of public rights.

In protecting the public interest, the Attorney General has authority to bring an action against the Governor for the enforcement of the laws of Guam. As part of his constitutional [Organic Act] duties in relation to his faithful execution of the laws, the Governor is mandated by law to appoint members to the Procurement Appeals Board. The Court finds no federal or local law exists which expressly prevents the Attorney General from filing an action against the Governor of Guam. Its absence accords common law authority for the Attorney General to proceed with the present action. While the Attorney General has a duty to represent the Governor, there is no conflict with that representation whenever he brings an action against the Governor in the name of the government or in his name, when brought in the name of the public interest. Moreover, there is no violation of the rules of professional responsibility whenever he brings such an action.

The Court also finds and agrees with the Governor's position that he alone is charged with the faithful execution of the laws of Guam. The Court finds that *I Maga'lahi* alone should determine who to appoint as members to vacant positions on boards and commissions of the government of Guam. He alone has discretion in prioritizing among his many areas of responsibilities in the execution of the laws of Guam. But, in bringing this action, the Attorney

Case 1:05-cv-00038    Document 30-7    Filed 04/14/2006    Page 13 of 29

General is not usurping nor is he attempting to wrestle the executive power from the Governor. *I Maga'lahi* remains the appointing authority. He alone appoints, no one else. Whether *I Maga'lahi* should make appointments to the Procurement Appeals Board at this juncture, or whether he should be given more time to make the remaining appointments, taking into consideration the prioritization that may be necessary in the execution of the laws [the competing public interest claims before the Court], these questions do not concern the jurisdiction of the Court or Petitioner's standing, but relate solely to Petitioner's request whether the Attorney General's prayer for relief should be granted on the merits of his application. The Court, however, expresses no opinion on the merits of the Attorney General's mandamus request. It has only been directed by the Supreme Court to determine whether it has jurisdiction to entertain Petitioner's action and in that regard whether the Attorney General has standing to bring the mandamus action. This Court thus concludes that it has jurisdiction to hear the alternative writ filed by the Attorney General. The Attorney General, under his constitutional and common law powers, has authority and standing to file the present action [brought in the public interest] against the Governor

*Este i sinneda i Kotte*[9].

SO ORDERED this 10th day of November, 2003.

<br>

Joaquin V. E. Manibusan, Jr.
Judge, Superior Court of Guam

---

[9]These are the findings of the Court.

we hereby certify that the foregoing is a full, true and correct copy of the original on file in the office of the clerk of the Superior Court of Guam
Dated at Hagatna, Guam

NOV 1 0 2003

Ann D.L. Rivera
Deputy Clerk, Superior Court of Guam

# Exhibit

# H

RECEIVED

JUL 02 2003

ATTORNEY GENERAL'S OFFICE

FILED
SUPREME COURT
OF GUAM

JUL 2  11 06 AM '03

# IN THE SUPREME COURT OF GUAM

IN RE:
REQUEST OF GOVERNOR
FELIX P. CAMACHO RELATIVE TO
THE INTERPRETATION AND
APPLICATION OF SECTION 11 OF
THE ORGANIC ACT OF GUAM

)
)
)
)
)
)
)

Supreme Court Case No.:CRQ03-001


**ORDER**

This matter comes before the court pursuant to determinations made at a hearing held in the above-captioned matter on July 2, 2003. In accordance with the rulings made from the bench, the Attorney General of Guam's request to intervene as an interested party in this matter is **GRANTED.** Furthermore, all briefs in this matter shall be filed by 3:00 p.m. on July 7, 2003. Any opposition brief shall be filed by 5:00 p.m. on July 8, 2003. Any replies to points raised in an opposition shall be filed by 10:00 a.m. on July 9, 2003. The matter shall be heard at 10:00 a.m. on July 9, 2003.

Finally, the court requests that the parties address in their briefs certain issues identified by the court at the July 2, 2003 hearing. A summary of those issues is attached to this order.

**SO ORDERED,** this 2nd day of July, 2003.

F. PHILIP CARBULLIDO
Chief Justice

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Supreme Court of Guam
Dated at Hagatna, Guam

JUL 0 2 2003

Z 0 0 3 1 8 0 2

# Exhibit

# I

UNITED STATES COURT OF APPEALS **F I L E D**

FOR THE NINTH CIRCUIT

OCT 23 2003

CATHY A. CATTERSON, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| DOUGLAS B. MOYLAN, | No. 03-72836 |
| Petitioner, | D.C. No. CR-03-00001-CRQ Guam (Agana) |
| v. | |
| FELIX P. CAMACHO, | ORDER |
| Respondent. | |

Before: WARDLAW, BERZON and CLIFTON, Circuit Judges

The petition for a writ of certiorari to review a final decision of the Supreme

Court of Guam is granted. The Clerk of the Supreme Court of Guam shall file the

certificate of record with the Clerk of this court by November 17, 2003. *See* 9th

Cir. R. 6-2(g), (h). Petitioner's opening brief on review is due December 29,

2003; respondent's answering brief is due January 28, 2004; and petitioner's

optional reply brief is due 14 days after service of the answering brief. Briefing

shall comply with Federal Rule of Appellate Procedure 32.

**R E C E I V E D**

OCT 2 2 2003
10:00

ATTORNEY GENERAL'S OFFICE

# Exhibit

# J

| 105TH CONGRESS<br>*2d Session* | HOUSE OF REPRESENTATIVES | REPORT<br>105–742 |

## GUAM ORGANIC ACT AMENDMENTS OF 1998

SEPTEMBER 24, 1998.—Committed to the Committee of the Whole House on the State of the Union and ordered to be printed

Mr. YOUNG of Alaska, from the Committee on Resources, submitted the following

# REPORT

together with

## ADDITIONAL VIEWS

[To accompany H.R. 2370]

[Including cost estimate of the Congressional Budget Office]

The Committee on Resources, to whom was referred the bill (H.R. 2370) to amend the Organic Act of Guam for the purposes of clarifying the local judicial structure and the office of Attorney General, having considered the same, report favorably thereon with amendments and recommend that the bill as amended do pass.

The amendments are as follows:

Strike out all after the enacting clause and insert in lieu thereof the following:

### SECTION 1. SHORT TITLE.

This Act may be cited as the "Guam Organic Act Amendments of 1998".

### SEC. 2. ATTORNEY GENERAL OF GUAM.

Section 29 of the Organic Act of Guam (48 U.S.C. 1421g) is amended by adding at the end the following new subsection:

"(d)(1) The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.

"(2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section

59–006

9–A of this Act or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—

"(A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

"(B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.".

**SEC. 3. LEGISLATIVE QUORUM.**

Section 12 of the Organic Act of Guam (48 U.S.C. 1423b) is amended by striking "eleven" and inserting "a simple majority".

**SEC. 4. CLARIFICATION OF LEGISLATIVE POWER.**

The first sentence of section 11 of the Organic Act of Guam (48 U.S.C. 1423a) is amended—

(1) by inserting "rightful" before "subjects"; and
(2) by striking "legislation of local application" and inserting "legislation".

Amend the title so as to read:

A bill to amend the Organic Act of Guam to clarify local executive and legislative provisions in such Act, and for other purposes.

## PURPOSE OF THE BILL

As reported from the Committee on Resources, the purpose of H.R. 2370 is to amend the Organic Act of Guam to clarify local executive and legislative provisions in such Act.

## BACKGROUND AND NEED FOR LEGISLATION

The Organic Act of Guam was approved on August 1, 1950 (64 Stat. 384, 48 U.S.C. 1421 et seq.), to provide for Guam's governance. The executive, legislative, and judicial branches of the government of Guam exist based on the Organic Act. Changes to the fundamental functions of any of the three branches of government in Guam can only occur by amendments to the Organic Act by Congress, as Guam is unable to make changes through local law.

Although Congress has amended the Organic Act of Guam on occasion to make allowances for increased efficiency in the government of Guam or to correct inconsistencies, in 1976 Congress authorized Guam to adopt its own constitution to provide for a significant increase in self-government (Public Law 94–584). The proposed changes to the Organic Act in H.R. 2370 must be enacted by Congress as amendments to the Organic Act as Guam has not yet adopted a local constitution. However, these provisions are responsive to current specific requests of the Government of Guam and are expected to foster greater efficiency and equity.

### Attorney General of Guam

Guam's Attorney General is currently appointed by the Governor of Guam with the advice and consent of the Guam Legislature. The appointment of the Attorney General is to a four year term or until the end of the term of the appointing Governor, whichever is sooner. The Governor may remove the Attorney General for cause.

Controversies have arisen in the past because of the appointment nature of the position of Attorney General. Public concerns revolve



around political interference with investigations, inefficiency of case work and dismissal of the Attorney General without cause.

In response to the growing number of complaints, a survey was conducted to determine an acceptable resolution. It was clear that respondents (69%) favored an elected position. The survey also asked whether the position should be mandated by Congress, or left to the Guam Legislature to create. A slight majority of citizens favored local legislation. An amendment to Guam's Organic Act is needed to allow for an elected Attorney General. This legislation provides a mechanism for elected legislators to act on this issue.

*Legislative quorum*

Since enactment of Guam's Organic Act, the Guam Legislature has been comprised of a 21 member body elected at-large. The Organic Act mandates that a legislative quorum shall consist of 11 members.

A referendum was held during the 1994 general election to reduce the number of seats in the Guam Legislature from 21 to 15. This change will take effect during the 1998 legislative elections.

H.R. 2370 will align the Organic Act with changes in local law and preferences of the electorate. It will replace a mandated legislative quorum to a simple majority rather than a specified number.

*Clarification of legislative powers*

Defined in Guam's Organic Act, the powers of the Guam Legislature currently extend to "subjects of legislation of local application." In Public Law 85-851, Congress amended the Virgin Island's Organic Act to read: "The legislative authority and power of the Virgin Islands shall extend to all rightful subjects of legislation not inconsistent with this Act or the laws of the United States made applicable to the Virgin Islands," in response to the Supreme Court case *Granville-Smith* v. *Granville-Smith* [349 U.S. 1, 75 S.Ct. 553 (1955)]. The Ninth Circuit Court of Appeals has referenced this discrepancy to support its decisions to the effect that Guam has less local government than other territories.

This legislation will provide Guam with a greater measure of self-government equal to that of the U.S. Virgin Islands.

COMMITTEE ACTION

H.R. 2370 was introduced on July 31, 1997, by Delegate Robert Underwood (D-GU). The bill was referred to the Committee on Resources. On October 29, 1997, the Committee held a hearing on H.R. 2370 (Printed Hearing 105-78). Appearing before the Committee were officials of Guam's judicial, legislative, and executive branches, as well as the Administration. Witnesses supported self-government for Guam and there were no objections to any of the changes to the Organic Act which have been approved by the Committee.

On July 29, 1998, the Committee met to mark up H.R. 2370. An amendment in the nature of a substitute to focus the changes to the Organic Act of Guam to provisions about the election of the Attorney General of Guam, quorum size, and clarification of legislative powers was offered by Mr. Underwood and adopted by voice.

The bill was then ordered favorably reported to the House of Representatives by voice vote.

## COMMITTEE OVERSIGHT FINDINGS AND RECOMMENDATIONS

With respect to the requirements of clause 2(l)(3) of rule XI of the Rules of the House of Representatives, and clause 2(b)(1) of rule X of the Rules of the House of Representatives, the Committee on Resources' oversight findings and recommendations are reflected in the body of this report.

## CONSTITUTIONAL AUTHORITY STATEMENT

Article IV, section 3 of the Constitution of the United States grants Congress the authority to enact H.R. 2370.

## COST OF THE LEGISLATION

Clause 7(a) of rule XIII of the Rules of the House of Representatives requires an estimate and a comparison by the Committee of the costs which would be incurred in carrying out H.R. 2370. However, clause 7(d) of that Rule provides that this requirement does not apply when the Committee has included in its report a timely submitted cost estimate of the bill prepared by the Director of the Congressional Budget Office under section 403 of the Congressional Budget Act of 1974.

## COMPLIANCE WITH HOUSE RULE XI

1. With respect to the requirement of clause 2(l)(3)(B) of rule XI of the Rules of the House of Representatives and section 308(a) of the Congressional Budget Act of 1974, H.R. 2370 does not contain any new budget authority, spending authority, credit authority, or an increase or decrease in revenues or tax expenditures.

2. With respect to the requirement of clause 2(l)(3)(D) of rule XI of the Rules of the House of Representatives, the Committee has received no report of oversight findings and recommendations from the Committee on Government Reform and Oversight on the subject of H.R. 2370.

3. With respect to the requirement of clause 2(l)(3)(C) of rule XI of the Rules of the House of Representatives and section 403 of the Congressional Budget Act of 1974, the Committee has received the following cost estimate for H.R. 2370 from the Director of the Congressional Budget Office.

## CONGRESSIONAL BUDGET OFFICE COST ESTIMATE

U.S. CONGRESS,
CONGRESSIONAL BUDGET OFFICE,
*Washington, DC, August 6, 1998.*

Hon. DON YOUNG,
*Chairman, Committee on Resources,*
*House of Representatives, Washington, DC.*

DEAR MR. CHAIRMAN: The Congressional Budget Office has prepared the enclosed cost estimate for H.R. 2370, the Guam Organic Act Amendments of 1998.

If you wish further details on this estimate, we will be pleased to provide them. The CBO staff contact is John R. Righter.

Sincerely,

JUNE E. O'NEILL, *Director*.

Enclosure.

*H.R. 2370—Guam Organic Act Amendments of 1998*

H.R. 2370 would amend the Organic Act of Guam to allow its legislature to enact a law providing for the election of the island's attorney general, specify that a simple majority of legislators qualifies as a quorum, and broaden the extent of the legislature's powers. CBO estimates that enacting this bill would have no impact on the federal budget. Because H.R. 2370 would not affect direct spending or receipts, pay-as-you-go procedures would not apply to the bill. H.R. 2370 contains no intergovernmental or private-sector mandates as defined in the Unfunded Mandates Reform Act and would impose no costs on state, local, or tribal governments.

The CBO staff contact is John R. Righter. This estimate was approved by Robert A. Sunshine, Deputy Assistant Director for Budget Analysis.

## COMPLIANCE WITH PUBLIC LAW 104–4

H.R. 2370 contains no unfunded mandates.

## CHANGES IN EXISTING LAW MADE BY THE BILL, AS REPORTED

In compliance with clause 3 of rule XIII of the Rules of the House of Representatives, changes in existing law made by the bill, as reported, are shown as follows (existing law proposed to be omitted is enclosed in black brackets, new matter is printed in italic, existing law in which no change is proposed is shown in roman):

## ORGANIC ACT OF GUAM

\*　　\*　　\*　　\*　　\*　　\*　　\*

SEC. 11. The legislative power of Guam shall extend to all *rightful* subjects of [legislation of local application] *legislation* not inconsistent with the provisions of this Act and the laws of the United States applicable to Guam. Taxes and assessments on property, internal revenues, sales, license fees, and royalties for franchises, privileges, and concessions may be imposed for purposes of the government of Guam as may be uniformly provided by the Legislature of Guam, and when necessary to anticipate taxes and revenues, bonds and other obligations may be issued by the government of Guam: *Provided, however,* That no public indebtedness of Guam shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of the property in Guam. Bonds or other obligations of the government of Guam payable solely from revenues derived from any public improvement or undertaking shall not be considered public indebtedness of Guam within the meaning of this section. All bonds issued by the government of Guam or by its authority shall be exempt, as to principal and interest, from taxation by the Government of the United States or by the government of Guam, or by any State or Territory or any political subdivision thereof, or by the District of Columbia. The Secretary of the Inte-

rior (hereafter in this section referred to as "Secretary") is author-
ized to guarantee for purchase by the Federal Financing Bank
bonds or other obligations of the Guam Power Authority maturing
on or before December 31, 1978, which shall be issued in order to
refinance short-term notes due or existing on June 1, 1976 and
other indebtedness not evidenced by bonds or notes in an aggregate
amount of not more than $36 million, and such bank, in addition
to its other powers, is authorized to purchase, receive or otherwise
acquire these same. The interest rate on obligations purchased by
the Federal Financing Bank shall be not less than a rate deter-
mined by the Secretary of the Treasury taking into consideration
the current average market yield on outstanding marketable obli-
gations of the United States of comparable maturities, adjusted to
the nearest one-eighth of 1 per centum, plus 1 per centum per
annum. The Secretary, with the concurrence of the Secretary of the
Treasury, may extend the guarantee provision of the previous sen-
tence until December 31, 1980. The Secretary, upon determining
that the Guam Power Authority is unable to refinance on reason-
able terms the obligations purchased by the Federal Financing
Bank under the fifth sentence of this section by December 31, 1980,
may, with the concurrence of the Secretary of the Treasury, guar-
antee for purchase by the Federal Financing Bank; and such bank
is authorized to purchase, obligations of the Guam Power Authority
issued to refinance the principal amount of the obligations guaran-
teed under the fifth sentence of this section. The obligations that
refinance such principal amount shall mature not later than De-
cember 31, 1990, and shall bear interest at a rate determined in
accordance with section 6 of the Federal Financing Bank Act (12
U.S.C. 2285). At the request of the Board of Directors of the Guam
Power Authority for a second refinancing agreement and condi-
tioned on the approval of the Government of Guam pursuant to the
law of Guam, and conditioned on the establishment of an independ-
ent rate-making authority by the Government of Guam, the Sec-
retary may guarantee for purchase by the Federal Financing Bank,
on or before December 31, 1984, according to an agreement that
shall provide for—

(a) substantially equal semiannual installments of principal
and interest;

*  *  *  *  *  *  *

SEC. 12. The legislature shall be the judge of the selection and
qualification of its own members. It shall choose from its members
its own officers, determine its rules and procedure, not inconsistent
with this Act, and keep a journal. The quorum of the legislature
shall consist of [eleven] *a simple majority* of its members. No bill
shall become a law unless it shall have been passed at a meeting,
at which a quorum was present, by the affirmative vote of a major-
ity of the members present and voting, which vote shall be by yeas
and nays.

*  *  *  *  *  *  *

SEC. 29. (a) *  *  *

*  *  *  *  *  *  *

*(d)(1) The Attorney General of Guam shall be the Chief Legal Of-
ficer of the Government of Guam. At such time as the Office of the
Attorney General of Guam shall next become vacant, the Attorney
General of Guam shall be appointed by the Governor of Guam with
the advice and consent of the legislature, and shall serve at the
pleasure of the Governor of Guam.*

*(2) Instead of an appointed Attorney General, the legislature may,
by law, provide for the election of the Attorney General of Guam by
the qualified voters of Guam in general elections after 1998 in
which the Governor of Guam is elected. The term of an elected At-
torney General shall be 4 years. The Attorney General may be re-
moved by the people of Guam according to the procedures specified
in section 9–A of this Act or may be removed for cause in accordance
with procedures established by the legislature in law. A vacancy in
the office of an elected Attorney General shall be filled—*

*(A) by appointment by the Governor of Guam if such vacancy
occurs less than 6 months before a general election for the Office
of Attorney General of Guam; or*

*(B) by a special election held no sooner than 3 months after
such vacancy occurs and no later than 6 months before a gen-
eral election for Attorney General of Guam, and by appointment
by the Governor of Guam pending a special election under this
subparagraph.*

\*        \*        \*        \*        \*        \*        \*

## ADDITIONAL VIEWS

The introduction of the original version of H.R. 2370, the Guam Judicial Empowerment Act, stemmed from a need to clarify and insulate the judicial branch of Guam's local government from interference by the executive or legislative branches of the Government of Guam. These Additional Views discuss "Section 2. Judicial Authority; Supreme Court of Guam" found in the original version of H.R. 2370.

A 1977 ruling by the U.S. Supreme Court—*Territory of Guam v. Olsen*, 431 U.S. 195—found Guam's Supreme Court (established in 1973 by the 12th Guam Legislature) to be inorganic. In this case, the Court held that Guam's Organic Act did not authorize the transfer of appellate jurisdiction from the appellate division of the District Court of Guam to a locally established appellate court.

The 1984 Omnibus Territories Act was passed by Congress in response to the *Guam v. Olsen* ruling. The Act authorized the Guam Legislature to create an appellate court and provided that once such a court is established, appellate jurisdiction would transfer from the appellate division of the District Court of Guam to the newly established appellate court. The Act, however, did not provide a structure for a newly created judicial system once an appellate court was established. Nor, did the Act mention that the responsibility should be left to the Guam Legislature.

In 1992 the 21st Guam Legislature passed Public Law 21–147, the Frank G. Lujan Memorial Court Reorganization Act. This Act re-created the Supreme Court of Guam to serve as the highest appellate court on the island. The author of the Frank G. Lujan Memorial Court Reorganization Act has stated that is was the intent of the 21st Guam Legislature to make the Supreme Court of Guam the highest local court and be vested with those powers traditionally held and exercised by the highest court of a jurisdiction.

However, the revival of the Supreme Court of Guam and the absence of administrative composition direction in the 1984 Omnibus Territories Act makes the court subject and subordinate to the shifts in the political power structure of the Guam Legislature. Public Law 23–86, enacted by the 23rd Guam Legislature in 1996, removed the Supreme Court's authority over personnel matters within the Judiciary and created two parallel court systems. On two other occasions, the 23rd Guam Legislature took into consideration two different pieces of legislation. Bill No. 494 would have completely removed the Supreme Court's authority over the Superior Court and Bill No. 778 would have rearranged the authority of the Supreme Court making it an appellate division of the Superior Court. Another example of the Supreme Court's susceptibility to the Guam Legislature came recently in February 1998.

During the course of debate over controversial comprehensive solid waste management legislation, a non-germane rider removing

the Supreme Court's authority was attached. Because the subject matter of the rider was also controversial, minority Members urged the leadership to allow for a public hearing on the issue before attachment. The request was denied, the rider was attached and the legislation passed. The Governor of Guam allowed a pocket veto of the solid waste management legislation and expressed his disapproval of the manner in which a controversial rider was attached to a crucial piece of legislation. He continued, in his message to the Speaker of the Guam Legislature, to reiterate his support for passage of H.R. 2370 by the U.S. Congress. The actions of the Guam Legislature clearly indicate that Guam's third branch of government is subordinate and subject to changes by the Guam Legislature. The Judiciary is not truly a co-equal, independent branch of government.

Chairman Don Young, Committee on Resources, has expressed in a May 11, 1998 letter to Mr. Underwood, that he cannot support the proposed measure (Sec. 2) regarding "Judicial Authority; Supreme Court of Guam," found in the original version of H.R. 2370. Chairman Young states that the change in judiciary "should be done with the support of the Government of Guam; or in a locally developed Constitution." Chairman Young notes that the Committee has, in the past, considered changes affecting local self-government of territories based on a consensus by the people and their leaders. The consensus is usually reflected in resolutions by the local legislature.

Mr. Allen P. Stayman, Director of the Office of Insular Affairs, stated in a May 5, 1998 letter that the Administration "has no objection to the passage of such a substitute amendment to H.R. 2370." The substitute amendment to which Mr. Stayman refers to is the improvement of language, as suggested by the Administration, for clarification. It is important to note that during the October 29, 1997 hearing on H.R. 2370, inclusive of Sec. 2 regarding "Judicial Authority; Supreme Court of Guam," Mr. Stayman testified that the Administration had no objection to the overall concept of H.R. 2370.

Section 2 of H.R. 2370, received endorsements and support from a number of local Guam organizations. The Guam Bar Association conducted a survey among its membership to determine the amount of support or opposition for H.R. 2370. Seventy-two percent (72%) or 27 of 37 attorneys, favored defining and affirming the authority of the Supreme Court in Guam's Organic Act. Guam's singular newspaper publication, the Pacific Daily News, also endorsed the passage of the Guam Judicial Empowerment Act in a February 10, 1998 editorial. They stated that H.R. 2370, "is emergency legislation and can't wait for routine handling. It must get prompt action in Washington before Guam's system of justice falls victim to arm-twisting from special interest groups."

A significant endorsement for the original version of H.R. 2370 came from a February 17, 1998 letter from the Conference of Chief Justices. The Conference of Chief Justices is comprised of members who hold the highest judicial officers of each state of the United States, the District of Columbia, Puerto Rico, Guam and other territories. In their letter, they express their strong support for H.R. 2370 "to assure by legislation the independence of its judiciary and

to maintain its judicial branch as a separate and co-equal branch of government."

Currently, Guam's judiciary is not a co-equal branch of government. It's court system does not reflect court systems existing in the United States. This predicament can only be corrected by amending the Organic Act of Guam to enact Sec. 2 of H.R. 2370 regarding the judicial authority of the Supreme Court of Guam. The Committee on Resources needs to address this important issue in the near future.

ROBERT A. UNDERWOOD.
GEORGE MILLER.

O