SHANNON TAITANO, ESQ.
OFFICE OF THE GOVERNOR OF GUAM
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910
Telephone: (671) 472-8931
Facsimile: (671) 477-4826

ARTHUR B. CLARK, ESQ.
JANALYNN C. DAMIAN, ESQ.
DANIEL M. BENJAMIN, ESQ.
CALVO & CLARK, LLP
Attorneys at Law
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913
Telephone: (671) 646-9355
Facsimile: (671) 646-9403

Attorneys for *Felix P. Camacho, Governor of Guam*

FILED
DISTRICT COURT OF GUAM
APR 21 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM<br><br>Plaintiff,<br><br>-v-<br><br>FELIX P. CAMACHO, as the Governor of Guam, et. al.<br><br>Defendants. | CIVIL CASE NO. 05-00038<br><br>**THE GOVERNOR OF GUAM'S REPLY IN SUPPORT OF HIS MOTION (1) TO DISMISS PLAINTIFF'S COMPLAINT; OR (2) IN THE ALTERNATIVE, TO STAY** |

ORIGINAL

Defendant Governor of Guam Felix P. Camacho (the "Governor") submits this reply in support of his motion to dismiss the Complaint ("Cmpl.") of the Attorney General of Guam (the "AG") brought in the name of the Government of Guam, or in the alternative to stay this action.

## I. THE AG HAS NO STANDING

### A. The AG Cannot Sue *Parens Patriae* To Challenge A Tax Scheme

#### a. The AG Cannot Overcome *Pennsylvania v. New Jersey*

As set forth in the moving papers, this case must be dismissed because the United States Supreme Court has flatly held that there is no *parens patriae* standing to bring suit on behalf of individual taxpayers challenging the constitutionality of a tax scheme. *Pennsylvania v. New Jersey*, 426 U.S. 660, 666 (1976) ("Pennsylvania's Parens patriae suit against New Jersey represents nothing more than a collectivity of private suits against New Jersey for taxes withheld from private parties. No sovereign or quasi-sovereign interests of Pennsylvania are implicated.").

The AG's only response to *Pennsylvania v. New Jersey* is to argue that this decision supposedly "does not preclude a State from bringing a *parens patriae* action on behalf of individual citizens seeking to protect their constitutional rights." (Opp. at 6) (emphasis added). However, *Pennsylvania v. New Jersey* expressly involved constitutional rights under both the equal protection clause and privileges and immunities clause. *Id.* at 664-65 ("Pennsylvania, in attempting to establish its entitlement to taxes collected by New Jersey from its residents, has alleged that the New Jersey Transportation Benefits Tax Act violates both the Privileges and Immunities Clause and the Equal Protection Clause.") (emphasis added). *Pennsylvania v. New Jersey* is controlling and requires dismissal of this case.

#### b. The AG's *Parens Patriae* Cases Are Not Tax Cases

Other than seeking to falsely distinguish *Pennsylvania v. New Jersey*, the AG cites various non-responsive authorities, *e.g. Hawaii v. Standard Oil Co.*, 405 U.S. 251 (1972) (holding there was no *parens patriae* standing in antitrust cases); *People v. Grasso*, 2006 WL 657115, at *4 (N.Y. Sup. Ct. 2006) (holding there was *parens patriae* standing for a suit regarding excessive CEO compensation); *State of NY ex rel. Spitzer v. Cain*, 2006 WL 337468 (S.D.N.Y. 2006) (holding there was a quasi-sovereign interest in keeping open access to abortion clinics). None of

those cases involved taxes. Thus, none cast any doubt on the application of *Pennsylvania v. New Jersey* to this case.

### c. The AG's Reliance on Local Laws Is Misplaced

The AG claims that standing is justified because "the [Guam] legislature has taken action as part of its lawmaking powers and created a law requiring property assessments. Strong economic reasons justify a law requiring triennial assessments of property taxes and these reasons support a finding that the Attorney General of Guam has sufficient *parens patriae* standing to bring this action." (Opp. at 9-10.) However, a local law cannot grant a party standing in federal court unless the party can meet the tests of Article III. *N.Y. State Club Ass'n, Inc. v. City of N.Y.*, 487 U.S. 1, 8 n.2 (1988).

Moreover, Guam law does not "create" a triennial assessment requirement any more. Instead, it now states that if no assessment has occurred, the government may rely upon the most recent assessment, as adjusted for challenges and other factors. 11 G.C.A. § 24306. So even if local Guam law alone could provide a basis for standing in federal court, local Guam law does not support *parens patriae* standing in this case (which is why the AG's complaint has no allegation that the defendants violated any local law).

The AG also claims standing under 5 GCA § 30103 because that lets him sue on behalf of the people "unless expressly limited by any law of Guam to the contrary." (Opp. at 12). However, there is no suggestion that the Guam Legislature meant this to grant any form of *parens patriae* standing that would be broader than that enjoyed by a normal attorney general.

### B. The AG Is Not Authorized to Bring Suit *Parens Patraie* against Defendants

The Governor's motion to dismiss raised the separate issue of standing that (1) only the federal government may bring suit against a federal entity *parens patriae*, (2) Guam is an unincorporated U.S territory and therefore a federal entity, and (3) the government defendants in this case are therefore federal in nature, and only subject to suit *parens patriae* by the federal government, not the AG. The AG's response is a lengthy argument that, through various Organic Act amendments over the last fifty years, Congress has liberated Guam from its status as an unincorporated territory subject to Congress's plenary control. (Opp. at 14-17).

That it is simply not the law. As the Ninth Circuit reiterated just four years ago: "Guam remains an unincorporated territory of the United States, 48 U.S.C. § 1421a, <u>subject to the plenary power of Congress. . . . Congress has the power to legislate directly for Guam or to establish a government for Guam subject to congressional control, and except as Congress may determine, Guam has no inherent right to govern itself.</u>" *Guam v. Guerrero*, 290 F.3d 1210, 1214 (9th Cir. 2002) (citing *Guam v. Okada*, 694 F.2d 565, 568 (9th Cir. 1982)) (emphasis added). The AG is not free to disregard controlling Ninth Circuit precedent that is only four years old as somehow outdated (especially when most of the AG's arguments are based on events that occurred many years before the *Guam v. Guerrero* decision).

### C. The General Scope of the AG's Powers Are Not at Issue, and His Points as to Them Have Been Rejected by the Courts, Including this Court

At various points the AG raises arguments regarding the scope of his powers, and it appears that these points are also meant to address the standing issue. (*See* Opp. at 10-14, 35). These points are generally non-responsive. The question is not whether the AG generally has various powers, but whether he has the specific powers necessary for standing in this case.

However, even taken on their face, the AG is raising arguments he has lost (repeatedly) before, including in front of this Court. The Governor attaches hereto the most recent decisions by the Guam District Court and Superior Court regarding the comparative powers of the Governor and AG. (*See attached decisions*: (1) *Santos v. Camacho*, Dist. Ct. of Guam Civ. Case No. 04-00006 (March 10, 2006 Order re: Objections to Magistrate Order of September 19, 2005) (the *Santos* Order); (2) *Camacho v. Moylan*, Guam Sup. Sp. Proc. Case No. SP0037-06 (March 8, 2006 Dec. & Order)). Notably, in *Santos* this Court held based on their comparative Organic Act provisions that: "<u>The Court concludes that the Governor is the executive officer of the territory, and has power over the Attorney General.</u>" *Santos* Order at 8 (emphasis added).[1]

---

[1] The AG also has placed into his brief certain recycled argument regarding his powers being based on Illinois law or that the Court should rely upon informal correspondence by the former Guam complier of laws to interpret final Congressional statutes (which did not even use all of the proposed statutory language discussed). These issues were raised unsuccessfully to this Court in *Santos*. The Guam Supreme Court took the time to individually work through and reject each of

{G0011066.DOC;1}  3
Case 1:05-cv-00038   Document 32   Filed 04/21/2006   Page 4 of 11

The AG relies on a 2003 decision, *Moylan v. Camacho*, Case No. SP230 03 (Guam Super. Ct. Nov. 12, 2003 Dec. & Order), and the fact that this decision was issued by the current Federal Magistrate while he was a Superior Court Judge. (Opp. at 14). First, although that case involved a challenge to the AG's standing, it was not a tax case (which is one of the standing issues here) and the Governor did not raise the AG's inability to sue a federal instrumentality *parens patriae* in that case (which is the other standing issue here). Second, the Organic Act powers of the Governor and AG are federal law questions. The decision in *Santos* attached hereto was an Order overruling the Federal Magistrate's interpretation of those federal laws, and instead holding, as quoted above, that the Governor has powers over the AG. The District Court of Guam thus has declined to accept the interpretation of the respective powers of the Governor and AG under federal law that was set forth in *Moylan v. Camacho*, and instead adopted the holding set forth in *Santos*.

## II. THE AG CANNOT SEEK INJUNCTIVE OR DECLARATORY RELIEF AS TO PROPERTY TAXES BECAUSE THE AG HAS NO ALLEGATION THAT PRESENT ADMINISTRATIVE REMEDIES ARE NOT FUNCTIONING

As the Governor stated in his opening motion, claims for declaratory and injunctive relief are not permissible in tax cases absent a showing that the present state law remedies are not plain, adequate and complete remedies that are available to taxpayers. *Matthews v. Rodgers*, 284 U.S. 521, 525-26 (1932). Here, the AG's complaint has no allegation that *individual* taxpayers lack an adequate remedy, instead attempting to assert that the present remedies are inadequate only because of the alleged number of people involved. However, absent an allegation that the administrative appeals process is inadequate, the exercise of jurisdiction is improper. *Id.* Such an allegation cannot be made here because there is a functional appeals process. 11 G.C.A. §§ 24509-11, 24513, 24906-07, 24909-10; *In re Camacho*, 2003 Guam 16, ¶ 41 (Guam's real property tax law "provides mechanisms to protect taxpayers from being taxed on an inaccurate assessment"). This includes the right to file suit in local court. 11 G.C.A. § 24907.1.

The AG's reliance on *Bluebeard's Castle, Inc. v. Gov't of Virgin Islands*, 321 F.3d 394

---

these faulty statutory interpretation arguments in *A.B. Won Pat Guam Inter'l Airport Auth'y v. Moylan*, 2005 Guam 5, ¶¶ 21-52, 2005 WL 291577, *5-14.

(3d Cir. 2003), and *Berne Corp. v. Gov't of Virgin Islands*, 262 F. Supp. 2d 540 (D.V.I. 2003), is misplaced. Those cases involved the Virgin Islands, which has a specific statutory scheme governing property taxes that is then implemented through local laws. As the Third Circuit has explained: "[T]he [Virgin Islands Property] tax system is not a state tax system, nor is it entirely a territorial tax system. It is partially a federal tax system, and it is not apparent that the federal government should adopt a hands-off approach to the federal aspects of a hybrid federal/territorial system." *Id.* at 400; *see also id.* at 398 ("Congress enacted a statute governing property taxes in the Virgin Islands. 48 U.S.C. §§ 1401-1401e.").

In comparison, there is no express federal statutory scheme governing Guam's property tax system in Guam's Organic Act. The only statement regarding the property tax system is a general grant of the power to uniformly level such taxes. 48 U.S.C. § 1423a (rightful subjects of legislation include "[t]axes and assessments on property . . . as may be uniformly provided by the Legislature of Guam . . . ."). This supports the application of traditional notions of comity to bar federal injunctive or declaratory relief claims as to Guam's property tax system absent a showing of an inadequate remedy under that system, consistent with Congress' choice to leave Guam the right to determine for itself its property tax system.

### III. COLLATERAL ESTOPPEL APPLIES

#### A. There Is a Binding Judgment

The Attorney General states that the Guam Supreme Court's decision in the bond case was an "advisory opinion." (Opp. at 1). It was not. It was a decision under 7 GCA § 4104, which grants the Guam Supreme Court original jurisdiction to grant binding declaratory judgments. *In re Request of Gutierrez Relative to the Organicity and Constitutionality of Public Law 26-35*, 2002 Guam 1 ¶ 6 ("Declaratory judgments issued by this court pursuant to section 4104 are binding."). Indeed, as discussed in the Governor's opening brief, and as was unrefuted in the AG's opposition, the AG appealed the judgment, and the Ninth Circuit originally exercised appellate jurisdiction over the judgment (until a change in law divested it of jurisdiction over appeals from the Guam Supreme Court). (Damian Decl., filed 3/2/2006, Ex. B, C).

### B. The Judgment Is Final for Collateral Estoppel Purposes

The Attorney General admits that "[i]n determining the preclusive effect of a state court judgment in a Federal court, Federal courts look to state law." (Opp. at 20). However, he then cites dicta from a footnote in a case that was subsequently overruled on other grounds (without reaching this issue) to the affect that Guam court decisions are not final until the appeals process is completed. *Ada v. Govt. of Guam*, 179 F.3d 672, 676 n.3 (9th Cir. 1999), *rev'd sub nom Gutierrez v. Ada*, 528 U.S. 250 (2000).

The dicta—which expressly states the court was addressing an issue not actually raised by the parties, *see* 179 F.3d at 676 n.3—cannot change the fact that the Guam Supreme Court has held that Guam law followed the Ninth Circuit's federal test for issue preclusion. *See People v. San Nicolas*, 1999 Guam 19, ¶ 13. Under that federal law, decisions are final once judgment is entered by the trial court. *Robi v. Five Platters, Inc.*, 838 F.2d 318, 327 (9th Cir. 1988).

### C. The Exception for "Pure" Questions of Law Cannot Apply

The AG argues that collateral estoppel cannot apply because of the exception to that doctrine for "unmixed questions of law." (Opp. at 20-21). This exception is frequently mentioned in case law; but rarely actually applies. It is inapposite here.

In *Montana v. United States*, 440 U.S. 147, 162 (1979), the Supreme Court followed its prior case law recognizing that "Where, for example, a court in deciding a case has enunciated a rule of law, the parties in a subsequent action *upon a different demand* are not estopped from insisting that the law is otherwise, merely because the parties are the same in both cases. But a *fact, question or right* distinctly adjudged in the original action cannot be disputed in a subsequent action, even though the determination was reached upon an erroneous view or by an erroneous application of the law." *Id.* at 162 (quoting *United States v. Moser*, 266 U.S. 236 (1924)). The Court then went on to hold in *Montana*, as in most cases, that this exception could not apply because the issue in the case was mixed and preclusion could therefore apply. *Id.* at 163 ("To be sure, the scope of the *Moser* exception may be difficult to delineate, particularly where there is partial congruence in the subject matter of successive disputes. But the instant case poses no such conceptual difficulties. Rather, as the preceding discussion indicates, the legal

'demands' of this litigation are closely aligned in time and subject matter to those in *Kiewit I*.").

Here, as in *Moser*, the "legal 'demands' of this litigation are closely aligned in time and subject matter" to those of the bond litigation. In the Bond litigation, the AG sought to prevent the bond from issuing because (allegedly) the current tax appraisal system was not uniform, did not have adequate procedural safeguards, or violated equal protection, all based on the failure to conduct an island-wide appraisal. *See In Re Camacho*, 2003 Guam 16, ¶¶ 40-42. Then, slightly over two years later, the AG has brought suit trying to stop the defendants from collecting property taxes because (allegedly) the current tax appraisal system was not uniform, did not have adequate procedural safeguards, or violated equal protection, all based on the failure to conduct an island-wide appraisal. This case is like *Montana* – the scope of the *Moser* exception for unmixed questions of law may be hard to delineate, but it cannot apply to a case with such an immediate temporal and subject matter overlap. *See Montana*, 440 U.S. at 163.

## IV. THE AG FAILS TO ARTICULATE WHY THE CURRENT PROPERTY TAX SCHEME IS NOT UNIFORM

The Governor's motion to dismiss laid out the governing Guam statutes regarding real property assessments and how these have been applied uniformly. The AG never disputes these law, or their universal application. Instead he cites various cases on what uniformity means elsewhere. (Opp. at 25-27). However, these cases do not support this suit.

For example, in *Vees v. Carbon County Bd.*, 867 A.2d 742, 747 (Pa. Com. 2005), the court explained that the primary concern with uniformity is that individual taxpayers or select segments of the taxpaying public should not be being target for a reassessment by the authority charged with administering the tax system, except as provided by law or to correct errors. *Id*. The court summarized the law as follows: "These cases [finding a lack of uniformity] all deal with activity initiated by an entity enjoying the power of assessment. Collectively, the cases provide that assessors and the board cannot reassess less than an entire county except as correction of errors or as otherwise specifically provided by statute." *Id*.

Uniformity, however, does not mean that some assessment cannot be more recent than others, as long as the tax enforcement agency is not singling out one particular person or group.

*See id.* at 747-50. Thus, in *Vees*, the court held that a taxpayer could lawfully be assessed a new, higher amount based the sales price of their property, even though there had been no new county-wide assessment, because the new assessment was based on an administrative challenge initiated not by the tax assessment authority, but rather by a school board. *Id.* at 749-50.

This result in this case should be no different. All Guam properties have received one universal assessment under the 1993 appraisals. The AG's Complaint does not dispute (nor could it dispute) that any changes that are occurring in Guam property assessments since then are solely "as correction of errors or as otherwise specifically provided by statute." *Vees*, 867 A.2d at 747. Thus, because all taxpayers have an equal rights under the applicable statutes, no taxpayer or group of taxpayers is being singled out, and no violation of "uniformity" is occurring.[2]

The AG's other cases are similarly inapposite. As in *Vees*, the issue in those cases was that the taxing authority singled out certain areas for assessment, instead of applying one uniform statutory set of procedures to the entire area. *E.g. Larson v. State*, 534 P.2d 854, 855, 858 (Mont. 1975) (state's use of an assessment for one country that did not occur at the same time other counties were assessed, where state constitution had been amended to require statewide assessment, was invalid); *Sparks v. McCluskey*, 327 P.2d 295, 297 (Ariz. 1958) (assessments invalid where conducted on only a few streets, and not others). Those facts are not this case.

## V. THE AG ADMITS HIS DUE PROCESS CLAIM IS ENTIRELY DEPENDENT ON SHOWING A VIOLATION OF EQUAL PROTECTION

In opposing dismissal of his due process claim, the AG offers no argument rebutting the reasons stated in the Governor's motion as to why no violation of *due process* is occurring as a matter of law. Instead, the AG states that his due process claim is solely based on equal protection (which is a component of the Fifth Amendment). (Opp. at 28-29).[3] This tactic is unavailing because, as shown below, he cannot demonstrate any equal protection violation.

---

[2] The AG also cites *Downingtown Area Sch. Dist. v. Chester County Bd.*, 819 A.2d 615, 620 (Pa. Com. Ct. 2003). That case also found an assessment uniform, and applied the same laws as *Vees*.

[3] The Fifth Amendment applies on Guam, 48 U.S.C. § 1421b(u), and it includes an equal protection component. *Buckley v. Valeo*, 424 U.S. 1, 93 (1976).

## VI. THE AG DID NOT PLEAD A VIABLE EQUAL PROTECTION CLAIM

In defending his Equal Protection claim, the AG does not address the controlling Supreme Court authority cited in the Governor's opening papers. As the Governor stated, in *San Antonio School District v. Rodriguez*, 411 U.S. 1 (1972), the Supreme Court held that where a tax is challenged on equal protection grounds, "the presumption of constitutionality can be overcome *only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. . . .*'" *Id.* at 40-41 (quoting *Madden v. Kentucky*, 309 U.S. 83, 87-88 (1940)) (emphasis added).

Instead of attempting to show how his Complaint met this burden, the AG proclaims that Equal Protection has been violated because the current tax appraisal system allegedly is not "uniform." (*See* Opp. at 29.) In other words, having told the Court that his Due Process claim is the same as his Equal Protection claim, now the AG is telling the Court that his Equal Protection claim is the same as his uniformity claim under 48 U.S.C. § 1423a. Or, put even more simply—the AG only has one claim in this action: That the present tax appraisal system is not uniform.

With the case narrowed to that one issue, the AG is just wrong as a matter of law (even putting aside his failure to meet *San Antonio School District*). The AG argues that the system is unequal because land values allegedly have dropped. (Opp. at 30-31). However, he fails to allege that there is not a uniform system to handle any adjustments for changed values; to the contrary, any person with a new appraisal (whether as the result of a sale or otherwise) or other valid facts showing the need for a new assessment (*e.g.*, destruction of property) is subject to a uniform system for obtaining a new assessment and challenging before the Board of Equalization any failure to grant such an assessment. 11 G.C.A. § 24509. No discrimination is occurring.

The AG's reliance on *Berne Corp. v. Gov't of Virgin Islands*, 262 F. Supp. 2d 540 (D.V.I. 2003), is misplaced. That case involved the provisions of the Organic Act of the Virgin Islands. *See id.* However, the language of Guam's Organic Act regarding valuations is distinct from the Virgin Islands. Indeed, in the bond litigation, the Guam Supreme Court expressly recognized that Guam's Organic Act uses different language and creates different requirements as to property valuations. *In re Request of Governor Camacho*, 2003 Guam 16, ¶ 19, 2003 WL 21697180, *6.

In any case, the AG does not actually explain how the *Berne* decision applies here. That case involved the enforcement of a prior court decision invalidating a system where commercial and residential land owners were assessed differently, and commercial property owners could be assessed for the replacement value of their property instead of actual assessed value. *Berne*, 262 F. Supp. at 546-50. There is nothing remotely similar about that case (where the system was not uniform) and this case (where the system is).

## VII. THE INJUNCTIVE CLAIMS FAIL WITH THE OTHER CLAIMS

The AG does not contest that his fourth claim, which is for injunctive relief, stands or falls with his first three. Since those claims must be dismissed as a matter of law, so too this claim must fail.

## VIII. IN THE ALTERNATIVE, THE CASE SHOULD BE STAYED

As the AG admits, the Ninth Circuit has now dismissed his appeal in the Bond Litigation. The AG's suggestion that this case be allowed to proceed until certiorari is finally denied (Opp at 34) would simply put the Court, defendants, and the people of Guam to unnecessary expense when the overwhelmingly likely result is that certiorari will be denied. If this case is not dismissed outright, it should be stayed in the interest of judicial economy.

## CONCLUSION

For the foregoing reasons, the Governor asks this action be dismissed with prejudice.

DATED this 21st day of April, 2006.

OFFICE OF THE GOVERNOR OF GUAM
CALVO & CLARK, LLP
Attorneys for Defendant
*Felix P. Camacho, Governor of Guam*

By: _____
MICHAEL A. PANGELINAN