# ATTACHMENT A



RECEIVED
MAR 10 2006
CALVO & CLARK LLP
By: ___

# FILED

DISTRICT COURT OF GUAM

MAR 10 2006

MARY L.M. MORAN
CLERK OF COURT

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| JULIE BABAUTA SANTOS, *et al.*, | Civil Case No. 04-00006 |
| Plaintiffs, | |
| vs. | **ORDER RE: OBJECTIONS TO MAGISTRATE ORDER OF SEPTEMBER 19, 2005** |
| FELIX A. CAMACHO, *et al.*, | |
| Defendants. | |

Presently before the court is the Governor of Guam's Objections to Magistrate Order of September 19, 2005 Regarding the Governor's Motion to Disqualify the Attorney General.[1] Because both the Governor and Attorney General purport to act on behalf of Guam, yet have taken inconsistent positions in this action, this court instructed the parties to submit additional briefing. Specifically, the court requested the parties to address the issue of whether the Governor of Guam or Guam's Attorney General represents the "Government of Guam" and which of the two, the Governor or the Attorney General, has final settlement authority in this case.[2]

The determination of these issues is important for the orderly and efficient resolution of this litigation, a goal that the court assumes the Governor and the Attorney General both share.

---

[1] *See* Docket No. 247.

[2] A Joinder to the Governor's Objections was filed by defendants Art Ilagan and Lourdes M. Perez. *See* Docket No. 249.



1   However, the court is convinced that the parties will reach no resolution unless the court
2   determines which party represents the Government of Guam in this matter. After reviewing the
3   record and filings, the court sustains the Governor's Objections.

**BACKGROUND**

5       Currently there are three separate class actions filed in the District Court of Guam
6   concerning Guam's Earned Income Tax Credit ("EIC"). The present case is the first of the
7   three actions. It was filed on February 12, 2004. Thereafter, on August 9, 2004, Ms.
8   Charmaine R. Torres filed a second putative EIC class action, *Torres v. Government of Guam,*
9   *et. al.,* Guam Dist. Ct. Civil Case No. CV04-00038. The third class action, *Simpao v.*
10   *Government of Guam,* Guam Dist. Ct. Civil Case No. CV04-00049 was filed in December
11   2004.

12       In the early stages of *Santos,* the Attorney General represented the Governor and the
13   Directors of the Department of Revenue & Taxation and Administration ("Directors"). In June
14   2004, while the Governor was off-island, the Attorney General and the Acting Governor
15   negotiated a settlement of this case for $60 million. When the Governor returned to Guam, the
16   Governor and the Attorney General held discussions regarding the legality of the proposed
17   settlement. *See* October 3, 2005 Declaration of Rodney J. Jacob ("Jacob Decl."), in Support of
18   Objections to Magistrate Order of September 19, 2005, Exh. 2, attached thereto. In response to
19   those discussions, the Governor instructed the Attorney General to take no action in furtherance
20   of the settlement until the issues concerning the legality of the settlement could be resolved.
21   Jacob Decl. Exh. 3, attached thereto.

22       Thereafter, the Attorney General filed another pleading regarding implementation of the
23   settlement. Jacob Decl. Exh. 5, attached thereto. The Attorney General disclosed that the
24   Governor disagreed with various aspects of the Agreement, and had purportedly instructed the
25   Attorney General not to file pleadings on his behalf without his permission. The Attorney
26   General claimed that his client was the people of Guam, not the Governor. The Governor and
27   Directors then filed appearances through new counsel and stated their objections to the
28   settlement. The Attorney General next moved to strike the appearances of new counsel.

-2-

1  Meanwhile, the Attorney General subpoenaed his former clients, the Governor and Directors.

2  Jacob Decl. Exh. 6. On February 9, 2005, the court denied the Attorney General's motion to

3  strike and upheld the right of the Governor and Directors to retain independent counsel.

4      On March 2, 2005, the court denied a motion to reconsider its February 9, 2005 Order.

5  *See* March 2, 2005 Order. On August 12, 2005, Chief Judge Marshall of the Central District of

6  California, sitting by designation in Guam, denied the Attorney General's challenge to the

7  February 9, 2005 Order and March 2, 2005 Order. *See* August 12, 2005 Order.

8      On February 16, 2005, the Governor moved to disqualify the Attorney General from this

9  action. While that motion was pending, the Governor and Directors reached a binding term

10  sheet to settle this action. However, the Attorney General refused to sign it. Jacob Decl., Exh.

11  10, attached thereto.

12      Meanwhile, in *Simpao*, the court granted the plaintiffs summary judgment on the issue

13  of whether EIC applies to Guam. In ruling on this issue, the court considered the Attorney

14  General's concession that the EIC does apply to Guam. The court was at the time unaware that

15  the concession was contrary to the Governor's position and that there was a pending settlement

16  proposed by the Governor in *Santos*. Likewise in *Simpao*, the Attorney General conceded the

17  issue of class certification. On September 12, 2005, the court granted the Governor

18  intervention in *Simpao* to protect his interests in the case. Jacob Decl., Exh. 13, attached

19  thereto.

20      On September 19, 2005, the magistrate judge denied the Governor's Motion to

21  Disqualify the Attorney General from this action. The Governor then filed objections to that

22  order which are presently before this court.

23                              DISCUSSION

24      Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may "hear and determine any

25  pretrial matter pending before the court, except a motion for injunctive relief, for judgment on

26  the pleadings, for summary judgment, to dismiss or quash an indictment or information made

27  by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance

28  of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to

-3-

involuntarily dismiss an action." "Findings and Recommendations" are issued under 28 U.S.C. § 636(b)(1)(B) concerning matters specifically excepted under § 636(b)(1)(A). In this instance, the magistrate judge ruled on the issue of whether the Attorney General should be disqualified. The court finds that this issue was of a pretrial nature and not a dispositive matter needing a judicial referral and a Report and Recommendation. *See* 28 U.S.C. § 636(b)(1)(B).

Under Title 28 U.S.C. § 636(b)(1)(A) a district judge may reconsider a magistrate judge's order on a nondispositive pretrial motion if the order was "clearly erroneous or contrary to law"; it is not subject to *de novo* determination as are proposed findings and recommendations under 28 U.S.C. § 636(b)(1)(B). Similarly, Federal Rules of Civil Procedure 72(a) provides "[t]he district judge . . . shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law . . . ." Under this standard of review, the magistrate judge's order should be affirmed unless the district court is left with the "definite and firm conviction that a mistake has been committed." *Burdick v. Comm'r,* 979 F.2d 1369, 1370 (9th Cir.1992). The reviewing court may not simply substitute its judgment for that of the deciding court. *Grimes v. City & County of San Francisco,* 951 F.2d 236, 241 (9th Cir.1991).

In this matter, the Governor sought the disqualification of the Attorney General from continued representation of the Government of Guam. The Governor claimed their positions were in conflict. In addition the Governor alleged the Attorney General had initially represented the Governor and the Directors and was privy to their confidential information, and therefore had a conflict of interest. The magistrate judge found that the Attorney General's "paramount duty [was] to represent the public interest." *See* Order p. 5. Accordingly, the magistrate judge held that the court could not disqualify the Attorney General because the rules of professional conduct could not be "mechanically" applied and because he had to give meaning to the designation of the Attorney General as "chief legal officer" of the government of Guam.

The Governor claims that the magistrate judge's ruling was clearly erroneous and contrary to law because he relied upon two incorrect legal conclusions. The first conclusion

-4-

1   was that the Attorney General's ability to represent the "public" or state interest was

2   coextensive with his ability to represent the Governor's interest and position on issues of Guam

3   taxes. The second conclusion was even if the Attorney General had some applicable "public

4   interest" power in this case, that would not cure the conflict of interest prohibiting his

5   appearance in this case.

6           As to the first conclusion, the Governor argues that the Attorney General cannot equally

7   represent the "public" or state interest as perceived by the Attorney General and the Governor's

8   position on tax issues where there is a conflict between the two. The Organic Act of Guam

9   states in relevant part:

10          **(c) Enforcement of tax**

11          The administration and enforcement of the Guam Territorial income tax shall be
            performed by or under the supervision of the Governor. Any function needful to
12          the administration and enforcement of the income-tax laws in force in Guam . . .
            shall be performed by any officer or employee of the government of Guam duly
13          authorized by the Governor (either directly, or indirectly by one or more
            redelegations of authority) to perform such function.

14   48 U.S.C. § 1421i(c).

15          In addition,

16          **The Governor or his delegate shall have the same administrative and
            enforcement powers and remedies with regard to the Guam Territorial
17          income tax as the Secretary of the Treasury, and other United States
            officials of the executive branch,** have with respect to the United States income
18          tax. Needful rules and regulations not inconsistent with the regulations
            prescribed under section 7654(e) of the Internal Revenue Code of 1986 [26
19          U.S.C.A. § 7654(e) ] for enforcement of the Guam Territorial income tax shall
            be prescribed by the Governor. The Governor or his delegate shall have
20          authority to issue, from time to time, in whole or in part, the text of the income-
            tax laws in force in Guam pursuant to subsection (a) of this section.
21

22   48 U.S.C. § 1421i(d)(2) (emphasis added).

23          In light of sections 1421i(c) and 1421i(d)(2), the Governor argues that he has primacy as

24   to tax matters and that his enforcement powers over the Guam Territorial income tax are clear.

25   The Governor contends that the Attorney General lacks independent "authority to override the

26   Governor's decisions which relate to the Guam Territorial Income Tax ("GTIT") laws." *See*

27   Objections, quoting August 12, 2005 Order, pp. 4-5 (quoting February 9, 2004 Order at p. 6).

28          In contrast, the Attorney General claims that he alone, as the "Chief Legal Officer," is

-5-

constitutionally empowered to *represent* the Government of Guam to the exclusion of the Governor and all other Guam officials, in these cases as well as in all cases to which the Government of Guam is a party. "The Organic Act serves the function of a constitution for Guam." *Hauser v. Department of Law,* 97 F.3d 1152, 1156 (9th Cir. 1996). In 1998, Congress amended the Organic Act to specifically provide for the office of the Attorney General.[3]

In addition, Guam's Legislation provides "[n]otwithstanding any other provision of law, the Attorney General shall have cognizance of all legal matters, excluding the Legislative and Judicial Branches of the government of Guam, involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations, . . . ." 5 Guam Code Ann. § 30102. Therefore, the Attorney General claims that his positions prevail when a conflict arises between his office and the Governor. Title 5 of the Guam Code Ann. Section 30109(c) provides that the Attorney General shall "by himself, a deputy or assistant . . . [c]onduct on behalf of the government of Guam all civil actions in which the government is an interested party; provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General." Basically, the Attorney General argues that since the enactment of the 1998 Amendment of the Organic Act, once a tax suit is filed, authority transfers to the Attorney General.

The court notes, however, that there were no guarantees that before 1998 Guam would have an Attorney General.[4] And, after 1998, there were no guarantees that the Attorney General would necessarily be an elected position. For example, Congress gave Guam the option to either elect an Attorney General or to have the Governor appoint one.[5] The court concludes that

---

[3] The "Guam Organic Act Amendments of 1998", H.R. 2370, 105th Cong. (1998), created the position of the Attorney General of Guam.

[4] The Guam Territorial income tax statutes regarding refund suits were created in 1958.

[5] The Organic Act was amended to specifically provide for the office of the Attorney General. 48 U.S.C. § 1421g(d)(1). The provision in part, states as follows:

d) Attorney General

-6-

any power or authority to enforce the Guam Territorial Income Tax vests with the Governor. To hold otherwise, the court would have to conclude that Congress repealed or amended 48 U.S.C. § 1421i(d)(2) by implication when it amended the Organic Act in 1998 to provide that "the Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam." 48 U.S.C. § 1421(g)(d)(1). The court is unwilling, absent clear evidence of congressional intent, to repeal section 1421i(d)(2). *Branch v. Smith*, 538 U.S. 254, 273 (2003); *see Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017-1018 (1984) ("repeals by implication are disfavored" and "where two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective"); *see also United States v. Welden*, 377 U.S. 95, 102 n.12 (1964) ("amendments by implication,

---

    (1) The Attorney General of Guam shall be the *Chief Legal Officer* of the Government of Guam. At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam. (Emphasis Added).

    (2) Instead of an appointed Attorney General, the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam in general elections after 1998 in which the Governor of Guam is elected. The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 1422d of this title or may be removed for cause in accordance with procedures established by the legislature in law. A vacancy in the office of an elected Attorney General shall be filled—

        (A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or

        (B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.

-7-

like repeals by implication, are also not favored").

The court does not find a basis to find that Congress intended to repeal or amend section 1421i(d)(2) by implication. In fact, when the Organic Act was amended to provide for the election of the Attorney General, Congress never amended Section 1421i(e) to substitute the Attorney General in place of the Governor or anyone else.

In addition, the court notes that while Congress designated the Attorney General as the "Chief Legal Office of the Government of Guam," it did not describe the Attorney General's duties and powers or the restrictions on the Office's powers. In contrast, the Governor is described as the "executive officer . . . [having] general control and supervision of all the departments, bureaus, agencies and other instrumentalities of the executive branch of the Government of Guam . . . responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam." 48 U.S.C. § 1422.

The court concludes the Governor is the executive officer of the territory, and has power over the Attorney General. The Attorney General is the attorney representing his client, the Government of Guam. Accordingly, the Attorney General should not replace the Governor in setting policy whenever he disagrees with the Governor's positions. *Cf. Chun v. Board of Trustees of Employees' Retirement System of State of Hawaii*, 952 P.2d 1215, 1234 (Haw. 1998) ("[W]e do not accept the Attorney General's contention that, merely because she regards her duty to represent the 'state's' legal interests as being paramount to her duty to represent her statutory client's legal interests, she may, in her sole discretion, so control the course of litigation as to advance her view of the 'public welfare' when it squarely conflicts with the substantive position taken by the policymaking state governmental instrumentality whom she represents as a named party to the litigation").

This court and the magistrate judge have already recognized the Governor's statutory and exclusive responsibility for administering and enforcing the Guam Territorial income tax law. *See* February 9, 2005 and March 2, 2005 Orders. Likewise the Attorney General's position as the "Chief Legal Officer" has been recognized. *Id.* Apparently in recognition of the Governor's authority and that of the Attorney General, the various judges tasked with looking at

-8-

1 this case have allowed both to be heard on the matters.

2       It is unlikely this case will reach an efficient resolution if both the Governor and

3 Attorney General are permitted to purportedly represent the Government of Guam. The court

4 agrees with the Governor that in this instance the Attorney General is tasked as representing the

5 "Government" as a distinct legal entity and interest. He is not representing the people of Guam

6 or a generalized "public" interest. The interest is the Government's defense of a suit

7 concerning the Guam Territorial Income Tax, which under 48 U.S.C. § 1421i(d)(2) can only be

8 defined by the Governor. *See Graddick v. Newman*, 453 U.S. 928 (1981) (refusing to grant the

9 Alabama attorney general's request for a stay of a federal district court order, where the

10 governor maintained a different position than that of the attorney general and state statutes

11 vested responsibility for state prison system in the governor).

12       In summary the court finds the Governor is the executive officer of the territory and has

13 authority over the Attorney General. Accordingly, the court sustains the Governor's objection

14 on this point and holds that the Governor is the proper representative of Guam in this

15 proceeding.

16       In addition, the Governor states that the magistrate judge erred in failing to find that

17 there was a conflict of interest necessitating the disqualification of the Attorney General under

18 the rules of professional conduct. On February 11, 2005, the Guam Supreme Court adopted and

19 made part of the Guam Rules of Professional Conduct the 2002 amendments to the ABA's

20 Model Rules of Professional Conduct. *See* Promulgation Order No. 04-002.[6] Among the new

21 provisions is Rule 1.11 entitled "Special Conflicts of Interest for Former and Current

22

---

23     [6]Section 1424-1(a) states: "[t]he Supreme Court of Guam shall be the highest court of

24 the judicial branch of Guam (excluding the District Court of Guam) and shall . . . (7) govern
attorney and judicial ethics and the practice of law in Guam, including admission to practice

25 law and the conduct and discipline of persons admitted to practice law." 48 U.S.C. § 1424-
1(a)(7). In addition, the District Court of Guam's local rules states that "[e]very attorney

26 admitted to practice before this Court shall familiarize himself or herself with and comply with

27 the standards of professional conduct required of members of the Bar of Guam and contained in
the American Bar Association Model Rules of Professional Conduct as adopted on August 2,

28 1983, and as thereafter amended or judicially construed."

-9-

Government Officers and Employees." Amended Rule 1.11(d)(1) provides as follows:

"[e]xcept as law may otherwise expressly permit, a lawyer currently serving as a public officer or employee: (1) is subject to Rules 1.7 and 1.9; . . . "

The Governor claims that the magistrate judge erred in not applying Rules 1.7 and 1.9. Rules 1.7 and 1.9 provide in part:

**Rule 1.7: Conflict of Interest: Current Clients**

(a) [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

      (1)      the representation of one client will be directly adverse to another client; or

      (2)      there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer.

**Rule 1.9: Duties to Former Clients**

(a) [A] lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

      (1)      the representation of one client will be directly adverse to another client; or

      (2)      there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer

Both Rules protect the trust and loyalty that forms the foundation of the attorney-client relationship. Since the Governor retained separate counsel, the Attorney General has subpoenaed his former clients, conducted a cross-examination with regard to his former representation, and taken actions in the *Simpao* matter inconsistent with the Governor's intent to settle this case.

The Attorney General claims that removing him from this case would establish unworkable precedent. For example, if each successor administration, or every administration that changed its mind in the middle of litigation, is permitted to renege on the deals it or its predecessor makes, and at the same time disqualify the "Chief Legal Counsel for the Government of Guam" there would never be a coherent legal policy for the Government.

-10-

1  However, the same could be said for a change in the Attorney General. For example, if each
2  successor Attorney General changed his or her mind in the middle of litigation, likewise there
3  could be a disruption in establishing a coherent legal policy for the Government.

4      The court is troubled that the Attorney General initially represented the Governor and
5  the Directors, establishing an attorney-client relationship, only to later take an adverse position
6  to them in the very same case. While the court agrees with the Attorney General that the rules
7  of professional responsibility should not be applied "mechanically" when considering matters
8  of conflict where the Attorney General is involved, that is not to suggest that they should not be
9  applied at all. *See Deukmejian v. Brown*, 624 P.2d 1206, 1209 (Cal.1981)("nothing in that
10  circumstance, however, . . . justifies relaxation of the prevailing rules governing an attorney's
11  right to assume a position adverse to his clients or former clients, particularly in litigation that
12  arose during the period of the attorney-client relationship"). Moreover, there is no Guam
13  statute that exempts the Attorney General's Office from compliance with the Guam Rules of
14  Professional Conduct.

15      The Attorney General should have faithfully represented the Governor in this matter
16  and if that was impossible he should have stepped aside. *See Deukmejian v. Brown*, 624 P.2d
17  1206, 1209 (Cal. 1981) ("In short, the Attorney General cannot be compelled to represent state
18  officers or agencies if he believes them to be acting contrary to law, and he may withdraw from
19  his statutorily imposed duty to act as their counsel, but he may not take a position adverse to
20  those same clients"). As shown, the Attorney General chose not to represent the Governor's
21  interest in this matter and separate counsel was retained. It is that counsel that should now
22  undertake the representation of the Government of Guam in this matter. Accordingly, the court
23  finds the magistrate judge erred in not finding a conflict in this matter that required the
24  dismissal of the Attorney General.

25      The court finds that, at least in this context, the Government of Guam's representative
26  should be the Governor. Moreover, the court concludes, as a matter of law, that the Governor
27  has authority over the enforcement of tax matters, and thus, may dictate the litigation strategy in
28  this matter. The court believes that this case represents the exception rather than the rule and

-11-

1  that ordinarily, the Attorney General and Governor will share a unified position.[7]

2  <center>CONCLUSION</center>

3  Although the court finds the Governor has the final authority to both be the

4  representative of the Government of Guam and to settle the issues involved as discussed herein,

5  nothing shall be construed to prevent the Attorney General from litigating his right to appear as

6  a representative of the Government of Guam in other matters.[8] For purposes of the instant

7  litigation, the Governor shall be the representative of the Government of Guam and shall be

8  represented by independent counsel in the instant litigation. The court SUSTAINS the

9  Governor's Objections as discussed herein. The magistrate judge is ordered to hereafter

10  address the outstanding motions in this matter as he deems proper.

11  So ORDERED this 9th day of March, 2006.

14  JAMES L. ROBART for[*]
   RICARDO S. MARTINEZ[**]
15  United States District Judge

---

20  [7]Having ruled on this matter, the court finds that even if an appellate court were to rule that the Governor through his counsel may not represent the Government of Guam in this
21  matter, this court would likely permit the Governor to appear as an *amicus curiae*. Similarly, the court would likely permit the Attorney General to appear as an *amicus curiae*.

23  [8]The court is mindful that until this matter is finally determined, the issue will be re-visited to potentially bog down the progress of this as well as other cases. Accordingly, the
24  court notes the possibility of a motion to certify the issue as to the representation of the
25  "Government of Guam" to the Ninth Circuit for interlocutory appeal.

26  [*]The Honorable James L. Robart, United States District Judge for the Western District of Washington, by designation

27  [**]The Honorable Ricardo S. Martinez, United States District Judge for the Western District of
28  Washington, by designation.

<center>-12-</center>

# ATTACHMENT B

FILED
SUPERIOR COURT
OF GUAM

2006 MAR -8 PM 4:40

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| FELIX P. CAMACHO, as Governor of Guam | SPECIAL PROCEEDINGS CASE NO. SP0037-06 |
| Petitioner, | |
| vs. | DECISION AND ORDER |
| DOUGLAS B. MOYLAN, as Attorney General of Guam, | |
| Respondent, | |

### INTRODUCTION

On March 1, 2006, the Petitioner, Governor Felix P. Camacho ("Governor"), moved this Court to issue an alternative and peremptory writ of *mandamus* requiring the Respondent, Attorney General Douglas B. Moylan ("AG"), to approve the Governor's contract for the retention of conflicts counsel. The AG filed his opposition to that petition on the same day, and filed a motion to dismiss that petition on March 2, 2006, as well as a minor technical amendment to that petition on March 3, 2006. The Governor replied to the opposition and filed his opposition to the motion to dismiss on March 3, 2006. A hearing was also held on March 3, 2006, before the HONORABLE STEVEN S. UNPINGCO, where Attorney Daniel Benjamin represented Petitioner, and Attorney Paul McIlrath represented Respondent. Having considered the parties' briefs, declarations, oral arguments, and the applicable law, the Court now issues this decision and order.

### BACKGROUND

The Governor is the executive officer of the Government of Guam, vested with the executive power of Guam pursuant to Guam's Organic Act, 48 U.S.C. §1422. The AG is the designated Chief Legal Officer of the Government of

Guam, also pursuant to Guam's Organic Act. This petition seeks to compel the AG to execute the Governor's amended contract for the provision of conflicts counsel where the AG has refused to execute the amended contract.

On June 10, 2003, the Governor issued "Request for Proposals 2003-001" seeking "Legal Services (Conflicts Counsel)." See Petitioner's Exhibit 7. The request sought general conflicts counsel. On June 20, 2003, Calvo & Clark, LLP, was awarded the procurement. On July 9, 2003, a contract was agreed upon between the Governor and Calvo & Clark, LLP, which defined the scope of services to be provided as

> "Attorney agrees to accept appointment as conflicts counsel to the Office of the Governor providing best efforts to the performance of duties and responsibilities as outlined below in accordance with the laws, rules, regulations, and policies of the Government...Attorney shall report and be responsible directly to the Governor and the in-house legal counsel at the Office of the Governor, or other individuals as may be designated by such individuals from time to time." *Petitioner's Exhibit 9*, at §2.

On July 14, 2003, the Governor executed the contract, the availability of funds was certified, and a procurement officer approved the contract. On July 25, 2003, the Bureau of Budget and Management Research approved the contract. On July 28, 2003, the contract was submitted to the AG. The AG objected to the broad nature of the representation as outlined in the scope of services of the contract, but on April 5, 2004, after some wrangling over each party's executive prerogatives, and substantial amendment, the AG executed a contract identifying two cases in which Calvo & Clark, LLP would represent the Governor. On February 4, 2005, the Governor submitted another addendum to the conflicts counsel contract listing six additional cases. The Attorney General, after some delay, assented to that addendum. At the end of December 2005, the Governor's office and Calvo & Clark completed an Addendum to their contract adding additional conflicts counsel litigation and also adjusting the billing rates. *Petitioner's Exhibit 46*. The Governor's office submitted this addendum to the AG's office in early January 2006 for approval

as to form and legality, and subsequently submitted an additional addendum to the AG on February 21, 2006, including further conflicts cases. The AG has declined to assent to these addenda.

Although substantial correspondence has been exchanged, with other still-ongoing litigation touching upon the matter as conflicts have arisen, the parties have been unable to agree as to the major issues of whether the Governor may utilize conflicts counsel at his discretion, whether the Governor may determine or the AG may determine when conflicts arise, and most importantly to the case at hand, whether the AG has a duty to ratify contractual arrangements with the Governor's chosen conflict counsel.

On February 21, 2006, Petitioner issued a letter to the Speaker of the Guam Legislature advising the Speaker that he intended to depart Guam on February 23, 2006, and would return on March 5, 2006. In that letter, Petitioner states that the Lieutenant Governor would be serving as Acting Governor during his absence. On March 1, 2006, the Governor, through Calvo & Clark, LLP, brought this petition before the Court.

## DISCUSSION

The Guam Supreme Court most recently addressed the writ in A.B. Won Pat Guam International Airport Authority ex rel. Board of Directors v. Moylan, 2005 Guam 5; 2005 WL 291577 (Sup. Ct. Guam 2005) ("GIAA"), holding that:

> "'Mandamus relief is an extraordinary remedy employed in extreme situations.'" Guam Publ'ns, Inc. v. Superior Court, 1996 Guam 6, ¶ 10. A writ of mandate may be used to compel the performance of a legal duty. Title 7 GCA § 31202 (1994); People v. Superior Court of Guam (Laxamana), 2001 Guam 26, ¶ 12; see also Envtl. Prot. Info. Ctr., Inc. v. Maxxam Corp., 6 Cal.Rptr.2d 665, 670 (Dist.Ct.App.1992) ("The [writ of mandate] lies to compel the performance of a legal duty imposed on a government official."). A writ may be issued where a beneficially interested party establishes that he has no plain, speedy and adequate remedy available at law. Title 7 GCA § 31203 (1994); Laxamana, 2001 Guam 26 at ¶ 12." GIAA at ¶ 10.

Case 1:05-cv-00038     Document 32-2     Filed 04/21/2006     Page 17 of 28

Generally, in reviewing a petition for *mandamus* relief, the petitioner must show there is (1) [a] clear, present, and usually ministerial duty on the part of the respondent; and (2) [a] clear, present and beneficial right in the petitioner to the performance of that duty." Bank of Guam v. Reidy, 2001 Guam 14, 13; 2001 WL 686949 (Sup. Ct. Guam 2001).

"A ministerial act is defined as an act that law directs the official to perform upon a given set of facts, independent of what the officer may think of the propriety or impropriety of doing the act in a particular case." Jones v. Carnahan, 965 S.W.2d 209 (Mo.App. 1998). *Mandamus* cannot be used to control or correct errors in the exercise of discretion, except when such exercise is abused. Faulkner v. C.B.T.A., 40 Cal. 2d 317 (1953).

The burden of showing the inadequacies of other remedies rests upon the petitioner. Citizens Utility Co. v. Superior Ct., 59 Cal. 2d 805 (1963). The petitioner must plead and prove that he has no other remedy or, if another remedy is available, why it is not adequate in this particular situation. Id.

The Guam Organic Act, 48 U.S.C. 1422, *Governor; Lieutenant Governor: Powers, duties*, states in pertinent part that:

> "The Governor shall have general supervision and control of all the departments, bureaus, agencies, and other instrumentalities of the executive branch of the government of Guam...He shall appoint, and may remove, all officers and employees of the executive branch of the government of Guam, except as otherwise provided in this or any other Act of Congress, or under the laws of Guam...He shall be responsible for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam."

The Guam Organic Act, 42 U.S.C. § 1422(b), *Temporary disability or temporary absence of Governor*, states in pertinent part that "In case of the temporary disability or temporary absence of the Governor, the Lieutenant Governor shall have the powers of the Governor."

The Guam Organic Act, 48 U.S.C. 1421(g), **Establishment and maintenance of public bodies and offices**, states in pertinent part that "The Attorney General of Guam shall be the Chief Legal Officer of the Government of Guam."

5 G.C.A. §5121, **Authority to Contract for Certain Services and Approval of Contracts**, provides in pertinent part that:

> "For the purpose of procuring the services of...lawyers...any governmental body of Guam may act as a purchasing agency and contract on its own behalf for such services, subject to this Chapter and regulations promulgated by the Policy Office, but this Subsection shall not authorize the procuring of such services where any given governmental body is otherwise prohibited from procuring such services...No contract for the services of legal counsel in the Executive Branch shall be executed without the approval of the Attorney General."

5 G.C.A. § 5150, **Duties of the Attorney General**, provides in pertinent part that:

> "The Attorney General shall, in addition, when he approves contracts, determine not only the correctness of their form, but their legality. In making such a determination of legality, he may require any or all agencies involved in the contract to supply him with evidence that the required procedures precedent to executing the contract were carried out. He may prescribe the forms and format required to be followed by the agencies in aiding him in his determination of legality."

Finally, 7 G.C.A. § 31203, **When and Upon What Writ to Issue**, states that "The writ [of mandamus] must be issued in all cases where there is not a plain, speedy, and adequate remedy in the ordinary course of law. It must be issued on the verified petition of the party beneficially interested."

### ANALYSIS

> I. *Has The Governor Shown That The AG Failed To Perform A Clear, Present, And Ministerial Duty?*

Most recently, the Guam Supreme Court addressed the issue of whether or not the AG had a duty to review contracts for form and legality concerning the Guam Airport Authority in the <u>GIAA</u> case. There, GIAA sought a writ of

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 19 of 28

mandate requiring the AG to execute its contract for the retention of legal services. Id. at ¶ 1, 7. After the Superior Court issued a writ compelling the execution of the contract, the Attorney General appealed and the Guam Supreme Court upheld the issuance of the writ. Id. at ¶ 1, 2. The Supreme Court recognized that Guam's procurement laws require that "all legal services contracts for the executive branch be approved by the Attorney General." Id. at ¶ 17 (citing 5 G.C.A. § 5121(b)). However, the Court went on to state that "Title 5 GCA § 5150 states that the Attorney General's role with respect to the approval of procurement contracts is to determine correctness as to form and legality." Id. The Court proceeded to hold that a writ could issue:

> "It is clear that the Attorney General has the authority to review contracts with respect to their legality and form pursuant to Title 5 GCA § 5150. However, when determining whether to approve or disapprove contracts, the Attorney General may only consider the legality and form of the proposed contract. See Citizens Energy Coalition of Indiana v. Sendak, 594 F.2d 1158, 1162 (7th Cir. 1979); see also State ex rel. Fahlgren Martin, Inc. v. McGraw, 438 S.E.2d 338, 344-345 (W. Va. 1993) (holding that reviewing a contract for "'form' does not include matters extrinsic to the actual contract"). Thus, the Attorney General has the legal duty to approve a contract which is lawful as to form and content. See Sendak, 594 F.2d at 1162 (holding that the Attorney General has no discretion to reject a contract that is lawful and correct in form)." Id. at ¶ 65 (emphasis added).

The Governor here seeks to compel the Attorney General to execute an amended contract for legal services, a contract the Governor alleges is lawful as to form and content. Accordingly, for purposes of satisfying this Court that an alternative writ should issue, the contract falls within the domain of GIAA, as the Governor has met his burden to demonstrate the Attorney General placing his signature on the contract here falls under a non-discretionary duty to act, a duty subject to this Court's writ power. For purposes of the issuance of the alternative writ, the Petitioner has met

his requisite burden to show that the AG failed to perform a clear, present, and ministerial duty.

### II. Does The Governor Have A Clear, Present And Beneficial Right To The Execution Of That Duty?

The Organic Act clearly establishes the right of the Governor to contract for legal services. Section 1422 of the Organic Act expressly grants the Governor with 1) the executive power of Guam; 2) general supervision and control of all departments, bureaus, agencies, and other instrumentalities of the executive branch of Guam; and 3) responsibility for the faithful execution of the laws of Guam and the laws of the United States applicable in Guam. The Organic Act's requirement that the Governor maintain ultimate control over executive functions was reaffirmed by Supreme Court in In re Request of Camacho, 2004 Guam 10 (Sup. Ct. Guam 2004):

> "[T]he Governor's power...means that the Governor is vested with the overall power to manage, direct, or oversee such [executive] entities." Id. at 38. Accordingly, the ultimate control of any litigation involving the Governor or any executive agency must remain with the Governor, including therefore the right to retain counsel to represent those agencies."

Indeed, it has been held that the legal representation of the government "is clearly an executive function." Government of Guam v. U.S., Civil Case No. 82-0001, Memorandum Order (D. Ct. Guam Aug. 3, 1982) at 6. Moreover, the federal courts have established that the Governor has an inherent right to utilize conflicts counsel with or without the Attorney General's consent. See Santos v. Camacho, Civil Case No. 04-00006, Order (D. Ct. Guam Feb. 9, 2005); Aguon-Schulte v. Guam Election Commission, Civil Case No. 04-00045, Order (D. Ct. Guam May 10, 2005); Simpao v. Government of Guam, Civil Case No. 04-00049, Order Re: Motion To Intervene ((D. Ct. Guam Sept. 14, 2005). The Federal District Court of Guam has recognized that the Governor has a fundamental right to appear through his conflicts counsel

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 21 of 28

where the Attorney General has a conflict of interest based upon the Attorney General's contrary view of public policy. In the absence of precedent squarely on point from the Guam Supreme Court, this Court finds federal interpretation of Guam law persuasive.

This Court therefore finds that the Governor has a clear, present, and beneficial right to contract for conflicts counsel in order to carry into execution his duties to perform executive functions, exercise general supervision and control over all departments, agencies and instrumentalities, and to faithfully execute all laws of Guam.

### III. Does The Governor Have Another Plain, Speedy, And Adequate Remedy?

The Attorney General argues that issuance of a writ is improper because there is an available alternative remedy at law pursuant to 5 G.C.A. §5480(a). That statute states:

> The Superior Court of Guam shall have jurisdiction over an action between the Territory and a bidder, offeror, or contractor, either actual or prospective, to determine whether a solicitation or award of a contract is in accordance with the statutes, regulations, and the terms and conditions of the solicitation. The Superior Court shall have such jurisdiction in actions at law or in equity, and whether the actions are for monetary damages or for declaratory, or other equitable relief. (*Emphasis* added).

This action does not fall within the ambit of the statute. This is not an action by a "bidder, offeror, or contractor" against the Territory. This is an action brought by the Governor against the Attorney General. This is not an action "to determine whether a solicitation or award of a contract is in accordance with the statutes, regulations, and the terms and conditions of the solicitation." This is an action brought to compel the Attorney General to compel him to execute a procurement contract amendment. Indeed, the solicitation and award process in this case are not in dispute and were already completed in 2003, when Calvo & Clark, LLP was awarded the Governor's

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 22 of 28

solicitation of procurement for conflicts counsel. Accordingly, 5 G.C.A. §5480(a) does not apply and does not provide an alternative remedy at law.

Even assuming *arguendo* that there may exist some legal remedy available at law, query whether such remedy is adequate and readily available. The Governor is named as a party in the suits recounted in the contract addendum in question and he must prosecute and defend the public's best interest in carrying out his duty as the Chief Executive. The Rules of Civil Procedure, Rules of Court for the Superior Court, Rules of Appellate Courts and other applicable rules all have time constraints and deadlines for law and motion practice. These rules must be applied evenhandedly and the Governor does not enjoy special privileges as a party litigant. Like every litigant, he must file and respond in accordance with the time specified by these rules.

It is therefore practical and logical to conclude that the Governor has no plain, speedy and adequate remedy in seeking legal representation of his choice in due course of performing the executive functions under the mandates of the Organic Act and other laws of Guam and the United States.

## IV. Was Governor Camacho's Verification Sufficient Under 7 G.C.A. §31203?

The writ of mandate must be issued "on the verified petition of the party beneficially interested." 7 G.C.A. §31203. The AG raises the interesting argument that as the suit was filed at a time that Petitioner was off island, since the Governor was absent, and not the Acting Governor at the time this suit was filed, he did not have the power to verify any beneficial interest in the performance of the AG's duty. Therefore, as the Governor's verification is not that of one who holds a beneficial interest, the verification is insufficient. The AG argues that to hold otherwise would create confusion as to which acting Governor holds the reins of power, and render the plain language of 42 U.S.C. § 1422(b)(a) meaningless.

Case 1:05-cv-00038   Document 32-2   Filed 04/21/2006   Page 23 of 28

The AG's contention is raised as a result of some ambiguity regarding the issue of what may constitute a gubernatorial "temporary absence" as contemplated by the Organic Act. Generally, state statutes regarding a vacancy created by the absence of the Governor use the phrase "absence from the state." That is not the case in Guam's Organic Act, which states that a "temporary absence" of the Governor empowers the Lieutenant Governor to act as Governor instead.

Under the plain language of the statute, "In case of the temporary disability or temporary absence of the Governor," the Governor's powers also vest in the person of the Lieutenant Governor. However, the Governor raises the point, and the AG concedes, that the Governor could not carry out certain official functions off island such as concluding trade arrangements and Congressional agreements were this provision to be strictly and literally interpreted. Further, strictly construing the statute as the AG would suggest, should this Court also require the Governor's actual physical presence in the Governor's office in order to litigate and defend cases properly in the name of that office?

As the Guam Supreme Court has noted in In Re Camacho, "Under the Organic Act, the position of the civilian Governor mirrored its predecessor under the United States Navy and was given broad powers." The purpose of the plain language of 42 U.S.C. §1422(b)(a), as originally intended for the past century's military governors and the current elected, civilian governor, was certainly to guarantee a constant authority. But it was not to usurp the powers of the Governor through an absurd construction of the word "absent." It was to ensure a stable transition in the event that the Governor was actually unable to fulfill his duties.

Supreme Courts faced with statutory ambiguity over such vacancy acts have construed the word "absent" two different ways. The majority of these

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 24 of 28

states choose to evaluate whether the Governor actually left the state. However, these states utilizing a "physical presence" test have statutes that notably include the words "absent from the state," and even some of those states with such clear language have still chosen a loose construction of the term to mean that the Governor loses his powers only upon the actual inability to exercise the powers of his office. See In Re An Act Concerning Alcoholic Beverages,130 N.J.L. 123, 5 Abbotts 123, 31 A.2d 837 (N.J. 1943), State ex rel. Warmoth v. Graham, 26 La. Ann. 568 (La. 1874).

Further, Guam statutory language seems unique, in that it does not merely omit the words "out of state" from the position in which they are normally included, but does include the word "absent." This Court is thus inclined to rule with an eye towards a less strict construction of the Organic Act, in favor of a reasonable, practical, and more logical reading of the Organic Act's gubernatorial temporary vacancy provision.

> "Where a constitution does not expressly provide for devolution of the governor's powers and duties on an inferior officer in case of the governor's absence from the state, but does provide for such devolution during the governor's inability to discharge his official duties, the question whether his absence will constitute such inability will be considered in the light of the circumstances surrounding the absence." 38 Am. Jur. 2d Governor § 13.

In the state of Florida, for example, the Florida Supreme Court ruled that, with the advent of technology allowing the Governor to keep in contact with his office, absent intervention that prevented him from doing his job, the state's lieutenant governor would not assume the office, even where the Governor was in Russia for 30 days at the height of the Cold War. In re Advisory Opinion to the Governor, 112 So. 2d 843 (Fla. 1959). 40-odd years later, technology has advanced even more substantially, so that the Governor may remain in nearly constant contact with his office even while doing his work off-island. The Governor may have been actually absent from his physical office and physically absent from the island of Guam, and may have

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 25 of 28

devolved authority in order to avoid conflict in the event that contact was
disrupted.  But as many states with even more restrictive devolution clauses
have held, the Governor only loses his power of office as "absent" where he
is actually unable to fulfill the duties of his office.  This Court is
similarly inclined.

An additional argument for this construction of the Organic Act is that
the reasonable construction of the law should be one that maintains the three
branches as separate in all cases in which they were not expressly blended.
As no less an authority than the Father of Constitution himself has written,
"...the Constitution should be expounded to blend them no more than it
affirmatively requires."  Madison, 1 Annals of Congress, 497.  To construe
the laws as the AG requests would subject the Courts to a plethora of future
cases determining what precisely constitutes a physical presence and what
constitutes an absence.  Instead, it is incumbent upon the executive branch
in the person of the Governor to determine for himself what reasonably
constitutes inability to perform his duties, or in the event of his failure
to do so, the judiciary should defer to the wisdom and prerogatives of the
legislature and people of Guam to remove him from office.  Such an
interpretation also ensures the matter will not place the Governor's office
under the constant scrutiny of the Judiciary, as befits a democratic
republic.  It is not for this Court to decide who is lawfully vested with the
authority of exercising executive functions each and every time the Governor
leaves Guam.  That matter is best decided by the executive branch itself,
because the Organic Act commits this issue to the executive branch.  The
reality is that the Organic Act is silent on the issue here, as nowhere in
the Act or any law does it divest the Governor of his authority as Governor
upon his physical departure from Guam.  Although it is abhorrent to the legal
instincts of this Court to give its opinion on a matter that ought to be

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 26 of 28

decided by the other branches of Government, it is the duty of this Court to determine whether Felix P. Camacho is a party that would be beneficially interested in this writ action. The Governor of Guam is a beneficially interested party who is entitled to the right to obtain counsel in civil cases especially if he is a named defendant, a right protected under the Fourteenth Amendment. Powell v. Alabama, 287 U.S. 45, 53 S.Ct. 55, U.S. 1932. ("If in any case, civil of criminal, a state or federal court were arbitrarily to refuse to hear a party by counsel, employed by and appearing for him, it reasonably may not be doubted that such a refusal would be a denial of a hearing, and, therefore, of due process in the constitutional sense.").

Based on the foregoing analysis, limited to the purpose of this proceeding only, the Governor retains his power while off island and therefore could file and verify the petition.

## CONCLUSION

For the reasons stated herein, the Court finds good cause for the issuance of the alternative writ of mandamus and that all jurisdictional requirements for such issuance have been met. Therefore, the Petition for an Alternative Writ of Mandamus is hereby **GRANTED** and the Court rules as follows:

**IT IS ORDERED** that an Alternative Writ of Mandate issue under seal of this Court directed to Douglas B. Moylan, Attorney General of Guam, Respondent in this action, commanding him immediately upon receipt of the Alternative Writ to execute Petitioner's general conflicts counsel amendment for the retention of conflicts counsel (which is Exhibit 56 to the Declaration of Shannon J. Taitano filed in this action on March 1, 2006).

1  **IN THE ALTERNATIVE**, to show cause before this Court on the 22nd day of

2  MARCH , 2006, at 2:30 p.m. in the Superior Court of Guam,

3  Hagåtña, Guam, why he has not done so.

4  **IT IS FURTHER ORDERED** that a copy of the Alternative Writ and a copy of

5  the Petition and this Order be served on Respondent, pursuant to 7 G.C.A.

6  §31205, at least ten (10) days before the hearing on this above order to show

7  cause.

8  **IT IS FURTHER ORDERED** that Respondent be commanded to file and serve

9  upon Petitioner, should Respondent fail to comply with the mandates of the

10  Writ, his written response to this Writ, and all documents, memoranda and

11  exhibits in opposition to the Petition, if any, on or before

12  MARCH   15 , 2006.

13      SO ORDERED this ___8th___ day of March, 2006.

14

15

HONORABLE STEVEN S.  UNPINGCO
Judge, Superior Court of Guam

16

17

18

19

I do hereby certify that the foregoing
is a full true and correct copy of the
original on file in the office of the
clerk of the Superior Court of Guam

20

21

MAR 0 8 2006

22

23

Linda M. Pereira
Deputy Clerk, Superior Court of Guam

24

25

26

27

28

Case 1:05-cv-00038    Document 32-2    Filed 04/21/2006    Page 28 of 28