

**Office of the Attorney General**
**Douglas B. Moylan**
Attorney General of Guam
287 West O'Brien Drive
Hagåtña, Guam 96910 • USA
(671) 475-3324 • (671) 477-3390 (Fax)
www.guamattorneygeneral.com
guamattorneygeneral@hotmail.com

Attorneys for the Government (People) of Guam



# IN THE UNITED STATES DISTRICT COURT OF GUAM
## HAGÅTÑA, GUAM

| | |
|---|---|
| GOVERNMENT OF GUAM, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> FELIX P. CAMACHO, as the Governor of ) <br> Guam, and ARTEMIO B. ILAGAN, as the ) <br> Director of the Department of Revenue ) <br> and Taxation, ) <br> ) <br> Defendants. ) | Civil Case Number CV05-00038 <br><br><br><br> **THE PEOPLE'S** <br> **SUPPLEMENTAL BRIEF** |

On May 1, 2006 the Court ordered a brief regarding whether an individual taxpayer may pursue the injunctive and declaratory relief which is sought above.

## Protection of the Public's Interest.

The Attorney General is the People's legal representative to pursue causes which are in the public interest. *Feeney v. Commonwealth*, 373 Mass. 359, 366 N.E.2d 1262 (1977). National Association of Attorneys General, STATE ATTORNEYS GENERAL: POWERS AND RESPONSIBILITIES, Ross at 38-39. This is a common law <u>duty</u> of the Attorney General, which is incorporated into Guam law. 5 G.C.A. § 30103 and §§ 30109(c) and (g). In this case local Government officials have failed to perform a comprehensive Island-wide appraisal required under the law in order to value property before taking

money through government real property taxation. These officials are using the Government's formidable enforcement powers to foreclose upon private lands if the taxpayer refuses to pay the assessed real property tax.

If the Courts do not permit the Attorney General, the People's elected attorney, to perform the duty he was elected and legislatively budgeted to do, *that is* to sue for the enforcement of the law, then those same Government officials who are being sued herein could settle individual lawsuits thereby mooting their claims before judicial action. For example, a taxpayer sues because of inflated tax assessment due to a comprehensive Island-wide appraisal not being performed, then the Defendants moot his claim by settling it[1]. Without the Government of Guam as a party, the issue is capable of repetition but likely to evade judicial review. The Defendants herein could easily have that litigant taxpayer's claim settled or a single appraisal conducted to moot their claim, to the detriment of all the thousands of other persons adversely affected by not having conducted the comprehensive appraisal. The net effect of such actions would be to prevent the primary goal of enforcing the law for everyone's benefit that an island wide appraisal would be conducted. Indisputably, a single taxpayer lacks standing to sue for the claims of all other taxpayers adversely impacted.

In a similar case the Attorney General sued in 2003 in order to compel the Governor to follow the law and to appoint a procurement appeals board. In that case the Court held that the Attorney General had standing to sue, albeit not addressing the issue of whether individual taxpayers could sue. **Exhibit A.** This case is similar to the extent that the Attorney General has been charged by Congress, and elected by the People of Guam, under 48 U.S.C. § 1421(g)(d)(1) and 5 G.C.A. § 30101 to enforce the

laws on their behalf, especially laws which affect most of the citizenry, as does real property taxation in this case.

Individual taxpayers would not be able to seek redress on behalf of all other persons adversely affected by Defendants' actions. First, an individual taxpayer lacks standing to sue for all people in our Community. Second, not all taxpayers are able to afford an attorney to sue on their behalf, and should not have to when a Government official fails to follow a law, as is especially evident herein. The Attorney General is the chief legal officer and enforcer of the law, and functions as the People's watchdog. This role is akin to bringing criminal prosecutions on behalf of the People, as opposed to individual victims suing under the criminal code for redress. This is evident in the enabling legislation for the Attorney General in his duty to challenge unconstitutional laws, 5 G.C.A. § 30103, and to institute legal actions in which the Government of Guam is an interested party, including legal action to determine the validity of any law, rule or regulation, 5 G.C.A. §§ 30109(c) and (g).

## Judicial Economy Achieved.

A *parens patriae* suit in some cases better serves the interests of judicial economy than a lawsuit initiated by thousands of individual plaintiffs. In *Commonwealth of Pennsylvania v. Porter*, 659 F.2d 306 (3d Cir. 1981), *cert. denied*, 458 U.S. 1121 (1982), the commonwealth, joined by several individual plaintiffs, sued on behalf of its residents as *parens patriae* under § 1983 for declaratory and injunctive relief to prevent local officials from committing civil rights violations. *Porter*, 659 F.2d

---

[1] Can be settled by reducing the property taxes based upon a current appraisal for that single property before the Court can rule.

at 309. The individual plaintiffs moved for class certification, which the lower court denied, holding that the commonwealth adequately represented its residents generally in the lawsuit and pledging, if necessary, to revisit the issue in the future. Id. at 311. The Third Circuit found that the commonwealth was a proper plaintiff because:

> the Commonwealth is in this suit advancing significant sovereign interests of its own in the prevention of future violations of constitutional rights of its citizens, in circumstances in which it cannot reasonably anticipate that private enforcement will achieve the protection of those sovereign interests.

Id. at 316. The Third Circuit added that a ruling supporting the defendants' position would "require a plenary suit by a new plaintiff" for each violation. Id. at 314. A state of affairs such as this, however, would not promote the efficient use of scarce judicial resources. The Government of Guam is not adverse to permitting other plaintiffs impacted by these Government official's failure to follow the law to join as plaintiffs, however, the People's attorney should not be precluded from seeking to "clean its own house" by compelling its own local Government's officials to follow the law.

Indeed, the participation of individual plaintiffs is not even necessary in a § 1983 lawsuit brought by the government as *parens patriae*. In *Oregon ex rel. Dep't of Transp. v. Heavy Vehicle Electronic License Plate, Inc.*, 157 F. Supp. 2d 1158 (D. Or. 2001), the state alone as *parens patriae* sued a corporation in a § 1983 action seeking declaratory judgment to prevent Dormant Commerce Clause violations. Id. at 1160. The district court reasoned that since state citizens could sue the nonprofit corporation under § 1983 if the nonprofit corporation was found to be acting under color of state authority, then "[i]t stands to reason that plaintiff Oregon, acting as *parens patraie* [sic], may bring the suit to vindicate the rights of its citizens." Id. at 1169 (citing *Porter*, 659 F.2d at 306) (fn omitted).

Similarly in the instant case, even if an individual taxpayer could bring a § 1983 action, permitting Plaintiff to maintain this suit as *parens patriae* better serves the public interest by promoting judicial economy. Regardless of whether individual taxpayers can sue, the Government of Guam has sought three separate and independent counts for declaratory judgment.

The Supreme Court of Guam decision in *Airport v. Moylan*, 2005 Guam 5 at ¶¶ 2 and 67, which certiorari was denied by the U.S. Supreme Court, and which the Ninth Court approved (**Exhibit B**), clearly set forth that the Attorney General has a *common law* right to intervene in cases where it is an interested party. This case impacts the entire Community, and espouses the principle that the Community, including its officials, follow the law. Most notably though, no one has sued for the past 9 years on this issue.

The Government respectfully suggests that the question should not be whether we are in this case so as to compel its officials to follow the law, but whether additional parties should be permitted to appear, such as individual taxpayers. The danger remains that *if* the Government of Guam fails to compel action herein, then the appraisal required by law to have been done about 9 years ago will continue *not* to be performed to the taxpaying Community's detriment.

Respectfully submitted this 12th day of May, 2006.

OFFICE OF THE ATTORNEY GENERAL
Attorneys for Plaintiff Government (People) of Guam

*/s/ Douglas B. Moylan*

DOUGLAS B. MOYLAN
Attorney General of Guam, Elected

# Exhibit

# A

CLERK OF COURT

BY_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| DOUGLAS B. MOYLAN, as Attorney General of Guam, | SPECIAL PROCEEDING CASE NO. SP230-03 |
| Petitioner, | |
| v. | |
| FELIX P. CAMACHO, as Governor of Guam, | *DISISIÓN YAN OTDEN*[1] |
| Respondent. | |

The Court heard this matter on November 4, 2003, pursuant to a briefing and hearing schedule to address the issues raised by the Supreme Court of Guam Order dated October 10, 2003 in Supreme Court Case No. WRP03-005. J. Basil O'Mallan, III, Esq., Deputy Attorney General, Civil Division, represented the Petitioner, *Douglas B. Moylan*, the Attorney General of Guam. Douglas B. Moylan, Esq., also appeared in his own behalf. Shannon Taitano, Esq., of the Office of the Governor, and Michael A. Pangelinan, Esq., and Daniel Benjamin, Esq., of Calvo and Clark, LLP, represented the Respondent, *Felix P. Camacho*, the Governor of Guam. The Court listened to the arguments and inquired into several issues raised by the parties. At the conclusion of the

---

[1] Decision and Order

hearing, the Court advised the parties that it reserved decision on the matter. After carefully considering the arguments of the parties, their legal memoranda, and after giving this matter much deliberation, the Court now issues this decision and order.

## *I MANMALLOFAN*[2]

On September 29, 2003, the Attorney General of Guam filed an ex parte petition for an alternative writ of mandate against Felix P. Camacho, the Governor (*I Maga'lahi*) of Guam to appoint members and alternate members for the purpose of empaneling a Procurement Appeals Board. An Order directing the issuance of the Alternative Writ of Mandate to empanel a Procurement Appeals Board was signed by the Honorable, Elizabeth Barrett Anderson. The Alternative Writ ordered *I Maga'lahi* to immediately appoint and transmit to the Guam Legislature members and alternates to fully comprise the Procurement Appeals Board. In the alternative, *I Maga'lahi* was ordered to answer and show cause on October 13, 2003 why he has not complied with the alternative writ.

On October 9, 2003, *I Maga'lahi* filed a Writ of Prohibition and/or Writ of Mandamus in the Supreme Court of Guam - WRP03-005. Therein, *I Maga'lahi* sought a writ "directing the Superior Court of Guam to cease and desist and refrain from presiding over and hearing any matters and taking further action" in the within case. At noon on October 10, 2003, *I Maga'lahi* filed an ex parte motion to stay this action pending resolution of the Writ of Prohibition filed in the Supreme Court. The ex parte motion was set for hearing at 4:00 p.m. Prior to the hearing, the Supreme Court issued its Order. It provided in part:

> In issuing the Alternative Writ of Mandamus, the trial court implicitly found that it

---

[2]Background

Page 2 of 45

had jurisdiction. The Governor's petition raises the argument that the trial court erred because the Attorney General had no standing to sue, therefore the trial court acted without jurisdiction. In the face of this serious question and because we find no circumstances demanding exigency, the trial court should have thoroughly considered and required briefing on standing and jurisdiction before granting the Alternative Writ of Mandamus. We hereby order as follows:

1. this court will stay ruling on the Governor's petition for Writ of Prohibition and/or Writ of Mandamus for a period of thirty days.
2. the Superior Court shall address the issue of whether the Attorney General has standing to sue the Governor and whether the action was properly within the trial court's jurisdiction; and
3. the Alternative Writ of Mandamus issued by the Superior Court on September 29, 2003 is stayed pending the resolution of the jurisdictional issues.

The order was signed by F. Philip Carbullido, Chief Justice; Frances M. Tydingco-Gatewood, Associate Justice; and John A. Manglona[3], Justice Pro Tempore.

In accordance with the Supreme Court order, the parties agreed upon a scheduling order. The parties were ordered to file opening briefs on October 24 and respective replies on October 30. The parties have filed their opening as well as reply briefs.

## *DINISKUTA*[4]

On November 5, 2002, Respondent, Felix P. Camacho, was elected by the People of Guam as the seventh[5] Governor of Guam, succeeding to an office his father, Carlos G. Camacho, [Guam's last appointed and first elected Governor] had occupied before him. At the same time that Respondent was being elected Governor of Guam, the People of Guam were electing Petitioner, Douglas B. Moylan, as Guam's first elected Attorney General. Respondent Camacho was

---

[3]Manglona is an Associate Justice of the Supreme Court of the Commonwealth of the Northern Mariana Islands.

[4]Discussion

[5]Ricardo J. Bordallo was the second and fourth Governor of Guam.

inaugurated *I Maga'lahi* on January 6, 2003 and is and has been *I Maga'lahi* since then. Petitioner Moylan was inaugurated Attorney General likewise on January 6, 2003 and he is and has been the Attorney General since then.

Prior to the election of Petitioner, the Attorneys General before him were all appointed by *I Maga'lahi* with the advice and consent of the Guam Legislature. The Attorney General has filed this action seeking the aid of the Superior Court to order *I Maga'lahi* to appoint members and alternates to the Procurement Appeals Board. The Attorney General has chosen to proceed in this matter through a mandamus procedure and more particularly by means of an alternative writ of mandate. The alternative writ was issued by the Superior Court on September 29, 2003 and directs *I Maga'lahi* to appoint the remaining members and alternates to the Procurement Appeals Board or show cause before the Court why he has not done so. The alternative writ which has been issued has been stayed by the Supreme Court, pending compliance with its order referenced above.

## I. NATURE OF PETITION FOR ALTERNATIVE WRIT OF MANDAMUS

### A. *The Mandamus Process.*

Petitions for mandamus are provided for under 7 GCA §31201 et. seq. The relevant statutes provide:

> § 31202. When and by What Court Issued.
> It may be issued by any court, [except a commissioner's court or police court,] to any inferior tribunal, corporation, board, or person to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station; or to compel the admission of a party to the use and enjoyment of a right or office to which he is entitled, and from which he is unlawfully precluded by such inferior tribunal, corporation, board, or person.
>
> § 31303. Writ: Either Alternative or Peremptory.
> The writ must be either alternative or peremptory. The alternative writ must command the party to whom it is directed to desist or refrain from further proceedings in the action or matter specified therein, until the further order of the

Case 1:05-cv-00038　Document 38　Filed 05/12/2006　Page 10 of 15

court from which it is issued, and to show cause before such court, at a specified time and place, why such party should not be absolutely restrained from further proceedings in such action or matter. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he should not be absolutely restrained, etc., must be omitted, and a return day inserted.

### § 31204. Writ: Alternative or Peremptory.
The writ may be either alternative or peremptory. The alternative writ must command the party to whom it is directed, immediately after the receipt of the writ, or at some other specified time, to do the act required to be performed or to show cause before the court at a specified time and place why he has not done so. The peremptory writ must be in a similar form, except that the words requiring the party to show cause why he has not done as commanded must be omitted and a return day inserted.

### § 31205. When Application is Made Without Notice.
When the application is made to the court without notice to the adverse party, and the writ is allowed, the alternative must be first issued; but if the application is upon due notice and the writ is allowed, the peremptory may be issued in the first instance. With the alternative writ and also with any notice of an intention to apply for the writ, there must be served on each person against whom the writ is sought a copy of the petition. The notice of the application, when given, must be at least ten (10) days. The writ cannot be granted by default. The case must be heard by the court, whether the adverse party appears or not.

### § 31206. Adverse Party may Answer Under Oath.
On the return of the alternative, or the day on which the application for the writ is noticed, the party on whom the writ or notice has been served may answer the petition under oath, in the same manner as an answer to a complaint in a civil action.

A party seeking an alternative writ of mandate relief need not provide notice to the adverse party. See 7 G.C.A. §31205, supra. Moreover, the ex parte notice requirements of Rule 9 of the Rules of the Superior Court do not apply to such an application.

The purpose of the Attorney General's petition for an alternative writ was to order *I Maga'lahi* to appoint the remaining members and alternate members of the Procurement Appeals Board.

### B. *The Procurement Appeals Board and its Appointment Process.*

The Procurement Appeals Board was created by Public Law 18-44. Its sponsors were then Senators C. T. C. Gutierrez and T. S. Nelson. It became law on November 14, 1986. The act added a new Chapter 12 to Title VII-A of the Government Code of Guam. It is now codified under 5 G.C.A. §5701, et seq. The purpose of the act was to provide a forum for procurement appeals. The relevant portions of the act are as follows:

> § 5701. Creation of the Procurement Appeals Board.
> There is established an independent entity to be known as the Procurement Appeals Board to be composed of a chairperson and at least six (6) other members. **The chair person and members of the Board shall be appointed by the Governor** and confirmed with the advice and consent of the Legislature and shall serve part-time as necessary.
>
> § 5702. Terms and Qualifications of Members of the Procurement Appeals Board.
> (a) Term. The term of office of the chairperson and each member of the Procurement Appeals Board shall be six (6) years except that in making the initial appointments, the Governor shall appoint one member for a term of four (4) years, and the chairperson for a term of six (6) years, so that a term of office shall expire every two (2) years. Thereafter, their successors shall be appointed for terms of six (6) years, or for the balance of any unexpired term, but members may continue to serve beyond their terms until their successors take office. Members may be reappointed for succeeding terms. If there is no chairperson, or if such officer is absent or unable to serve, the senior member in length of service shall be temporary chairperson.
> (b) Authority of the Chairperson. The chairperson may adopt operational procedures and issue such orders, not inconsistent with this Chapter, as may be necessary in the execution of the Board's functions. The chairperson's authority may be delegated to the Board's members and employees, but only members of the Board may issue decisions on appeals.
> ©) Support. The Civil Service Commission is authorized to provide for the Board such services as the chairperson requests, on such basis, reimbursable or otherwise, as may be agreed upon between the Civil Service Commission and the chairperson. The Board is empowered to hire legal counsel, accountants, staff and other personnel, and to provide for training of its staff and members.

Page 6 of 45

Case 1:05-cv-00038   Document 38   Filed 05/12/2006   Page 12 of 15

(d) Qualifications for Board Membership.
(1) One (1) member shall be a member in good standing of the Guam Bar Association who has been admitted to practice before the highest court of a state, territory or the District of Columbia for at least five (5) years prior to that person's appointment, one (1) member shall be a certified public accountant, one (1) member shall have demonstrated experience of at least five (5) years in procurement, one (1) businessperson and three (3) members from the community-at-large.
(2) No member shall be an employee of the government of Guam nor a member of any board or commission of the government of Guam.
(3) The appointment of any person to the Commission shall become void if at any time during his term of office he shall become an employee of the government or accept an annuity from the government.
(4) When a vacancy occurs, the Governor shall appoint a new member within sixty (60) days of the commencement of the vacancy.
(e) Removal of Members. Notwithstanding any other provision of this Chapter, the Governor or the Procurement Appeals Board by three (3) positive votes of its members may recuse a member of the Procurement Appeals Board from participation in a matter before the board due to:
(1) disability,
(2) conflict of interest with respect to service on the Board and engagement in any private business,
(3) for other good cause.
Any removal pursuant to items (2) and (3) of this Subsection shall be effective no sooner than ten (10) calendar days subsequent to the delivery of written notice of such removal by the Governor or the Board to the Legislative Secretary of the Legislature. Removal pursuant to item (1) of this Section shall be effective pursuant to the notice of the action taken.
A member of the Procurement Appeals Board may recuse himself.
For purposes of this Section, recuse means to disqualify from hearing the matter and taking any action on it.
(f) Appointment, Qualifications and Function of Alternates. At the same time as members of the Procurement Appeals Board are appointed by the Governor, **the Governor shall appoint three (3) alternate members to the Board**, all of whom shall serve for a term of six (6) years.
(1) Each alternate shall, at the time of his appointment, be designated either First Alternate, Second Alternate or Third Alternate. For the first year of his appointment each alternate shall serve in the order designated, and each year thereafter they shall rotate the order, so that during the second year, the First Alternate shall serve second, the Second Alternate third, and the Third first, and so on for each successive year until their terms expire.
(2) Each alternate shall fulfill the same requirements for membership on the Board as any of the regular board members fulfill and shall be subject to the same removal procedures as regular board members.
(3) The alternates shall fill in on matters before the Procurement Appeals Board when

a member is absent or recused pursuant to Subsection (e) of this Section and each alternate shall fill in for an absent or recused member in the order they are designated to serve, so that the alternate serving first fills in for the first absence or recusal, the alternate serving second fills in for the second absence or recusal, and so forth.

The Procurement Appeals Board has seven members, which includes a chairperson. The chairperson as well as the six remaining members are all appointed by *I Maga'lahi* with the advice and consent of the Guam Legislature. The Act also requires *I Maga'lahi* to appoint three alternates to the Board, all three likewise requiring legislative confirmation.

The Court is unclear whether this Board has ever been implemented. The Attorney General, however, advised the Court during oral arguments that this Board has never been empanelled since its creation. Thus, seventeen (17) years has passed since this Board was created and its office has still not been implemented. In his petition, the Attorney General alleges that *I Maga'lahi* has only appointed two members to the Board. Attorney David J. Highsmith was appointed by *I Maga'lahi* on June 24, 2003 and confirmed by the Guam Legislature on September 18, 2003. *I Maga'lahi* also appointed Carmen C. De Oro to the Board and she awaits confirmation by the Legislature. In addition to Highsmith, the Board has another existing member, Richard K. Lim, who was appointed by previous Governor Gutierrez on February 5, 2002 and confirmed on May 21, 2002. The Attorney General alleges that despite being in office for approximately ten months, *I Maga'lahi* has failed to appoint seven more individuals to the Board, four (4) regular members and three (3) alternates.

In the creation of the Procurement Appeals Board, the Legislature saw fit to qualify its membership. Thereunder, one (1) member must be an attorney [a member in good standing of the Guam Bar Association... who has been admitted .... to practice for at least five (5) years prior to his appointment]; one (1) member shall be a certified public accountant; one (1) member shall have

demonstrated experience of at least five (5) years in procurement, one (1) businessperson and three (3) members from the community-at-large. When initially passed, the Act required all its members [other than the attorney and certified public accountant members] to have demonstrated experience of at least five (5) years in procurement as a necessary qualification. In addition to the aforesaid qualifications, a member could not be a recipient of any annuity from the government of Guam nor a member of the immediate family of a government of Guam employee. It is apparent from the law as it now exists that subsequently enacted legislation has removed certain impediments in the nomination of members to the said Board.

In filing this action, the Attorney General seeks empaneling of a Procurement Appeals Board which prior hereto has never been empaneled since its creation in 1986.

## II. THE ATTORNEY GENERAL'S POSITION

In his opening brief, the Attorney General sets forth two basic arguments in support of his position. Petitioner first argues that an **elected Attorney General has standing to bring a mandamus action against *I Maga'lahi*.** In this regard, Petitioner points to the 1998 congressional amendments [48 U.S.C. §1421g(d)] made to the office of the Attorney General and the congressional testimony in support thereof from then Senators Elizabeth Barrett-Anderson and Vicente Pangelinan. The Attorney General uses that testimony as indicative of the legislative intent in the amendment with regard to the nature of the office in relation to the election of the Attorney General and his powers and authority. Letters from the Compiler of Laws, Charles Troutman[6], to Delegate Underwood was referenced to illustrate the purpose of the amendment and its interpretive effect [designation of the Attorney General as the Chief Legal Officer]. It is thus argued that being an

---

[6]Charles Troutman was a former Attorney General.