elected public official on the same executive level as the Governor [both created Organic Act positions] allows the Attorney General to bring this suit against *I Maga'lahi*. More important, the Attorney General's designation as Chief Legal Officer of the government of Guam further cements his ability and provides statutory as well as common law authorization to bring the present action.

The Attorney General argues further that, in addition to the Congressional change in the position of the Attorney General, local law also permits him to sue *I Maga'lahi* to compel him to perform a ministerial act required by law. Petitioner refers the Court to his authority under Sections 30102 and 30109 of 5 G. C. A. Section 30102 grants the Attorney General "cognizance of all legal matters...involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations, autonomous agencies and the Mayors Council". Section 30109 authorizes the Attorney General to "conduct on behalf of the government of Guam all civil actions in which the government is an interested party". Petitioner cites the Court to various cases in support of his proposition.

In an effort to bolster his standing to bring this action, the Attorney General asserts that he is not the governor's attorney. Moreover, the Attorney General asserts that there is no attorney-client relationship with *I Maga'lahi*. This, for the purpose of countering claims by Respondent that the Attorney General is suing his own client, *I Maga'lahi*. The Attorney General is insistent that the government of Guam is his client and not *I Maga'lahi*. In this regard, Petitioner cites the Court to *State ex. Rel. Condon v. Hodges*, 562 S. E. 2d 623 (S.C. 2002) for the proposition that the Attorney General can sue the Governor if there is the possibility that the Governor is acting improperly.

The Attorney General next argues that the Superior Court has jurisdiction to entertain a mandamus action as the present one because such action is within the jurisdiction of this court, it

being a court of general jurisdiction.

## III. THE GOVERNOR'S POSITION

In his opening brief, *I Maga'lahi* argues that the faithful execution of the laws of Guam falls solely under his responsibility in accordance with the Organic Act of Guam [48 U.S.C. §1422]. The Organic Act grants the Governor supervision and control over the executive branch, which includes the Attorney General. In executing the laws of Guam, *I Maga'lahi* asserts that he has to prioritize among his many areas of responsibility, which include the appointment of members to vacant seats on numerous boards and commissions. The action by Respondent is an attempt to wrestle the executive power from the Governor.

*I Maga'lahi* sets forth three basic arguments in support of his position. He first argues that the Attorney General lacks standing to bring the present action because the Attorney General has no power to control the execution of the laws of Guam. *I Maga'lahi* emphatically points out that the entire executive power is vested in him. The Organic Act contains no provision granting any executive power to the Attorney General. Thus, the present action is merely an attempt to usurp the Governor's authority under the Organic Act. In support of this proposition, *I Maga'lahi* cites the Court to *People ex rel. Deukmejian v. Brown*, 29 Cal. 3d 150, (1981).

*I Maga'lahi* next argues that the Attorney General's authorities as set forth in his brief do not support his position that he has standing. In this regard, he advances several propositions:

1. An Attorney general's common law powers do not permit a civil action against a Chief Executive.

2. The Attorney General's enumerated statutory powers in the Guam Code do not permit the mandamus action.

3. The Attorney General's election is irrelevant to the maintenance of the present action.

4. The Attorney General has no case authority to support for this Court's jurisdiction over an action brought by the Attorney General to compel the Governor to execute the law.

5. Restraining the Attorney General within his powers is not a "chilling" effect.

*I Maga'lahi* finally argues that the violation of ethical duties caused by this action reinforces the Attorney General's lack of standing. When the Attorney General filed this action, he brought suit against his own client. This is so because the Attorney General is the attorney for the government of Guam and has cognizance over all legal matters involving the executive branch. *I Maga'lahi* is the head of the executive branch. As head of the executive branch, *I Maga'lahi*, it is argued, is the client of the Attorney General.

Guam's Rule of Professional Conduct [1.7(a)] mandates that a lawyer shall not "be directly adverse to another client" absent a waiver. *I Maga'lahi* has never given the Attorney General a waiver. Yet, the Attorney general has filed this action against *I Maga'lahi*. The Attorney General has therefore violated rule 1.7(a) of Guam's Rule of Professional Conduct.

## IV. THE ATTORNEY GENERAL AND HIS POWERS

### A. The Historical Perspective

Congress passed the Organic Act of Guam in 1949 and in that process, it granted American citizenship for Guam's indigenous people; it provided greater self government for its inhabitants; it established a civilian government [rather than governance by the Naval Government] and it established the Organic Act as the "constitution" of Guam. Pursuant to the Organic Act, Guam elected its lawmakers and these lawmakers became members of the First Guam Legislature (1950-1952). Part of the first order of business of Guam's lawmakers was the establishment of the order

of the government's business. Part of that order required the establishment of the Department of Law, headed by the Attorney General. The lawmakers passed P.L. 1-88, which created the Office of the Attorney General and the Department of Law. It provided:

> **§7000. Attorney General.** The Department of Law of the government of Guam shall be administered by the Attorney General, who shall be appointed by the Governor of Guam, withe the advice and consent of the Legislature, and shall be subject to removal by the Governor.
>
> **§7001. Department of Law, cognizance.** The Department of Law shall have cognizance of all legal matters in which the government of Guam is in anywise interested. It shall have cognizance on all matters pertaining to public prosecution. For this purpose the Island Attorney, deputy Island Attorneys ...shall form the prosecution division of the Department of Law....
>
> **§7002. Opinions.** The Attorney General shall give, when required or requested, and without fee, his opinion in writing to public officers on matters relating to the duties of their respective offices, and verbal or written instructions to commissioners or others, acting for the courts of Guam on all matters relating to service of writs and process.
>
> **§7003. Defense of judges.** When requested by any judge of any court of Guam so to do, the Attorney General shall appear for and represent such court or judge in his official capacity is made a party defendant in his official capacity is made a party defendant in any action.
> *(Included in Original Government Code of Guam enacted by P.L.88, 1st G.L., 1952.)*

In addition to the above statutes, §7004 of the Government Code authorized the Attorney General to make rules and regulations for the conduct of the department with said rules becoming effective only upon the approval of the Governor. Thus, the office of the Attorney General commenced its existence with humble beginnings. There were only four statutes[7] which defined its role and responsibility.

---

[7] The Island Attorney, however, had five provisions dealing with its authority. See §§7100 through 7104 of the Government Code.

Page 13 of 45

P.L. 9-150 [effective February 23, 1968] amended §7001 to prohibit the Attorney General or Island Attorney from delegating to any attorney in private practice the collection of any account or other obligation owed to the government. On March 14, 1968, a new Section 7003.1 [P.L. 9-175] was added to the Government Code to allow the Attorney General to come to the defense of officers and employees of the government of Guam sued in their individual capacities for the performance of an authorized act. Such action, however, was subject to the approval of the Governor. This provision has essentially remained the same.

P.L. 10-1, effective February 3, 1969, made clear that the Attorney General [§7101] was the public prosecutor. It authorized the Attorney general to conduct on behalf of the government of Guam "the prosecution of all crimes against the laws of Guam ... and to conduct on behalf of the government of Guam all civil actions in which the government is a party interested.

On December 27, 1975, P.L. 13-117 amended the Attorney General's authority to give him common law powers. It provided:

> §7002. Same. The Attorney General shall have, in addition to the powers expressly conferred upon him by this Act, **those common law powers which include, but are not limited to**, the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of the Territory representing the citizens as a whole for the redress of grievances which the citizens individually cannot achieve, **unless expressly limited by any law of Guam to the contrary**.....

The act which gave the Attorney General common law powers also limited the right of the Governor to remove the Attorney General. The Governor could only remove the Attorney General **for cause** (Section 7000, Government Code).

Indeed, the Office of the Attorney General has seen many amendments made to its governing statute since it was created by the First Guam Legislature and amendments continue up to the

present. Of all the amendments which have since been made, the most significant may be the amendment to the Organic Act to allow the government of Guam to legislate an elective Attorney General for Guam. That amendment to Guam's Organic Act and the subsequent resulting change in local law has lead to the election of Petitioner in the November, 2002 election and has ultimately lead that Petitioner to the present controversy which is presently before the Court.

### B. Current Laws which Define the Office and Powers of the Attorney General.

The Office of the Attorney General is now included in Guam's Organic Act. Specifically, 48 U.S.C.A. §1421g(d) provides:

> **(1)** The Attorney General of Guam shall be the **Chief Legal Officer of the Government of Guam.** At such time as the Office of the Attorney General of Guam shall next become vacant, the Attorney General of Guam shall be appointed by the Governor of Guam with the advice and consent of the legislature, and shall serve at the pleasure of the Governor of Guam.
> **(2)** Instead of an appointed Attorney General, **the legislature may, by law, provide for the election of the Attorney General of Guam by the qualified voters of Guam** in general elections after 1998 in which the Governor of Guam is elected. **The term of an elected Attorney General shall be 4 years. The Attorney General may be removed by the people of Guam according to the procedures specified in section 1422d of this title or may be removed for cause in accordance with procedures established by the legislature in law.** A vacancy in the office of an elected Attorney General shall be filled--
> (A) by appointment by the Governor of Guam if such vacancy occurs less than 6 months before a general election for the Office of Attorney General of Guam; or
> (B) by a special election held no sooner than 3 months after such vacancy occurs and no later than 6 months before a general election for Attorney General of Guam, and by appointment by the Governor of Guam pending a special election under this subparagraph.

In 1998, Congress made the Attorney General position an Organic Act position. The purpose for including the position in the Organic Act was to provide a mechanism for Guam's legislature to provide for an elected Attorney General position. In setting into motion the election of the Attorney General position, Congress understood that the Attorney General position was not novel to Guam's

government but was an existing position with responsibilities and powers derived from the Guam Legislature. However, in making the Office of the Attorney General an Organic Act position, Congress only mandated that "the Attorney General of Guam shall be the **Chief Legal Officer of the Government of Guam**". Was it necessary for Congress to define or delineate the powers, duties, or authority of the Attorney General? Was Guam's law sufficient in that regard? In any event, what appears clear was that Congress intended to expressly repeal [or repeal by implication] any local law inconsistent with the Attorney General being the Chief Legal Officer of the government of Guam.

Regardless of the Organic Act amendment to the office of the Attorney General, the Guam Legislature has defined and given the Office of the Attorney General certain powers, authority and responsibilities. The basic powers of the Attorney General are contained in 5 G.C.A. §30101 et. seq. There are other statutes which refer to or grant certain powers to the Attorney General. These statutes are referenced in other parts of the Code. The powers and responsibilities of the Office of the Attorney General are illustrated in the following statutes:

> **5 GCA § 30101. Attorney General.**
> (a) The Department of Law of the government of Guam shall be administered by the Attorney General of Guam, who shall be elected by the people of Guam for a term of four (4) years.
> (b) A candidate for the position of Attorney General of Guam shall declare no political party affiliation. Candidates for Attorney General of Guam shall be subject to the same campaign and personal financial reporting requirements as apply to candidates for I Maga'lahen Guåhan [the Governor], as well as all laws pertaining to campaign contributions. No nominating petition shall be required of a candidate for Attorney General of Guam.
>
> **5 GCA § 30102. Department of Law, Cognizance.**
> (a) Notwithstanding any other provision of law, the **Attorney General shall have cognizance of all legal matters**, excluding the Legislative and Judicial Branches of the government of Guam, **involving the Executive Branch of the government of Guam, its agencies, instrumentalities, public corporations,**

autonomous agencies and the Mayors Council, all hereinafter **referred to as "agency'**. Where any other law permits any agency or autonomous public corporation to retain counsel other than the Attorney General, this shall not preclude said agency or public corporation from requesting the services of the offices of the Attorney General, provided that said agency or autonomous public corporation shall reimburse the Office of the Attorney General for such services from funds of said agency or autonomous public corporation. Said reimbursement shall be deposited in the General Fund and credited to the Office of the Attorney General. In addition, and notwithstanding any other law to the contrary, any agency or autonomous public corporation of the government of Guam may advance funds to the office of the Attorney General for services and incidental travel to be rendered by said office on behalf of said agency or autonomous public corporation.

### 5 GCA § 30103. Common Law Powers of Attorney General.
**The Attorney General shall have**, in addition to the powers expressly conferred upon him by this Chapter, **those common law powers which include, but are not limited to**, the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of the Territory representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve, unless expressly limited by any law of Guam to the contrary. The Attorney General may permit attorneys admitted to private practice in Guam or licensed collection agents to collect accounts or other obligations owing to the government of Guam, or to any agency or instrumentality thereof, if such procedure would be in the interest of the Government and expedite the collection of said account or obligation. Any agency or instrumentality not operating under yearly appropriations from the Legislature may retain counsel of its choice for the collection of obligations in the same manner as it may be permitted to retain counsel in other matters as permitted by its enabling legislation. Guam Memorial Hospital may permit the Attorney General or attorneys admitted to private practice in Guam and agents or licensed collection agents to collect accounts or other obligations owing to Guam Memorial Hospital.

### 5 GCA §30104. Attorney General as Public Prosecutor.
The Attorney General shall have cognizance of all matters pertaining to public prosecution., including the prosecution of any public officials.

### 5 GCA § 30109. Duties.
The Attorney General is the public prosecutor and, by himself, a deputy or assistant, shall:
(a) Conduct on behalf of the Government of Guam the prosecution of all offenses against the laws of Guam which are prosecuted in any of the courts of Guam, the District Court of Guam, and any appeals therefrom.
(b) Draw all informations, conduct grand jury proceedings, prosecute all recognizances forfeited in the courts and all actions for the recovery of debts, fines,

penalties and forfeitures accruing to the government of Guam, except as otherwise provided in this Act;

(c) **Conduct on behalf of the government of Guam all civil actions in which the government is an interested party**; provided that those branches, departments or agencies which are authorized to employ their own legal counsel may use them instead of the Attorney General.

(d) Deliver receipts of money or property received by him in his official capacity and file duplicates thereof with the Director of Administration;

(e) As soon as practical after the receipt of any money in his official capacity, turn the money over to the Director of Revenue and Taxation, and on the first Monday of each month file with the Director of Administration, an account, verified by his oath, of all monies received by him in his official capacity for the government of Guam during the preceding month;

(f) Be diligent in protecting the rights and properties of the government of Guam;

(g) Institute by any appropriate action proceedings on behalf of himself or any other public officer (not an employee) to have determined by the courts the validity of any law, rule or regulation of the government of Guam; and

(h) **Perform such other duties as are required by law.**

The statutes listed above enumerate some of the powers of the Attorney General existing within its basic statutory scheme. The Legislature has also enacted other laws which bear on the Attorney General's responsibilities. For instance, the Legislature has enacted Antitrust Laws and has made illegal any contract, combination, or conspiracy to restrain or monopolize trade (9 GCA §69.15). Criminal and civil penalties are established. 9 G.C.A. §69.45 authorizes the Attorney General to "bring an action for appropriate injunctive relief and civil penalties in the name of the people of Guam for a violation of this chapter." In authorizing the Attorney General to bring such action, the Legislature expressly recognized and provided that nothing in the chapter "shall limit any other statutory or common law rights of the Attorney General...".

The Guam Legislature has also enacted the Trade Practices and Consumer Protection Act. 5 G.C.A. §32101, et. seq. The Attorney General is authorized to maintain certain actions and may represent a consumer or consumers not in a class. Moreover, the Legislature has also provided that

Page 18 of 45

nothing in this chapter shall limit any other statutory or "common law rights of the Attorney General". 5 G.C.A. §32105.

The Guam Legislature has clothed the Attorney General with the responsibility of collecting child support from non-custodial parents and absent fathers. It has also directed the Department of Public Health and Social Services to refer cases to the Attorney General for enforcement of support for public assistance rendered by the said department to families with dependent children. See 5 G.C.A. Section 34106.

The Attorney General has also been designated by the Legislature to play a vital role in the implementation and filing of claims against the government of Guam pursuant to the Government Claims Act. The Attorney General, subject to the approval of the Governor, may settle claims for damages to a motor vehicle under a certain sum. The Attorney General, along with the Governor, must also approve settlements entered into by autonomous boards and agencies for certain sums of money. See 5 G.C.A. Section 6206.

The Legislature has primarily entrusted to the Attorney General the responsibility for enforcing appropriate action against individuals who neglect or refuse to obey legislative subpoena or who refuse to testify or produce documents requested in legislative subpoenas. See 2 G.C.A. Section 3113.

With regard to the federal enforcement of territorial income taxes in Guam, the Attorney General has been entrusted with its enforcement. The appropriate federal statute provides:

> **§ 1424-4. Criminal offenses; procedure; definitions**
> Where appropriate, the provisions of part II of Title 18 and of Title 28, United States Code, and notwithstanding the provision in rule 54(a) Federal Rules of Criminal Procedure relating to the prosecution of criminal offenses on Guam by information, the rules of practice and procedure heretofore or hereafter promulgated and made effective by the Congress or the Supreme Court of the United States pursuant to

Case 1:05-cv-00038   Document 38-2   Filed 05/12/2006   Page 10 of 20

Titles 11, 18, and 28, United States Code, shall apply to the District Court of Guam and appeals therefrom; except that the terms, "Attorney for the government" and "United States attorney", as used in the Federal Rules of Criminal Procedure, shall, when applicable to cases arising under the laws of Guam, including the Guam Territorial income tax, mean the Attorney General of Guam or such other person or persons as may be authorized by the laws of Guam to act therein.

It can be seen from some of the statutes (local and federal) which have made reference to the Attorney General that the Attorney General indeed is a primary figure, if not the chief figure, in the legal affairs and enforcement of the affairs of the government of Guam.

## V. STANDING PURSUANT TO THE COMMON LAW POWERS OF AN ATTORNEY GENERAL AND THE CONFLICTS IN DUTIES IN THE EXERCISE THEREOF

It undisputed that an Attorney General possesses common law powers. It is in the very essence of these common law powers [and its recognition by the Courts] that Courts have given the Attorney General the requisite standing to bring legal actions against appropriate persons, bodies, and entities. The extent and nature of those common law powers are illustrated in the following cases. The cases further illustrate that in the exercise of his common law powers, the Attorney General, many times, is faced with a conflicting duty.

In *State of Fla. Ex rel. Shevin v. Exxon Corp.*, 526 F. 2d 266, 1976, the State of Florida, through its Attorney General, brought an antitrust action against seventeen (17) major oil companies. The United States District Court for the Northern District of Florida dismissed the action as one beyond the Attorney General's authority and the Attorney General appealed. The Court of Appeals, Thornberry, Circuit Judge, held that the Attorney General's powers extended to the institution of suit under federal law without specific authorization of the individual government entities which allegedly had sustained the legal injuries asserted. The trial court's dismissal was reversed. The Court stated:

Thus we conclude that (1) the Attorney General of Florida retains common law powers, (2) that those powers extend to institution of suits under federal law without specific authorization of the individual government entities who allegedly have sustained the legal injuries asserted, and (3) that neither the decisional nor statutory law of Florida negates such authority.

Commenting on the common law powers of the Attorney General, the Alabama Supreme Court in *Ex Parte Weaver*, 570 So. 2d 675, (1990) stated:

> It is instructive to look at the history of the office of attorney general:
> "The office of attorney general had its nascence in the *attornatus regis* of the thirteenth and fourteenth century England.
>
> 1 The *attornatus regis* served as the sovereign's primary legal representative, with considerable power subject to limitation only by the King. The office was carried over to colonial America, where it eventually became the office of attorney general. All fifty states have an office of attorney general created either by constitution or statute. The specific powers and duties vested in the office vary greatly among the states. Although some states restrict the attorney general's common-law powers by express statutory or constitutional language, the large majority of states have chosen to recognize the existence of these powers.
>
> 2 "The most far-reaching of the attorney general's common-law powers is the authority to control litigation involving state and public interests. It is generally accepted that the attorney general is authorized to bring actions on the state's behalf.
>
> 3 As the state's chief legal officer, 'the attorney- general has power, both under common law and by statute, to make any disposition of the state's litigation that he deems for its best interest.... [H]e may abandon, discontinue, dismiss or compromise it.'
>
> 4 In addition to having authority to initiate and manage an action, the attorney general may elect not to pursue a claim or to compromise or settle a suit when he determines that continued litigation would be adverse to the public interest.
>
> 5 "Most courts have given the attorney general 'a broad discretion ... in determining what matters may, or may not, be of interest to the people generally.'
>
> 6 The investment of such discretion is based on the premise that the attorney general should act on behalf of the public interest, or as the 'people's attorney.' In an early North Carolina Supreme Court decision, the court refused to interfere with the attorney general's use of his discretionary power to enter a nolle prosequi on grounds that the authority had not been used 'oppressively.'
>
> 7 Other courts have left undisturbed the use of the power to control litigation as long

Page 21 of 45

as the attorney general's actions are not arbitrary, capricious, or in bad faith.

In *Com. Ex rel. Hancock v. Paxton*, 516 S.W. 2d 865, 1974, the court held that the Attorney General's constitutional, statutory and common law powers included power to initiate suit against State Department of Transportation and its commissioner to challenge constitutionality of two laws which made provisions for special automobile license plates for ham radio operators and for members of the General Assembly. The Kentucky Court of Appeals stated:

> As concerns the constitutional duties of the office, the only express one is that in the prescribed oath of office--to support the Constitution. The statutory powers and duties of the office are set forth in KRS 15.020. The most significant provisions of that statute, as concern the question here in issue, are that the Attorney General is 'the chief law officer of the commonwealth' and 'shall commence all actions or enter his appearance in all cases * * * in which the Commonwealth has an interest * * *.' **At common law, he had the power to institute, conduct and maintain suits and proceedings for the enforcement of the laws of the state, the preservation of order, and the protection of public rights.**

While the Kentucky Appeals Court upheld the power and authority of the Attorney General to file an action against the State Department of Transportation and its commissioner, it was not insensitive to the problems faced by the Attorney General when there are conflicts in duties. The Court commented:

> While KRS 15.020 imposes on the Attorney General the duty to 'attend to * * * any litigation or legal business that any state officer, department, commissioner, or agency may have in connection with, or growing out of, his or its official duties,' we believe the statute, in stating at the outset that the Attorney General is 'the chief law officer of the Commonwealth,' intends that in case of a conflict of duties the Attorney General's primary obligation is to the Commonwealth, the body politic, rather than to its officers, departments, commissions, or agencies. **We do not conceive that a suit brought by the Attorney General against a state officer, department or agency, seeking to uphold the Constitution, is a suit against the Commonwealth in the sense of a being a breach of the Attorney General's duty to represent the Commonwealth.**

Page 22 of 45

In *Hansen v. Barlow*, 456 P. 2d 177, the Utah Supreme Court held that Attorney General, **by virtue of inherent authority of his office,** had the power to commence an action to determine whether a legislative amendment, providing for payment of per diem and expenses to members of legislative council, and authorizing council to employ staff and fix their salaries, was constitutional. The Court discussed the inherent common law powers of the Attorney General and stated:

> However, this court has repeatedly held that the attorney general has common- law powers and duties. The office of Attorney General is of ancient origin. The powers and duties appertaining to it were recognized by the common law, and the common law has been a part of our system of jurisprudence from the organization of Montana territory to the present day
>
> In this state the office of Attorney General is created by our state Constitution (sec. 1, Art. VII), which also provides that the incumbent of the office 'shall perform such duties as are prescribed in this Constitution and by the laws of the State,' The Constitution enumerates certain duties, * * * and then concludes by imposing upon the Attorney General 'other duties prescribed by law.' It is the general consensus of opinion that in practically every state of this Union whose basis of jurisprudence is the common law, the office of Attorney General, as it existed in England, was adopted as a part of the governmental machinery, and that in the absence of express restrictions, the common-law duties attach themselves to the office so far as they are applicable and in harmony with our system of government * * *.
>
> ............................
>
> In discussing the powers of the attorney general the court in <u>Darling Apartment Co. v. Springer,</u> 25 Del. Ch. 420, 22 A. 2d 397, 403, 137 A.L.R. 803, 811, had this to say:
>
> 'The authorities substantially agree that, in addition to those conferred on it by statute, the office is clothed with all of the powers and duties pertaining thereto at common law; and, as the chief law officer of the State, the Attorney General, in the absence of express legislative restriction to the contrary, may exercise all such power and authority as the public interests may from time to time require. In short, the Attorney General's powers are as broad as the common law unless restricted or modified by statute.'

In *People ex rel. Hartigan v. E & E Hauling, Inc.*, 153 Ill. 2d 473, 607 N.E. 2d 165, (1991), the Supreme Court of Illinois dealt with the issue whether the Attorney General had standing to file a suit against various contractors which had participated in various state highway projects with the

Page 23 of 45

Metropolitan Fair and Exposition Authority. The Supreme Court held that the Attorney General had standing under common powers to assert on behalf of the state claims relating to Metropolitan Fair and Exposition Authority's contracts based upon common law fraud and the state's Consumer Fraud and Deceptive Business Practices Act. The Court stated:

> Before discussing the sufficiency of the complaint, we must first consider defendants' contention that the Attorney General has no standing to assert claims relating to the Authority's contracts. The standing doctrine assures that issues are presented to a court only by parties who have a sufficient stake in the outcome of the controversy. (*Harris Trust & Savings Bank v. Duggan* (1983), 95 Ill.2d 516, 527, 70 Ill.Dec. 195, 449 N.E.2d 69, citing *Sierra Club v. Morton* (1972), 405 U.S. 727, 92 S.Ct. 1361, 31 L.Ed.2d 636.) Absent the necessary allegations of interest in the controversy, a party lacks standing to sue.
>
> The Authority is a public corporation established by the Metropolitan Fair and Exposition Authority Act (Ill.Rev.Stat.1985, ch. 85, par. 1223) to promote, operate and maintain conventions and to construct, equip and maintain buildings for these conventions (Ill.Rev.Stat.1985, ch. 85, par. 1224). Under its enabling statute, the Authority has the power to enter into contracts (Ill.Rev.Stat.1987, ch. 85, par. 1225(d)) and may sue and be sued in its own name (Ill.Rev.Stat.1987, ch. 85, par. 1223). Defendants argue that because the Authority has not filed suit itself, nor has it authorized the Attorney General to do so, the Attorney General lacks standing to bring claims arising out of the Authority's contracts.
>
> The Attorney General brings this action "on behalf of the people and taxpayers of Illinois," and he asserts three bases for his standing to bring this suit. First, he argues that he has standing under the common law powers delegated to him by the Illinois Constitution. Second, he argues the legislature has provided standing under the statutory powers of his office. Third, he argues that a taxpayer would have standing to bring this suit and, therefore, he has standing as the representative of all the taxpayers of this State. Because we believe the Attorney General has standing under his common law powers, we need not address the latter two arguments.
>
> Article V, section 15, of the Illinois Constitution of 1970 provides:
> "The Attorney General shall be the legal officer of the State, and shall have the duties and powers that may be prescribed by law."
> In *Fergus v. Russel* (1915), 270 Ill. 304, 110 N.E. 130, this court held that the Attorney General has all the common law powers incident to that office. In *Fergus*, this court stated:
> "[T]he Attorney General is the chief law officer of the State, and the only officer empowered to represent the people in any suit or proceeding in which the State is the real party in interest, except where the constitution or a constitutional statute may

provide otherwise." (*Fergus*, 270 Ill. at 342, 110 N.E. 130.)

In addition to representing the State and its agencies, the Attorney General is responsible for representing the broader interests of the State. (*Environmental Protection Agency v. Pollution Control Board* (1977), 69 Ill.2d 394, 401, 14 Ill.Dec. 245, 372 N.E.2d 50.) Further, although the legislature may add to the Attorney General's common law powers, it may not detract from them. The holding of *Fergus* was incorporated into the Illinois Constitution of 1970. *People ex rel. Scott v. Briceland* (1976), 65 Ill.2d 485, 3 Ill.Dec. 739, 359 N.E.2d 149; *Stein v. Howlett* (1971), 52 Ill.2d 570, 289 N.E.2d 409.

In *Wade v. Mississippi Co-op. Extension Service*, 392 F. Supp. 229, N.D. Miss., (1975), the Court examined "whether in a case of undeniable statewide interest the Attorney General of the State of Mississippi has authority to assume defense of an action against the Board of Trustees of State Institutions of Higher Learning (the Board), an autonomous and constitutional state agency which wishes instead to retain private counsel to represent its official interests". The Board had been involved in a suit in which mammoth racial discrimination was alleged. The Board retained its own attorney during the course of the civil litigation. Several years after the case had been pending, the Attorney General advised the Court and the parties that he was now moving in to represent the interest of the Board and all affected state agencies. When the United Stated, as plaintiff-intervenor, moved to amend its complaint, the Board, through its retained counsel, filed an objection. The Attorney General moved to strike the opposition. The court stated:

> The Attorney General of Mississippi is a constitutional officer ordained by the State's original charter of 1817 and continued in every state constitution since.
>
> Although § 173, the provision of Mississippi's present constitution which establishes the office, is facially silent as to its powers and duties, specific legislative authorization for the power now claimed by the Attorney General is not wanting. Indeed, statutory designation of the Attorney General as legal counsel for the State in all civil cases stretches forward in unbroken succession since territorial times. If the present statutory language of § 7-5-1, granting the Attorney General 'the powers of the attorney general at common law and . . . the sole power to bring or defend a lawsuit on behalf of a state agency, the subject matter of which is of statewide

Page 25 of 45

interest,' were the sole guide, it would be clear that the Attorney General is empowered to defend the Board against the comprehensive complaint of racial discrimination in the operation of statewide interest,' were the sole guide, its charge. The authority of the Attorney General to act on behalf of the Board, however, is more than statutory; it is of constitutional dimension.

Though § 173 makes no delineation of the nature and scope of the Attorney General's power, the Supreme Court of Mississippi has consistently ruled that the constitutional creation of the office, even without further statutory enactment, vested in the Attorney General all powers which that officer possessed at common law and incorporated that common-law authority into the constitution itself.

The duties of the Attorney General were not prescribed by the Constitution, nor did it provide that they would necessarily have to be prescribed by the legislature. They existed at common law . . .. The creation of the office of Attorney General by the Constitution vested him with these common law duties, which he had previously exercised as chief law officer of the realm. Kennington-Saenger Theatres v. State, 196 Miss. 841, 18 So.2d 480, 486 (Miss.1944).

See also Gandy v. Reserve Life Ins. Co., 279 So.2d 648, 649 (Miss.1973); State v. Warren, 254 Miss. 293, 180 So.2d 293, 299 (1965); *233 Dunn Const. Co. v. Craig, 191 Miss. 682, 2 So.2d 166, 174-75 (1941); Capitol Stages v. State, 157 Miss. 576, 128 So. 759, 763 (1930).

The Board's final, and most serious, contention is that § 213-A of Mississippi's Constitution, inserted in 1944, created the Board as an autonomous agency entrusted with the management and control of Mississippi's senior colleges and universities, and thus invested the Board with the power to employ legal counsel in all cases to which it is a party, independently of the Attorney General. Mississippi has no judicial precedents interpreting the scope of § 213-A or the statutes passed thereunder. Hence, this case is one of first impression. Since § 213-A nowhere expressly grants to the Board authority to engage counsel for the purpose of conducting litigation of state-wide interest, the Board's assertion that § 213-A bestows such authority can only be based upon a claim that § 213-A impliedly effects a pro tanto repeal of the plenary authority conferred on the Attorney General by § 173

to represent the State in all litigation of such character. This contention is bottomed upon the proposition that the Board has inherent power as a constitutionally-created autonomous entity, particularly in view of certain language found in Miss. Code Ann. § 37-101-7 (1972):

The board shall also have the authority to employ on a fee basis such technical and professional assistance as may be necessary to carry out the powers, duties and purposes of the board.

It is easily perceptible that even if the foregoing statute purports to give the Board authority to retain private legal counsel as professional advisors, no statutory enactment can override the well-established constitutional authority of the Attorney General in this area of strong State concern.

But we do not read either §37-101-7 or § 213-A of the State's constitution as conferring such authority upon the Board. Mississippi jurisprudence places high priority on harmonizing, wherever possible, separate constitutional provisions so as to give effect to all; and repeal of a specific constitutional provision by implication is never favored. State v. Jackson, 119 Miss. 727, 81 So. 1 (1919). The Board's purpose, as prominently expressed in its constitutional charter and complementary legislation, is to manage and control the educational institutions under its charge 'to the greatest advantage of the people of the State', uninfluenced by political considerations and free of domination by the Chief Executive of the State. The statutory powers and duties of the Board, enumerated at length in Miss. Code Ann. § 37-101-15, are clearly directed toward this concept of the Board as a nonpolitical and independent agency autonomous within its sphere of operations in all fields of higher education. But the autonomy of the Board, and hence its ability to act independently of the Attorney General and other governmental officers, extends only to those highly important functions for which it was created. Just as the Board could not, independently of the legislature, levy and collect taxes for the support of state universities, so too it cannot, without a specific constitutional grant, act in those areas expressly and constitutionally entrusted to the authority of the Attorney General. Proper functioning of the Board as an educational agency is not dependent on its ability to retain private counsel in cases of this sort, which are of state-wide interest. Thus, the power so to act may not be implied from the terms of § 213-A.

We emphasize that this case does not concern the authority which the Board may legally exercise in employing counsel in the discharge of many activities, which may be of a purely local, administrative, or proprietary nature. For example, the Board may need legal assistance in purchasing real estate, collecting debts from others, preparing and reviewing employment contracts with professional staff, and other matters similarly related to the Board's ordinary functions. Whether the Board may engage counsel, independently of the Attorney General's office, to assist in matters of this kind is not presented by this case, and we express no opinion thereon.

But in actions of indisputable statewide interest, where the Attorney General is specifically empowered to act for state agencies by long-established constitutional doctrine, due regard for Mississippi's Constitution by applying the familiar rule of pari materia interpretation mandates that the Board not be allowed to usurp his constitutional prerogative. See St. Louis & San Francisco R. Co. v. Benton County, 132 Miss. 325, 96 So. 689 (Miss.1923); State v. Jackson, supra.

Moreover, in the eventuality of a conflict of interest between state agencies-- for example, between the Board and one or more junior colleges or other educational entities joined as defendants in this cause-- the Attorney General has given his personal assurance to this court to take whatever steps may be necessary to protect all interests, including compliance with such orders as this court may see fit to enter. **We hold that the Board is without power to engage counsel in this cause to represent its official interests independently, and over the objection of the State's Attorney General, and the Attorney General's motion to strike is hereby**

**sustained.**

The Attorney General's ability to maintain actions depends on the public interest nature of the litigation. The Courts have been the final arbiters of the public interest nature asserted by the Attorney General. In *Blumenthal v. Barnes*, 261 Conn. 434, 804 A. 2d 152, (2002), the Connecticut Supreme Court held that the Attorney General had no common law authority to sue the president of a non profit corporation in relation to private gifts which had been made to the corporation, although the common law authority to sue extended to charitable and public gifts made to the corporation.

In *State v. City of Oak Creek*, 232 Wis. 2d 612, 605 N. W. 2d 526, (2000), the Wisconsin Supreme Court held that the Attorney general had no standing to sue to challenge the validity of a statute. Rather, the Attorney General had a duty to defend the statute. The Court acknowledged, however, that the Attorney general may have standing if directed by the governor to challenge the statute or if there if the case results in the granting of a petition for original jurisdiction.

## VI. ATTORNEY GENERAL ACTIONS IN RELATION TO THE GOVERNOR AND IN ITS RELATIONSHIP TO THE EXECUTIVE FUNCTION.

Existing cases provide guidance as to the appropriateness of actions by an Attorney General against the Governor, in relation to the Governor's authority, his executive functions, in particular, his faithful execution of the laws. The following cases are illustrative:

In *Perdue v. Baker*, 586 S. E. 2d 606, (Sept. 4, 2003), the Georgia Supreme Court was faced with the issue whether the Attorney General had the authority under state law to appeal a court decision invalidating a state redistricting statute despite the Governor's order to dismiss the appeal. Because there was constitutional authority for the General Assembly to vest the Attorney General with specific duties and a state statute vested the Attorney General with the authority to litigate in

the voting rights action, the Supreme Court held that the Attorney General had the power to seek a final determination on the validity of the State Senate redistricting statute under the federal Voting Rights Act. The Court affirmed the trial court's ruling that the Governor had no clear legal right to order the Attorney General to dismiss the appeal filed on behalf of the State of Georgia in the United States Supreme Court. Thus, the Governor's application for a writ of mandamus was denied. In this case, both the Governor and the Attorney General argued that each had the sole right to determine the public interest. The Court stated:

> ...we reject the broader claim by each officer that he has the ultimate authority to decide what is in the best interest of the people of the State in every lawsuit involving the State of Georgia. By giving both the Governor and Attorney General the responsibility for enforcing state law, the drafters of our constitutions and the General Assembly have made it less likely that the State will fail to forcefully prosecute or defend its interests in a court of law or other legal proceeding. This overlapping responsibility is also consistent with the existing practice in state government. Most important, it provides a system of checks and balances within the executive branch so that no single official has unrestrained power to decide what laws to enforce and when to enforce them.
> We also reject the dissent's narrow characterization of the Attorney General's role as merely that of legal counsel to the Governor. To imply that the Georgia Rules of Professional Conduct control the Attorney General's relationship to the Governor ignores the important and independent role assigned to the Attorney General under our constitution. Accepting the dissent's argument would eviscerate the Attorney General's separate constitutional role.
> The State of Georgia is not one branch of government, one office, or one officer. The State's authority resides with the people who elect many officers with different responsibilities under valid law.
> 2. Our conclusion that both officers have the duty to enforce state laws is consistent with the language and legislative history of article V of the 1983 Georgia Constitution. The first paragraph on the Governor's duties and powers in the Executive Article states the following: "The chief executive powers shall be vested in the Governor. The other executive officers shall have such powers as may be prescribed by this Constitution and by law."
>
> This provision made two changes from previous constitutions. It added the word "chief" to the first sentence and added the second sentence referring to the relationship between the Governor and other executive officers.
> ...............................................