On the other hand, the executive branch generally has the power and authority to control litigation as part of its power to execute the laws, and a law that removes from the executive branch sufficient control of litigation may well violate separation of powers. **However, the executive branch does not have the authority to decline to execute a law under the guise of executing the laws: "To contend that the obligation imposed ... to see the laws faithfully executed, implies a power to forbid their execution, is a novel construction of the Constitution and entirely inadmissible."** The power to forbid the execution of the laws would enable the executive branch to nullify validly enacted statutes. In that situation, the executive branch would encroach upon the legislative power to repeal statutes or upon the judicial branch's power of judicial review. What the executive branch cannot do directly, it cannot do indirectly. Thus, even though the executive branch generally has the power and authority to control litigation, it cannot exercise this power in order to prevent the execution of a law.

In *State ex rel. Condon v. Hodges*, 349 S.C. 232, 562 S. E. 2d 623, (2002), the Supreme Court of South Carolina exercised its original jurisdiction to address the issue whether the Attorney General had the authority to bring suit against the Governor. Defendants argued that the Attorney General was violating the South Carolina Constitution and the South Carolina Code by suing the Governor in his official capacity. The Constitution provides:

> The Governor shall take care that the laws be faithfully executed. To this end, the
> *Attorney General shall assist and represent the Governor, but such power shall*
> *not be construed to authorize any action or proceeding against the General*
> *Assembly or the Supreme Court*

In *Condon v. Hodges*, the Supreme Court determined that the Attorney General had the authority to sue the Governor and in the process of doing so, he was not prohibited by Rules of Ethics from doing so. The Court stated:

> There is no provision in the South Carolina Code or Constitution that explicitly prevents the Attorney General from bringing a civil action against the Governor. Further, "[a]s the chief law officer of the State, [the Attorney General] may, in the absence of some express legislative restriction to the contrary, exercise all such *power* and *authority as public interests may from time to time require,* and may institute, conduct and maintain all such suits and *proceedings as he deems* necessary

Page 30 of 45

for *the enforcement of the laws of the State,* the *preservation of order,* and the *protection* of *public rights."*

*State ex rel. Daniel v. Broad River Power Co.,* 157 S.C. 1, 68, 153 S.E. 537, 560 (1929), *aff'd* 282 U.S. 187, 51 S.Ct. 94, 75 L.Ed. 287 (1930) (citation omitted and italics added by *Daniel* court). *Cf. State v. Beach Co.,* 271 S.C. 425, 248 S.E.2d 115 (1978) (while Attorney General has broad statutory authority, and arguably common law authority, to institute actions involving welfare of State, that authority is not unlimited). The Attorney General has a dual role. He is an attorney for the Governor and he is an attorney for vindicating wrongs against the collective citizens of the State. *See Porcher v. Cappelmann,* 187 S.C. 491, 198 S.E. 8 (1938) (Attorney General represents sovereign power and general public). Allowing the Attorney General to bring an action against the Governor when there is the possibility the Governor is acting illegally is consistent with the duties of this dual role. Further, because the office of attorney general exists to properly ensure the administration of the laws of this State, the Attorney General is merely ensuring that Proviso 72.109 is being administered the way in which the General Assembly intended. *See Langford v. McLeod,* 269 S.C. 466, 238 S.E.2d 161 (1977) (office of attorney general exists to properly ensure administration of laws of this State).

The above precepts lead to the conclusion that the Attorney General can and should bring an action against the Governor if there is the possibility the Governor is acting improperly...

From this language and the fact there is no statutory or constitutional prohibition against the Attorney General suing the Governor, we find the Attorney General has the authority to sue the Governor when he is bringing the action in the name of the State for the purpose of asserting that a separation of powers violation has occurred. Moreover, as stated previously, the Attorney General can bring an action against the Governor when it is necessary for the enforcement of the laws of the State, the preservation of order, and the protection of public rights.

............................................

Defendants query whether the Attorney General's action of bringing suit against the Governor violates the Rules of Professional Responsibility. Defendants state the Attorney General and the Governor have an attorney-client relationship, and that the Attorney General has violated Rule 1.7(a) of Rule 407 of the Rules of Professional Responsibility, which states "[a] lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless: ... (2) Each client consents after consultation."

Defendants contend if the Governor had requested the Attorney General represent him in this matter, the Attorney General would be required to do so. *See* S.C. Code Ann. § 1-7-50. In that event, the Attorney General would be on both sides of the action which Defendants assert is impermissible. Defendants also assert that because the Attorney General is currently representing the Governor in other legal matters, the Attorney General cannot ethically bring the instant action against the Governor.

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 2 of 21

We have previously found that an analogous situation did not create a conflict of interest. *Cf. Langford v. McLeod, supra* \*\*629 (original proceeding brought for declaratory judgment as to status, responsibility, and duty of Attorney General in representing municipal employees in civil actions; Court held Attorney General may represent public officials in civil suits as well as criminal ones without being subject to imposition of conflicting or unethical duties); *State ex rel. McLeod v. Snipes,* 266 S.C. 415, 223 S.E.2d 853 (1976) (Attorney General sought declaratory judgment that statute requiring him to represent officers of State in criminal proceedings was in conflict with constitutional provision designating Attorney General as chief prosecutor of State; Court held no conflict of interest arose from two duties of Attorney General as he could appoint members of his staff or solicitors or assistant solicitors to participate in prosecution and defense).

**Furthermore, the Attorney General, as noted above, has a dual role of serving the sovereign of the State and the general public. Thus, the Attorney General is not violating the ethical rule against conflicts of interest by bringing an action against the Governor.**

While the Attorney General is required by the Constitution to "assist and represent" the Governor, the Attorney General also has other duties given to him by the General Assembly, and elaborated on by the Court, which indicate the Attorney General can bring an action against the Governor.

In *People ex. Rel. Deukmejian v. Brown*, 172 Cal. Rptr. 478, (1981), the Attorney General of California sought a peremptory writ of mandate to compel the Governor, the Controller, the State Personnel Board, and the Public Employment Relations Board to perform their statutory and constitutional duties with regard to the recently enacted State Employer-Employee Relations Act. The Supreme Court of California held that the Attorney General could not maintain the action where the Attorney General had represented certain state clients, given them legal advise with regard to the pending litigation, and then withdrawn and sued the same clients on the next day on the cause of action arising out of the identical controversy.

The Attorney General argued, however, that his common law powers authorized him to commence such an action. The Supreme Court responded:

2. Article V, section 1, of the California Constitution provides that "The supreme executive power of this State is vested in the Governor. The Governor shall see that

the law is faithfully executed."

Article V, section 13, defines the powers of the Attorney General inter alia in this manner: "Subject to the powers and duties of the Governor, the Attorney General shall be the chief law officer of the State." The constitutional pattern is crystal clear: if a conflict between the Governor and the Attorney General develops over the faithful execution of the laws of this state, the Governor retains the "supreme executive power" to determine the public interest; the Attorney General may act only "subject to the powers" of the Governor.

Consistent with the Constitution, Government Code section 12010 provides: "The Governor shall supervise the official conduct of all executive and ministerial officers." (Spear v. Reeves (1906) 148 Cal. 501, 504, 83 P. 432.) The Attorney General is an executive officer who "shall report to the Governor the condition of the affairs of his office" (Gov. Code, s 12522).

We recognize there are cases in other jurisdictions that permit their attorneys general to sue any state officer or agency, presumably without restriction. Such opinions arise, however, under the peculiarities of the prevailing law in those several states, and are not persuasive here. (See, e. g., Conn. Com'n. v. Conn. Freedom of Information ( 1978) 174 Conn. 308, 387 A.2d 533); Feeney v. Commonwealth (1977) 373 Mass. 359, 366 N.E.2d 1262; E.P.A. v. Pollution Control Bd. (1977) 69 Ill.2d 394, 14 Ill.Dec. 245, 372 N.E.2d 50; Commonwealth ex rel. Hancock v. Paxton (Ky.1974) 516 S.W.2d 865.)

On the other hand, several jurisdictions have prevented the attorney general from acting without constitutional or statutory authority. A federal court found it incongruous for an attorney general, purporting to act for the people, to mount "an attack by the State upon the validity of an enactment of its own legislature." (Baxley v. Rutland (D.Ala.1976) 409 F.Supp. 1249, 1257; see also Hill v. Texas Water Quality Bd. (Tex.Civ.App.1978) 568 S.W.2d 738; Motor Club of Iowa v. Dept. of Transp. (Iowa 1977) 251 N.W.2d 510, 515; People ex rel. Witcher v. District Court, etc. (1976) 190 Colo. 483, 549 P.2d 778; Garcia v. Laughlin (1955) 155 Tex. 261, 285 S.W.2d 191, 194; State v. Hagan (1919) 44 N.D. 306, 175 N.W. 372, 374; State v. Huston (1908) 21 Okl. 782, 97 P. 982, 989.)

Arizona, the constitution of which, like ours, declares that its governor "shall take care that the laws be faithfully executed" (*159 Ariz.Const., art. V, s 4), reached the same conclusion as we do herein. In Arizona State Land Department v. McFate (1960) 87 Ariz. 139, 348 P.2d 912, 918, the supreme court of that state declared in an unanimous opinion, "Significantly, these powers are not vested in the Attorney General. Thus, the Governor alone, and not the Attorney General, is responsible for the supervision of the executive department and is obligated and empowered to protect the interests of the people and the State by taking care that the laws are faithfully executed."


VII. APPLICATION OF ORGANIC ACT AMENDMENTS, LOCAL LAWS

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 4 of 21

## A. REQUIREMENTS OF THE PROCUREMENT APPEALS BOARD

The Attorney General has brought this action [alternative writ of mandamus] to compel *I Maga'lahi* to appoint members of the Guam Procurement Appeals Board. This Board has been created by the Legislature to provide a form for appeals from procurement practices. This is a Board that has never been empaneled since its creation in 1986. The enabling statute has gone through amendments for the most part to allow greater eligibility for membership. Prior to the amendments, a member was required to have five years of procurement experience for eligibility. To date, only two members have ever been confirmed to this Board.

The Board serves an important governmental function because this Board is the final administrative body where challenges to awards of government bids and contracts can be made. The absence of such a Board has required aggrieved parties to file court actions and seek judicial remedies even though Guam law provides an administrative appeal level where the challenges could be resolved. Instead, the courts of Guam have been substituted as the body where challenges can be brought forth. Incumbent governors have been criticized in the past for their failure to empanel such Board. Criticism in the past has come from the legislative branch. The legislature has also seen fit to amend the act to allow for flexibility in the composition of its membership.

In bringing this action, the Attorney General has alleged that while *I Maga'lahi* has been in office for approximately ten (10) months, he has yet to make the required appointments to the Procurement Appeals Board. 5 G.C.A. §5710 provides that the "members of the Board **shall be appointed by the Governor**". 5 G.C.A. §5702(f) further provides that "the Governor **shall appoint three (3) alternate members to the Board**". It is apparent that among the countless and innumerable

tasks within the Governor's responsibilities with regard to his faithful execution of the laws, he is no less required to make the said appointments to the Procurement Appeals Board. This is a responsibility provided by local law that *I Maga'lahi* must also faithfully execute.

## B. DOES THE ATTORNEY GENERAL HAVE AUTHORITY TO SUE THE GOVERNOR?

In determining whether the Attorney General has authority or the requisite standing to bring the mandamus action, the Court must extensively review the Attorney General's powers and ascertain whether such powers authorize him to bring the present action or whether he is expressly excluded by a statute from filing the present action. Thus, unless there is a specific statute that prevents the filing of this mandamus action, at a minimum, the Attorney General's common law powers authorize the filing of this action.

Generally, the powers of an Attorney General are found in the respective state constitution or in the enactments of the various state legislatures. These are the enumerated or express powers. It is also not disputed that the Attorney General has common law powers which has its roots in the English system. The extent of the Attorney General's enumerated powers as well as his common law powers have been the subject of many state court decisions. These decisions are not uniformed and are conflicting to some degree.

Petitioner, the present Attorney General, advocates his position to be a constitutional office, i.e., he exercises authority pursuant to a congressional mandate as expressed in the Organic Act of Guam. Since his position was created by Congress, he wields authority under an analagous "supremacy clause" because of his designation as the "Chief Legal Officer of the Government of Guam" in the Organic Act. The Attorney General boldly asserts that he needs no other authority other than this designation to represent the government of Guam in all matter in which it is

interested, to undertake all actions for the public benefit and to prosecute individuals for the commission of crimes. The Attorney General also asserts that the local legislature has no authority to diminish his present powers but it may augment such powers. Furthermore, the Attorney General argues that the nature of his office inherently provides him common law powers associated with every Attorney General. Thus, in addition to his designation as the Chief Legal Officer of the government of Guam, he also possesses common law powers similarly possessed by other Attorneys General. It is this designation as the Chief Legal Officer in the Organic Act of Guam, it is argued, as well as his common law powers inherent in that office that authorize him to bring this action against *I Maga'lahi.*

Respondent, *I Maga'lahi,* argues on the contrary that there is no statute which expressly authorizes the Attorney General to bring a mandamus action against him. Furthermore, since the Organic Act designates *I Maga'lahi* as the chief executive officer in the executive branch, he alone is entrusted with the faithful execution of the laws, not the Attorney General. The present action is an attempt to wrestle away from him his responsibilities in the execution of the laws. *I Maga'lahi* further argues that the Attorney General has no common laws powers under the Organic Act nor does he have such powers under local law. Furthermore, even if he had statutory common law powers, the Governor's designation as the chief executive officer under the Organic Act of Guam negates any common law authority that the Attorney General may have in bringing the present action.

Does the Organic Act's designation of the Attorney General as Chief Legal Officer supply him with inherent common law powers? Does the Attorney General possess common law powers? Even if the Court were to conclude that the Attorney General has no common law powers which emanate from his Organic Act position, a review of Guam's laws shows that the Attorney General

Page 36 of 45

has been granted common law powers by the Guam Legislature. This grant of common law powers is contained in §30103 of 5 G.C.A. The Attorney General possesses common law powers which are not defined. The common law powers include those undertakings specifically mentioned in Section 30103 but are not limited to them. Thus, he has powers to bring actions which affect the public interest **unless expressly limited by any law of Guam to the contrary.**

Under his common law powers, an Attorney General has the power to maintain suits and proceedings for the enforcement of the laws of the state, the preservation of order, and the protection of public rights. It is in the furtherance of these stated purposes that he has been held to have had authority to sue state officers, departments and agencies.

In the pursuit of these stated purposes, can the Attorney General sue the Governor? It would appear that under his common law powers, the Attorney General would have authority to sue the Governor unless there is a specific statute which expressly limits this power to do so. This is so because case law has upheld the right of the Attorney General to sue state officers for enforcement of state laws. The right to sue the Governor under the Attorney General's common law power was recognized and upheld in *State ex rel. Condon v. Hodges*, supra. Since the Attorney General's authority to sue has been answered in the affirmative, the Court must proceed to ask the next question.

Does the Governor's executive powers expressly limit the Attorney General's power to bring this action. The Governor's executive powers stand on the same level as the Attorney General. The Governor also occupies a constitutional office under the creation of Congress in the Organic Act of Guam. The Governor is the executive branch's chief executive officer. The Attorney General is the head of the Department of Law and the Department of Law is within the Executive Branch. The

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 8 of 21

Governor is entrusted with the faithful performance of the laws. The Governor is entrusted with appointment powers. He and not the Attorney General appoints members of boards and commissions. It is in this context of the separation of powers [the Attorney General's office is in the executive branch and the Governor is the head of the said branch] that the Governor argues that he cannot be sued by the Attorney General. He is the head of the executive branch, charged with the faithful execution of the laws, and the sole determinant of the public interest.

The Organic Act makes the Governor the chief executive officer charged with the general supervision and control over the executive branch of the government of Guam and charged with the faithful execution of the laws. The Organic Act makes the Attorney General the Chief legal Officer of the government of Guam. The Governor is head of the executive branch but the Attorney General is the chief legal officer of the government of Guam, which includes not only the executive branch but also the legislative and judicial branches. Thus, the sphere of the Attorney General's legal cognizance is within the entire government of Guam, legislative and judicial, not just the executive branch.

With regard solely to the executive branch, does the Governor's control over the executive branch expressly include control over the Attorney General such that the present action cannot be maintained?

Assuming that there were some conflict in the roles within the executive between the Governor and the Attorney General, the statutory authority of the Attorney General should prevail because his statute was enacted subsequent in time by congress and it is specific to an office and not general as the Governor's supervisory and control power over the executive branch. The Court notes that the Attorney General no longer is subject to the removal authority of the Governor. Thus, the

Governor's appointive control over this part of the executive has been removed from his immediate control. The Attorney General is now elective and he may be removed not by the Governor but through procedures specified in Section 1422 of the Organic Act. The Attorney General may also be removed for cause in accordance with procedures established by the Legislature in law. The whole legislative intent behind the elective Attorney General was to remove the Attorney General from the control of the Governor and make the office independent. Therefore, it does not appear that the Governor's supervision and control over the executive branch renders the Attorney General hapless in bringing suits against the Governor. In similar fashion, the existence of the Department of Education within the executive branch does not render invalid the present school board merely because the Governor has general supervision over the executive branch. The placement of the education system within the control of the government of Guam has similar effect to the creation of the office of the Attorney General as the chief legal officer of the government of Guam and its resulting placement outside the reach of the executive head.

In ascertaining whether the Attorney General can file this action against the Governor, the final question the Court must ask is whether the Rules of Professional Conduct prevent the Attorney General from bringing the mandamus suit. Is the Attorney General so prevented?

*I Maga'lahi* argues that there was a violation of ethical duties when the Attorney General filed this mandamus action against him because in doing so the Attorney General brought suit against his own client. This is necessarily so because the Attorney General is the attorney for the government of Guam and has cognizance over all legal matters involving the executive branch. *I Maga'lahi* is the head of the executive branch. As head of the executive branch, *I Maga'lahi* is the client of the Attorney General.

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 10 of 21

Guam's Rule of Professional Conduct [1.7(a)] mandates that a lawyer shall not "be directly adverse to another client" absent a waiver. *I Maga'lahi* has never given the Attorney General a waiver, but the Attorney General has filed this action against *I Maga'lahi*. The Attorney General has therefore violated his ethical duties and should be enjoined from doing so.

*I Maga'lahi* argues that in *People ex. Rel. Deukmejian v. Brown*, the California Supreme Court held that it was not ethical for the Attorney general to file suit against the Governor, the very person he was supposed to represent. The *Deukmejian v. Brown* case, however, was one where the Attorney General had represented state clients, given them legal advice with regard to the pending litigation, then withdrew from their representation and sued the same clients the next day on a cause of action arising out of the identical controversy. The Court held this was improper conduct by the Attorney General and it was a violation of the rules of professional conduct. The decision in *Deukmejian v. Brown* was narrow, however. The Supreme Court, while acknowledging the dual role of the Attorney General, [as the representative of state agencies and the guardian of the public interest] determined that his common law powers did not authorize the Attorney General to sue the Governor because the California state constitution designated the Attorney General the chief legal officer **subject to the powers and duties of the Governor.** If there was a conflict between the two offices, the Governor retained the supreme power to determine the public interest because the Attorney General's common law power was subject to the express powers and duties of the Governor.

Most jurisdictions recognize a dual role with the Office of the Attorney General. Some of these jurisdictions have recognized and upheld the common law powers of an Attorney General to bring an action against state officers in the enforcement of the laws, the preservation of the public

Page 40 of 45

order and the protection of the public interest. It was the public interest in *Condon v. Hodges* that lead the South Carolina Supreme Court to conclude that the Attorney General could and should bring an action against the Governor if there is the possibility he may be acting improperly. Moreover, the Court held that any existing attorney-client relationship between the Attorney General and the Governor would not prevent the bringing of the action. Moreover, it did not represent a conflict of interest. Because of the Attorney General's dual role, he is not violating the rules of ethics against conflicts of interest by bringing an action against the Governor.

The Attorney General has also cited the court to two Superior Court decisions in which dual representation was not a disqualifying factor. In *People v. Castro*, CF 324-98, then Judge Frances Tydingco-Gatewood ruled that Guam's Rules of Professional Responsibility could not be mechanically applied to the Attorney General's office and did not disqualify the Attorney General from prosecuting the Defendant even though it was representing the Defendant in a civil matter with regards to the claim filed against the Defendant under the Government Claims Act. The Court held that the "mechanical application of the Guam Rules of Professional Conduct to the Attorney general's Office is disfavored because the Attorney General is 'the only one of its kind' and is entitled to a presumption of impartiality".

In *Attorney General of Guam v. Y'Asela Pereira*, Super. Ct. No.SP32-03, this Court recognized the special statues of the Attorney General as the chief legal officer of the government of Guam and his dual role in serving the government of Guam and the public interest.

If the Court were to agree with the Governor and disable the Attorney General from bringing suit against him which the Attorney General has filed in the name of the public interest, [enforcing the laws of Guam by requiring the Governor to perform an act required by law - the appointment

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 12 of 21

of members to the Procurement Appeals Board], would there be any other protector or guardian of the public interest who would be able to do so? It would appear that a person aggrieved with a procurement process might forego filing a suit to require the governor to make an appointment because there might not be standing to commence such a suit. An aggrieved person may not have standing to allege injury or harm because his appeal may be brought directly to the courts. Thus, he may not be injured in that sense to have the requisite standing to sue the Governor to make appointments to the Board.

Moreover, a ruling by this Court that the Governor cannot be sued by the Attorney General because he is the Attorney General's client may very well result in a type of judicial grant of immunity from suits. Officers of the executive branch may avoid suit when they act improperly or in violation of the law because they derive legal representation from the Attorney General. This cannot be the case nor can this be sound public policy because no one is above the law. It would be unreasonable for this Court to hold that the Attorney General cannot sue the Governor because the faithful execution of the laws rests solely with the Governor. Whether the Governor may be sued to answer why he has not made appointments to the Procurement Appeals Board is the issue herein, not when he should make appointments. The Governor states that in the prioritization of his many areas of responsibility in the execution of the laws, he is in the process and is still interviewing individuals for membership in the said Board. These are issues, however, that relate to the merits of the petition. The Court, upon a return on the alternative writ may very well agree with the Governor's position - that in the execution of the laws, he may need and should be afforded additional time to make his appointments. But, as the Court *in Purdue v. Baker*, supra, acknowledged: the Governor's executive power [his faithful execution of the laws of Guam] cannot

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 13 of 21

be used to prevent the execution of another law, i.e., his duty under Guam law to make appointments to the Procurement Appeals Board.

The Court also finds that the better view regarding the Attorney General's dual role is one where the public interest supercedes any conflict in the duties of the Attorney General in favor of the public interest. The general public interest should not be subservient to the Governor's interest as it relates to the faithful execution of the laws. The Governor, like the Attorney General, represents the people, and the public's interest should or must prevail over the individual interests of the governor as well as the Attorney General. In coming to this conclusion, the Court does not intimate that the Attorney General has the final determination of what is in the public interest. The Governor may very well have a different view of what is the public interest. When their positions conflict as to the public interest, as in the controversy before the court, it is appropriate that the Courts determine what the public interest calls for.

## DITETMINASION[8]

For the reasons stated above, the Court hereby finds that in the issuance of the alternative writ of mandate herein, the Superior Court of Guam had jurisdiction to entertain the petition filed by the Attorney General against the Governor of Guam, a mandamus action seeking the Governor to empanel the Procurement Appeals Board. The Attorney General of Guam, like the Governor, is a constitutional officer, and he is designated in the Organic Act of Guam as the Chief Legal Officer of the Government of Guam. As Chief Legal Officer of the government of Guam, the Attorney General inherently possesses common law powers. The Guam Legislature has also bestowed common law powers to the Attorney General - powers which are broad but undefined, emerging and

[8]Conclusion

not limited to - unless expressly limited by any law of Guam to the contrary. The common law powers of an Attorney General trace its origin to the English legal system. Petitioner, as Attorney General, has the dual responsibility of (1) representing the Governor, his directors, agencies and other entities in all matters in which the said officials or the government is in anywise involved and (2) being the protector and the guardian of the public interest [a generally accorded common law power]. The public interest arises when there is a need to bring an action for the enforcement of the laws of Guam, the preservation of the order, and the protection of public rights.

In protecting the public interest, the Attorney General has authority to bring an action against the Governor for the enforcement of the laws of Guam. As part of his constitutional [Organic Act] duties in relation to his faithful execution of the laws, the Governor is mandated by law to appoint members to the Procurement Appeals Board. The Court finds no federal or local law exists which expressly prevents the Attorney General from filing an action against the Governor of Guam. Its absence accords common law authority for the Attorney General to proceed with the present action. While the Attorney General has a duty to represent the Governor, there is no conflict with that representation whenever he brings an action against the Governor in the name of the government or in his name, when brought in the name of the public interest. Moreover, there is no violation of the rules of professional responsibility whenever he brings such an action.

The Court also finds and agrees with the Governor's position that he alone is charged with the faithful execution of the laws of Guam. The Court finds that *I Maga'lahi* alone should determine who to appoint as members to vacant positions on boards and commissions of the government of Guam. He alone has discretion in prioritizing among his many areas of responsibilities in the execution of the laws of Guam. But, in bringing this action, the Attorney

Case 1:05-cv-00038    Document 38-3    Filed 05/12/2006    Page 15 of 21

General is not usurping nor is he attempting to wrestle the executive power from the Governor. *I Maga'lahi* remains the appointing authority. He alone appoints, no one else. Whether *I Maga'lahi* should make appointments to the Procurement Appeals Board at this juncture, or whether he should be given more time to make the remaining appointments, taking into consideration the prioritization that may be necessary in the execution of the laws [the competing public interest claims before the Court], these questions do not concern the jurisdiction of the Court or Petitioner's standing, but relate solely to Petitioner's request whether the Attorney General's prayer for relief should be granted on the merits of his application. The Court, however, expresses no opinion on the merits of the Attorney General's mandamus request. It has only been directed by the Supreme Court to determine whether it has jurisdiction to entertain Petitioner's action and in that regard whether the Attorney General has standing to bring the mandamus action. This Court thus concludes that it has jurisdiction to hear the alternative writ filed by the Attorney General. The Attorney General, under his constitutional and common law powers, has authority and standing to file the present action [brought in the public interest] against the Governor

*Este i sinneda i Kotte*[9].

SO ORDERED this 10th day of November, 2003.

Joaquin V. E. Manibusan, Jr.
Judge, Superior Court of Guam

---

[9]These are the findings of the Court.

Page 45 of 45

NOV 1 0 2003

Ann D.L. Rivera
Deputy Clerk, Superior Court of Guam

# Exhibit

# B

## FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

THE ATTORNEY GENERAL OF GUAM,
   *Plaintiff-Appellant,*

v.

WILLIAM R. THOMPSON, in his
official capacity as Executive
Manager of Guam Airport
Authority,
   *Defendant-Appellee.*

No. 03-15823

CV-03-00008
District of Guam,
Agana

---

THE ATTORNEY GENERAL OF GUAM,
   *Plaintiff-Appellee,*

v.

WILLIAM R. THOMPSON, in his
official capacity as Executive
Manager of Guam Airport
Authority,
   *Defendant-Appellant.*

No. 03-15999

CV-03-00008
District of Guam,
Agana

ORDER

Filed March 2, 2006

Before: Dorothy W. Nelson, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

---

### ORDER

Subsequent to the issuance of our opinion affirming the district court's dismissal of the Attorney General of Guam's action, but prior to the our consideration of his petition for

2107

rehearing, the Supreme Court denied certiorari to review the final decision of the Guam Supreme Court in *A.B. Won Pat Guam International Airport Authority v. Moylan*, 2005 WL 291577 (Guam Terr.,2005). *A.B. Won Pat Guam International Airport Authority v. Moylan*, ___ U.S. ___, 126 S.Ct. 338 (Mem), 163 L.Ed.2d 50 (Oct. 3, 2005). The Supreme Court's denial of certiorari concluded the litigation in the Guam courts that was parallel to this federal action. The district court's decision to abstain and to dismiss this federal action was based on that pending action in the Guam courts. This appeal is from that decision.

We are of the opinion that the Supreme Court's denial of certiorari in *A.B. Won Pat Guam International Airport Authority v. Moylan* moots the underlying litigation. The underlying questions concerning the interpretation of the 1998 Amendment to the Guam Organic Act have been resolved. Accordingly, as a matter of prudence, we hereby withdraw our August 16, 2005 opinion, vacate the district court's April 1, 2003 decision dismissing the Attorney General's action, and remand the case to the district court to dismiss the action as moot.

The pending petition for rehearing and suggestion for rehearing en banc are denied without prejudice to the filing of a petition for rehearing from this order.

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO

The summary, which does not constitute a part of the opinion of the court, is copyrighted
© 2006 Thomson/West.

# CERTIFICATE OF SERVICE

I, Douglas B. Moylan, certify that I caused a copy of the foregoing to be served upon the following on May 12, 2006, via hand delivery at the following addresses:

Counsel Defendant Felix P. Camacho, Governor of Guam:
Shannon Taitano, Esq.
Office of the Governor of Guam
Ricardo J. Bordallo Governor's Complex
Adelup, Guam 96910

Counsel Defendant Felix P. Camacho, Governor of Guam:
Daniel M. Benjamin, Esq.
Calvo & Clark, LLP
655 South Marine Corps Drive, Suite 202
Tamuning, Guam 96913

Counsel Defendant Artemio B. Ilagan, Director of the Department of Revenue and Taxation:
David W. Hopkins, Esq.
Cabot Mantanona, LLP
825 South Marine Corps Drive
Tamuning, Guam 96913

Respectfully submitted this 12th day of May, 2006.

_____
**DOUGLAS B. MOYLAN**
Attorney General of Guam, Elected