


DISTRICT COURT OF GUAM

TERRITORY OF GUAM

GOVERNMENT OF GUAM,

Plaintiff,

vs.

FELIX P. CAMACHO, as the Governor of Guam, and ARTEMIO B. ILAGAN, as the Director of the Department of Revenue and Taxation,

Defendants.

Civil Case No. CV05-00038

**ORDER RE: THE GOVERNOR OF GUAM'S MOTION (1) TO DISMISS PLAINTIFF'S COMPLAINT; OR (2) IN THE ALTERNATIVE, TO STAY**

This matter is before the Court on the Governor of Guam's Motion to Dismiss Plaintiff's Complaint, or in the Alternative, to Stay.[1] Pursuant to Local Civil Rule 7.1(e)(3), this matter is appropriate for decision without the need for oral argument.[2] After reviewing the parties' submissions, as well as relevant caselaw and authority, the Court hereby **GRANTS** the motion and hereby issues the following decision.

---

[1] Joinder to the Governor's Motion was filed by defendant Artemio Ilagan. *See* Docket No. 13.

[2] Local Civ.R. 7.1(e)(3) states "[i]n cases where the parties have requested oral argument, such oral argument may be taken off calendar by Order of the Court, in the discretion of the Court, and a decision rendered on the basis of the written materials on file."

## FACTS

This is an action brought *parens patriae* by the Attorney General of Guam on behalf of the Government of Guam (plaintiff) against the Governor of Guam, Felix P. Camacho ("Governor"), and the Director of the Department of Revenue and Taxation, Artemio B. Ilagan, seeking declaratory and injunctive relief. The complaint alleges that the defendants are depriving the citizens of Guam of property without due process of law, and are violating the citizens' right to equal protection of the law by assessing and collecting taxes against real property owners without ascertaining the value of the property sought to be taxed, and by discriminating between similarly situated persons and landowners without a rational basis for doing so.

Pursuant to 11 Guam Code Ann. § 24306, the assessor of Guam is to re-ascertain the value of all real property in Guam every three years, and such valuation shall be used as the basis for assessment during the annual adjustments for property values. The last year an island-wide appraisal of property values was done was in 1993. The plaintiff claims that property values have significantly changed since the last appraisal. Thus, the assessment of property values on Guam for real property tax purposes differs from taxpayer to taxpayer, depending on whether the appraisal of a property occurred prior to 1996, or after 1996, resulting in disparities in taxation. The plaintiff contends the disparities constitute a violation of the uniformity requirement of 48 U.S.C. § 1423a,[3] which is both a Federal statute and a part of the Organic Act of Guam. The plaintiff alleges there are taxpayers who disproportionately bear a greater tax burden because of the defendants' real property tax assessment. Accordingly, the plaintiff seeks to enjoin all property tax collection in Guam, since the reliance upon appraisals that are 12 years old is unconstitutional and an inorganic deprivation of property.

In June 2003, the Guam Legislature amended 11 Guam Code Ann. § 24306 to provide that if the triennial property valuations in Guam are not conducted by the tax assessor as required, "then the last completed valuation as supplemented by the annual adjustments provided for in § 24307

---

[3] 48 U.S.C. § 1423a provides that "[t]axes and assessments on property . . . may be imposed for the purposes of the government of Guam as may be uniformly provided by the Legislature of Guam, . . . ."

shall be the property tax valuation under this Chapter." In pertinent part, § 24307 requires the assessor to "ascertain the value of all property . . . which shall have become taxable since the last valuation, including new improvements or additions to old improvements, or which shall [have] change[d] in value because of a change in use, . . . destruction" or other loss. 11 Guam Code Ann. § 24307.

In July 2003, the Governor of Guam filed a Request for Declaratory Judgment with the Supreme Court of Guam asking it to make a finding as to whether the issuance of bonds was within allowable limits of public indebtedness.[4] The Attorney General intervened in the action and contested the issuance of the bonds ("bond litigation"). The Attorney General claimed that because an island-wide appraisal of property tax pursuant to 11 Guam Code Ann. § 24306 had not been conducted since 1993, the appraisal system implemented was not uniformly applied, did not have adequate safeguards and violated equal protection. The Supreme Court of Guam considered the matters raised by the Attorney General at length and decided that the tax roll used at the time was the product of a fair and reasonable valuation system, and could be used to determine the current debt limit.

## DISCUSSION

Governor Camacho requests this Court to dismiss the action. On a motion to dismiss, all well-pleaded allegations in the complaint are taken as true and construed in the light most favorable to the plaintiff. *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000). "[C]ourt records from related proceedings can be taken into account without converting a motion to dismiss into a summary judgment motion." *See Shaw v. Hahn*, 56 F.3d 1128, 1129 n. 1 (9th Cir.1995) ("In deciding whether to dismiss a claim under Fed.R.Civ.P. 12(b)(6), a court may look beyond the plaintiff's complaint to matters of public record").

The defendant first claims that the Attorney General lacks *parens patriae* standing to pursue this matter on behalf of the Government of Guam. "In order to maintain a *parens patriae* action,

---

[4] 48 U.S.C. § 1423a provides that "no public indebtedness of Guam shall be authorized or allowed in excess of 10 per centum of the aggregate tax valuation of the property on Guam."

[Guam] must articulate an interest apart from the interests of particular private parties, *i.e.*, [Guam] must be more than a nominal party. [Guam] must express a quasi-sovereign interest." *Alfred L. Snapp, etc. v. Puerto Rico*, 458 U.S. 592, 607 (1982).

The Attorney General claims that he has a quasi-sovereign interest in the health and well-being of its residents. Moreover, the Attorney General states that he is permitted by Congress to sue on behalf of the people of Guam pursuant to 5 Guam Code Ann. § 30103, which provides in relevant part:

> The Attorney General shall have, in addition to the powers expressly conferred upon him by this Chapter, those common law powers which include, but are not limited to, the right to bring suit to challenge laws which he believes to be unconstitutional and to bring action on behalf of the Territory representing the citizens as a whole for redress of grievances which the citizens individually cannot achieve unless expressly limited by any law of Guam to the contrary.

5 Guam Code Ann. § 30103.

In this instance, it seems clear that the assessment of property tax necessarily implicates the general economy of Guam. For example, the Government's ability to borrow money by floating bonds at favorable rates in the financial marketplace and the Government's ability to repay the loan would affect the entire economy of Guam. "An interest in the general economy of the state is sufficient to base an action brought by a state in its quasi-sovereign capacity." *Commonwealth of Puerto Rico v. Alfred L. Snapp & Sons, Inc.*, 632 F.2d 365 (4th Cir. 1980).

However, the decision in this matter does not rest on whether the assessment of real property taxes necessarily implicates the economy of Guam. The Court must still consider whether the taxpayer is provided adequate remedies. In other words, does the taxpayer need the Attorney General to protect his or her rights because he or she is without remedy. Here, the Court is not convinced that individual taxpayers cannot seek relief on their own. Moreover, the Court finds that it may be improper to restrain the collection of real property taxes if indeed there is an adequate remedy available to the individual taxpayer.

The Tax Injunction Act, 28 U.S.C. § 1341 states that "district courts shall not enjoin, suspend, or restrain the assessment, levy, or collection of any tax under State law where a plain, speedy, and efficient remedy may be had in the courts of such State." This statute prohibits

declaratory and injunctive relief in state tax disputes provided the taxpayer has an adequate remedy in state court. *See California v. Grace Brethren Church*, 457 U.S. 393 (1982). Moreover, the Supreme Court has held that federal courts should refrain from accepting jurisdiction and granting equitable or declaratory relief relating to the validity or constitutionality of state taxes where the state affords the taxpayer adequate remedies. *Great Lakes Dredge & Dock Co. v. Huffman*, 319 U.S. 293, 299 (1943); *Tully v. Griffin*, 429 U.S. 68, 73 (1976)(courts have an "equitable duty" to refrain from involvement in state collection of taxes).

Here, Guam has enacted a statutory scheme which seemingly has in place mechanisms to ensure the protection of the taxpayers' interests. Under 11 Guam Code Ann. § 24307, the assessor is required to update the tax roll annually with information regarding new properties and the destruction of old properties. *See* 11 Guam Code Ann. § 24307 (the assessor is to "ascertain the value of all property . . . which shall have become taxable since the last valuation, including new improvements or additions to old improvements, or which shall [have] change[d] in value because of a change in use, . . . destruction" or other loss, "the assessor shall determine the value of the such loss and reduce the valuation accordingly"). Property owners who claim a reduction in valuation based on the change in use of their property, or because of destruction or injury to the property, are required to file a report with the tax assessor by March 1st of the year in which the reduction is sought. 11 Guam Code Ann. § 24310.

In addition, with respect to a decline in property values because of market forces, a taxpayer may challenge the annual assessment. *See* 11 Guam Code Ann. § 24509 ("[A]ny person assessed, or his agent, may file with the Board [of Equalization] on or before September 15, a written application for equalization of his assessment or correction of the roll."), and 11 Guam Code Ann. § 24511("The Board [of Equalization], upon a showing of unreasonableness, may increase or reduce any assessment on the roll in order to equalize assessments throughout Guam"). Thereafter, if a taxpayer wishes to challenge the payment of taxes, he or she can file an application for a refund within three years after a payment has been made. 11 Guam Code Ann. § 24906. If a refund is denied by the tax collector, the taxpayer then has the right to seek judicial review of the denial. 11 Guam Code Ann. § 24907.1.

Similarly, when taxes are payable, a taxpayer may pay the tax under protest and seek a refund by filing suit in the Superior Court of Guam within six months to recover the tax paid under protest. 11 Guam Code Ann. § 24910. Presumably taxpayers will take the aforementioned actions to seek a reduction in their taxes if they believe they are too high.

The Attorney General relies on *Berne Corp. v. Government of Virgin Islands*, 262 F. Supp. 2d 540 (2003) for support. In *Berne*, real property owner taxpayers sued the government in a civil rights action to compel the territory to appraise, assess, and tax their real property based on its actual value. The taxpayer alleged that the government was not complying with the federal statute requiring that the Virgin Islands to calculate real property taxes based upon the actual value of the property.[5] 48 U.S.C. § 1401a. The district court found that the property tax system was unlawful because it "systemically employ[ed] a method of assessment not calculated to determine the *actual* value of properties as required by 48 U.S.C. § 1401a." *Id.* at 561 (emphasis added).

The Third Circuit agreed with the district court and found that the Virgin Islands Property tax system was not a state tax system, nor was it entirely a territorial tax system. "It is partially a federal tax system, and it is not apparent that the federal government should adopt a hands-off approach to the federal aspects of a hybrid federal/territorial system." *Bluebeard's Castle, Inc. v. Government of Virgin Islands*, 321 F.3d 394, 400 (3rd Cir. 2003). "To be sure, property tax law in the Virgin Islands is, for the most part, 'local' law, just as it is in the several states. (citation omitted). But its local character derives from Congress. To the limited extent that Congress has entered the field and instituted its own substantive requirements, the local character of property taxation in the Virgin Islands has been altered." *Id.* at 400.

Here, there is no indication that Congress intended to retain control over the matter, similar

---

[5] 48 U.S.C. 1401a provides:

> For the calendar year 1936 and for all succeeding years all taxes on real property in the Virgin Islands shall be computed on the basis of the actual value of such property and the rate in each municipality of such islands shall be the same for all real property subject to taxation in such municipality whether or not such property is in cultivation and regardless of the use to which such property is put.

to the Virgin Islands. Unlike the Virgin Islands, there is no express federal statutory scheme governing Guam's property tax system in Guam's Organic Act. 48 U.S.C. § 1423a ("The legislative power of Guam shall extend to all rightful subjects to include . . . taxes and assessments on property . . . as may be uniformly provided by the Legislature of Guam"). Guam has acted under its constitutional authority to pass its own statutory real property tax scheme. Accordingly, this Court does not find the application of the principles to the Tax Injunction Act to be any less applicable simply because Guam is a territory rather than one of the fifty states.

The traditional notions of comity to bar federal injunctive or declaratory relief claims as to Guam's property tax system should be applicable absent a showing of an inadequate remedy under that system. *See National v. Private Truck Council, Inc. v. Oklahoma Tax Commission*, 515 U.S. 582, 586 (1995). In *National*, the United States Supreme Court stated that "§1983 does not call for either federal or state courts to award injunctive and declaratory relief in either federal or state tax cases when an adequate legal remedy exists." States are given great flexibility in satisfying requirements of due process in the field of taxation; so long as the law provides clear and certain remedy, states may determine whether to provide pre-deprivation process or instead to afford post-deprivation relief. *Id.* at 589. A state remedy is deemed sufficient if it provides the taxpayer with a full hearing and judicial determination in which the taxpayer may raise any and all constitutional objections. Accordingly, a federal district court does not have jurisdiction to hear a declaratory judgment action involving a local tax unless the state fails to provide a plain, speedy and efficient remedy. *Hardwick v. Cuomo*, 891 F.2d 1097, 1105 (3d Cir.1989).

There have been no allegations that the remedies provided the individual taxpayer are insufficient. *See In re Camacho*, 2003 Guam 16, ¶¶ 41, 42 (Guam's real property tax law "provides mechanisms to protect taxpayers from being taxed on an inaccurate assessment . . . . [P]roperty owners have not been unduly deprived of their statutory rights to challenge assessments"). The plaintiff is focused on the fact that because the triennial assessments have not been done a disparity in the assessment of taxes as to a number of taxpayers has resulted. The plaintiff's point may be well taken, however, before this Court interjects itself into the fray, it has to be sure there is basis to do so. The Court does not find such a basis under the circumstances.

Even were this Court to find otherwise, the defendant also argues that collateral estoppel applies such that dismissal of this matter is warranted. However, the Court need not address this point, as the Court has already determined that it is without jurisdiction to entertain this matter as discussed above.

## CONCLUSION

The Court finds the Attorney General has no standing to bring this action on behalf of the plaintiff. The individual taxpayer has adequate remedies to challenge any alleged deficiency in the tax assessment. Accordingly, the Court hereby orders that the Complaint filed against the defendants be dismissed without prejudice. In addition, the Court finds that the alternative relief sought by the Governor is moot based on the Court's ruling above.

**SO ORDERED** this 29 day of June, 2006.

WM. FREMMING NIELSEN*
United States District Judge

---

*The Honorable Wm. Fremming Nielsen, United States Senior District Judge for the Eastern District of Washington, by designation.